# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------x

TOMAS VERA, JOEL VELEZ,
MARGARET KENNEDY, DONNA
ZIELINSKI, MICHAEL ZIELINSKI,
MARCO L. NEAD, and RENEE
WILLIAMS, on behalf of themselves and all
Others similarly situated,

     Plaintiffs,

  -against-

MIDDLESEX WATER COMPANY ,

     Defendant.

-------------------------------------------------------------x

MIDDLESEX WATER COMPANY,

   Third-Party Plaintiff

  -against-

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co.),

   Third-Party Defendant.

-------------------------------------------------------------x

Case No. 2:22-cv-04446-KM-ESK

**DEFENDANT MIDDLESEX
WATER COMPANY'S
OPPOSITION TO PLAINTIFFS'
MOTION TO REMAND**

(Removed from Superior Court of,
New Jersey, Middlesex County
Docket No. MID-L-6306-21)

TO: Joseph A. Osefchen (JO-5422)
   Stephen P. DeNittis (SD-0016)
   Shane T. Prince (SP-0947)
   **DeNITTIS OSEFCHEN PRINCE, P.C.**
   525 Route 73 North, Suite 410
   Marlton, NJ 08053
   Michael A. Galpern, Esq.
   **JAVERBAUM, WURGHAFT, HICKS,
   KAHN, WIKSTROM & SINNIS, P.C.**
   1000 Haddonfield-Berlin Road, Ste. 203
   Voorhees, NJ 08043
   *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 9

LEGAL ARGUMENT............................................................................................ 11

CONCLUSION..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amazing Trucking & Logistics v. Am. Inter-Fidelity Corp.
  No. 2:19 CV 284, 2020 U.S. Dist. LEXIS 60936 (N.D. Ind. Apr. 7 2020)..............16

Broad Coverage Serv. v. Oriska Ins. Co.,
  No. 20-CV-1108 (PMH), 2021 U.S. Dist. LEXIS 45908 (S.D.N.Y. Mar. 11,
  2021) ...................................................................................................................15

Capital One Bank United States v. Jones,
  No. 2:18-cv-12988-ES-CLW, 2019 U.S. Dist LEXIS 181760 (D.N.J. Jan 4,
  2019) ...................................................................................................................16

Chejfec v. Citibank N.A.,
  No. 18-CV7601, 2019 U.S. Dist. LEXIS 192894 (N.D. Ill. July 2, 2019)..............16

Cowan v. Lifelong Med. Care,
  No. 21-cv-10062-VC, 2002 U.S. Dist. LEXIS 64203 (N.D. Cal. Apr. 6, 2022)..............17, 18

Dart Cherokee Basin Operating Co., LLC v. Owens,
  135 S. Ct. 547 (2014).........................................................................................13

Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,
  535 U.S. 826 (2002)............................................................................................16

Home Depot U.S.A., Inc. v. Jackson,
  139 S. Ct. 1743 (2019).........................................................................10, 11, 15

Ibarra v. Manheim Investments, Inc.,
  775 F.3d 1193 (9th Cir. 2015) ............................................................................13

Martin v. Franklin Capital Corp.,
  546 U.S. 132, 126 S. Ct. 704 (2005)...................................................................21

OSI Educ. Servs. V. Albert,
  No. 07-3508, 2007 U.S. Dist LEXIS 98703 (2007 WL 3511884 (D. Minn.
  Sept. 28, 2007) ..................................................................................................17

Reecon N. Am., LLC v. Du-Hope Int'l Grp.,
  No. 2:18-CV-02234-JFC, 2019 U.S. Dist. LEXIS 103915 (W.D. Pa. June 20,
  2019) ...................................................................................................................15

State of Texas by and Through Bd. of Regents of the Univ. of Texas v.
  Walker ,142 F.3d 813 (5th Cir. 1998) .................................................................17

Visendi v. Bank of America, N.A.,
  733 F.3d 863 (9th Cir. 2013) ................................................................................14

**Statutes**

28 U.S.C. 1332(d)(2) ................................................................................9, 14

28 U.S.C. § 1332 ................................................................................16

28 U.S.C. § 1332(d) ................................................................................12, 13

28 U.S.C. § 1332(d)(3) ................................................................................14

28 U.S.C. § 1332(d)(4)(A) ................................................................................18, 20

28 U.S.C. § 1441(a) ................................................................................11, 15

28 U.S.C. § 1447 ................................................................................21

28 U.S.C. § 1453 ................................................................................13

28 U.S.C. §1453(b) ................................................................................ *passim*

**Other Authorities**

Class Action Fairness Act of 2005................................................................................ *passim*

**PRELIMINARY STATEMENT**

Defendant Middlesex Water Company ("MWC") respectfully submits this brief in opposition to Plaintiffs' Motion to remand this matter to New Jersey State Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

MWC is a duly authorized public utility corporation of the State of New Jersey. An operative fact in this matter is that on October 26, 2018, three years before the subject lawsuit was filed in State Court on October 29, 2021, MWC filed a Complaint against 3M Company in the United States District Court for the District of New Jersey, *MWC v. 3M 2:18-cv-15366-CCC-JBC)*. In that lawsuit, which is still pending, MWC seeks damages from 3M Company "arising from the intentional, knowing, reckless and/or negligent acts and/or omissions of [3M Company] in connection with the contamination of [MWC]'s public drinking water supply with the toxic substances PFOS (perfluorooctanesulfonic acid) and PFOA (perfluorooctanoic acid) which fall within a class of substances known as per-and polyfluoroalkyl substances ("PFAS")." The Second Amended Complaint is attached hereto as Exhibit "A" and details 3M's conduct in contaminating MWC's Park Avenue Well Field. PFAs are non-naturally occurring, man-made chemicals that were first developed in the late 1930s to 1940s and put into large-scale manufacture and use by the early 1950s. 3M marketed, developed, manufactured, distributed released, trained users of, produced instructional materials for, sold and/or otherwise handled and/or used PFAS including in New Jersey, in such a way as to result in the contamination of MWC's public drinking water supplies. 3M was the only known manufacturer of PFOS and PFOS precursors in the United States. PFAs are water soluble and can migrate readily from soil to groundwater, where they can be transported long distances. Water that is processed by typical municipal water treatment plans does not result in the removal, filtration or treatment of PFAS. 3M MWC's action against 3M Company is and has always been a matter of public record.

In terms of the history of PFOA regulation, on May 25, 2016, the EPA issued a Notice of its revised lifetime health advisory for PFOS and PFOA as follows: "0.07 parts per billion (70 parts per trillion) for PFOS and PFOA. Because these two chemicals cause similar types of adverse health effects, EPA recommends that when both PFOS and PFOA are found in drinking water the combined concentrations of PFOS and PFOA be compared with the 0.07 part per billion HA level."

On November 1, 2017, the New Jersey Department of Environmental Protection ("NJDEP") announced that it would set a maximum contaminant level ("MCL") for PFOA in drinking water of 0.14 parts per billion. The requirement to notify customers of PFOA levels in excess of this standard began on January 1, 2021.

This case arises out of the following events. On September 10, 2021, the NJDEP issued a "Notice of Non-Compliance—Perfluorooctanoic Acid ("PFOA") MCL Exceeded" with respect to water at MWC's Park Avenue Facility ("Notice"). The Notice directed MWC to undertake corrective actions to achieve compliance with the NJDEP's MCL standards with respect to PFOA, including taking action to bring the water into compliance with the MCL no later than September 7, 2022, including but not limited to remediation and/or using alternative sources of supply. In this same Notice, NJDEP ordered MWC to complete and issue a Tier 2 Notice to potentially affected customers by October 7, 2021, a deadline that was subsequently extended by NJDEP.

On October 22, 2021, MWC issued the Tier 2 Notice to potentially affected customers pursuant to NJDEP's order set forth in its September 10 2021 Notice of Compliance and despite the fact that MWC had for the previous three (3) years pursued 3M in this very Court to obtain restitution from 3M to pay for the construction of a treatment plant at MWC's Park Avenue

Facility to mitigate the levels of PFOA detected there. MWC's Tier 2 Notice issued on October 22, 2021 to potentially affected customers was entitled "Important Information About Your Drinking Water: Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards." The Notice, in relevant part, stated:

> Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right know what happened, what you should do, and what we are doing to correct this situation.
>
> We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results…
>
> …**What does this mean?**
>
> *People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood…
>
> **What should I do?**
>
> - If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water.
>
> - The New Jersey Department of Health advises that infant formula and other beverages for infants, such as juice, should be prepared with bottled water when PFOA is elevated in drinking water.

3

- Pregnant, nursing, and women considering having children may choose to use bottled water for drinking and cooking to reduce exposure to PFOA.

- Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.

- Boiling your water will not remove PFOA…

**What is being done?**

…In anticipation of New Jersey regulatory standards, we began evaluating treatment options in 2019. Design of a new treatment plant which will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in 2023.

Only a portion of our service area, served by the Company's Park Avenue Treatment Plant is affected by this public notice. This notice is being distributed to only those customers who, according to our records, may at times, receive all or some of their water from that facility. The impacted municipalities are South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway. Some portions of these municipalities may be affected, please see the map illustrating the affected area on our website at https://www.middlesexwater.com/water-quality.

…*Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can this by posting this notice in a public place or distributing copies by hand or mail.*

On October 29, 2021, seven days after the issuance of the Notice, Plaintiff Thomas Vera, on behalf of himself and all others similarly situated, filed a Class Action Complaint in Superior Court, Middlesex County. (See the attached Exhibit "B"). Plaintiffs brought suit only against MWC, and did not name 3M, despite the public record of MWC's lawsuit against 3M filed on October 26, 2018, and despite the fact that it was well known that 3M and only 3M polluted the

4

Park Avenue Well Field.  Eleven days later, an action was brought in this Court entitled *Lonsk v. MWC and 3M 2:21-cv-19808-JXN-ESK*, making the same allegations as in the this case but adding 3M, the polluter and indispensable party, as a direct defendant.  (See the attached Exhibit "C").  Notably, counsel for Plaintiffs in the *Lonsk* matter have now served a notice of appearance as co-counsel for Plaintiffs in this matter.  (See the attached Exhibit "D").

In the State Court action, Mr. Vera alleged that, "[u]pon receiving Defendant's form Notice, Plaintiff, who suffers from specific health concerns and a severely compromised immune system, did exactly what the Notice urged him to do. He followed Defendant's written directives to consult with his doctor and buy bottled water as a substitute for his contaminated tap water. In following that directive, Plaintiff incurred out-of-pocket expenses, including a co-pay for that doctor's consultation and the cost of bottled water." (See the attached Exhibit "B" at ¶ 13). Mr. Vera sought "indemnification and reimbursement under equitable and common law principles for himself and a class of other similarly situated recipients of Defendant's Notice, for the expenses he incurred as a consequence of following the above-quoted directive in Defendant's Notice to seek medical advice about his drinking water and to replace the contaminated tap water with bottled water and a water filter for drinking and cooking as well as future medical monitoring to ensure his exposure has not caused the risk of a disease."

On November 8, 2021, MWC issued an expanded version of the October 22, 2021 notification. This expanded version contained the same information as the October 22, 2021 notification, but included translations in Spanish, Chinese (simplified), Hindi, Gujarti, Korean, Filipino, and Punjabi. The expanded Notice included notice to all "MWC customers in South Plainfield, Clark, Edison, Metuchen, Woodbridge and Carteret which had previously not initially been included."

All actions by MWC in connection with the Tier 2 Notices were taken at the direct order of the NJDEP pursuant to the NJDEP's PFOA regulations that became effective January 1, 2021 and were drafted and issued under the strict oversight and direction of the NJDEP.

On November 9, 2021, MWC commenced an interim shut down of the Park Avenue Facility to enable the NJDEP to determine whether a continued shut down of the Facility until mid-2023, when the upgrade of the facility is completed, is feasible, considering both public health and the adequacy of the supply. This interim remedy is still in progress. During this shut down, MWC, in coordination with and oversight by the NJDEP, is sequentially obtaining and testing water samples to ensure that the shutdown of the Park Avenue Facility does not cause any unanticipated deviations in water quality while reducing PFOA levels below the MCL standard (e.g., does not result in an increase of lead, copper or any other contaminant). In addition, to obtaining NJDEP's consent for the continuation of the shutdown of the Park Avenue Facility until the upgrade completion in mid-2023, MWC is required to obtain from the NJDEP approval of a "change in source." As such, MWC is consulting and coordinating with NJDEP at every step in this process and is working to complete the current interim shut down of the Park Avenue Facility as quickly as possible. An interim shut down of the Park Avenue Facility will result in compliance with the MCL standard until the Park Avenue Facility is brought on line in mid-2023, which will permanently keep Park Avenue in compliance with the MCL standard.

Plaintiffs filed a First Amended Complaint on November 18, 2021 in State Court. (See the attached Exhibit "E"). Plaintiffs alleged that, "upon receiving Defendant's form Notices, various plaintiffs named herein and other class members; many of whom suffer from specific health concerns named in the Notices (i.e., are elderly; and/or have a severely compromised immune system; and/or are pregnant or have infant children) did exactly what the Notices urged

them to do. They followed Defendant's written directives in the Notices to consult with their doctors, to buy bottled water as a substitute for their contaminated tap water, and/or installed a water filter to protect against their contaminated tap water. Plaintiffs allege that "[i]n following those directives in Defendant's Notices, Plaintiffs and the other class members incurred out-of-pocket expenses, including co-pays for doctor's consultations, the cost of bottled water and/or the cost of installing a water filter." As such, Plaintiffs seek "indemnification and reimbursement under equitable and common law principles for themselves and several proposed classes of other similarly situated persons, for the expenses they incurred as a consequence of following the above-quoted directive in Defendant's Notices to seek medical advice about the drinking water and to replace the contaminated tap water with bottled water and/or a water filter for drinking and cooking."

On November 22, 2021, Plaintiffs filed an Order to Show Cause and/or an interlocutory injunction. In this Order to Show Cause, Plaintiffs sought temporary restraints and/or an interlocutory injunction to (1) enjoin and restrain MWC from supplying to its customers contaminated drinking water that contains levels of PFOA above New Jersey state drinking water standards, or in the alternative directing MWC to provide its customers with drinking water, in one form or another, that complies with those standards; and (2) direct that MWC provide reasonable and adequate notice of its continuing drinking water violation to all persons who utilize MWC's domestic water service.

On November 30, 2021, MWC filed Opposition to Plaintiffs' Order to Show Cause. In MWC's Opposition, MWC argued that Plaintiffs' Order to Show Cause was moot because: (1) MWC shut down the Park Avenue Wellfield on November 9, 2021 with permission of the

7

NJDEP; (2) MWC provided notice to its customers as required by, and approved by, the NJDEP; and (3) NJDEP has primary jurisdiction over this issue.

On December 22, 2021, the Honorable Michael A. Toto, A.J.S.C., granted the parties' proposed Consent Order as to Plaintiffs' Order to Show Cause. Specifically, the Court held that:

> Defendant has shut down the Park Avenue Wellfield and does not intend to activate or operate the Park Avenue Facility wellfields before the completion of the remediation of its Park Avenue Treatment facility unless: (a) the New Jersey Department of Environmental Protection or any other state agency with authority requires Middlesex to activate or operate its Park Avenue Facility wellfields; or (b) Middlesex, in its sole judgment, determines that activation and operation of Park Avenue Treatment wellfields is necessary for public health, adequacy of supply, or any other reason determined by Middlesex that necessitates doing so for it to provide safe and reliable water service in accordance with applicable New Jersey and federal law…Defendant will continue its regularly scheduled quarterly monitoring for PFOA. Middlesex will provide Plaintiffs' counsel with contemporaneous notice of results of its regularly scheduled monitoring for PFOA to Plaintiffs' counsel [sic].  (See the attached Exhibit "F").

Plaintiffs filed a Second Amended Complaint on April 25, 2022.  (See the attached Exhibit "G").

Notably, the Complaint, First Amended Complaint and Second Amended Complaint do not allege that MWC polluted its own water.  Indeed, the three Complaints do not focus on any alleged misconduct by MWC.  The three Complaints essentially focus entirely on the Notices that NJDEP ordered MWC to issue and only allege that Plaintiffs are entitled to reimbursement of costs of bottled water, filtration systems and doctor's visits that were recommended to them, but not required, pursuant directives issued to MWC by the NJDEP.  Specifically, Paragraph 5 of all three Complaints states as follows:

> This action arises solely from two uniformly-worded Notices which Defendants sent to  the class (Complaint – Exhibit "B")

> This action arises solely from two uniformly-worded Notices
> which Defendants sent to those Middlesex Water Company
> Customers who are billed directly by Defendant, the circumstances
> described in those form notices and the directives contained in
> those form notices. (First and Second Amended Complaints –
> (Exhibits "E" and "G").

Thus, the sole conduct of MWC that has triggered this action is MWC's compliance with NJDEP directives in sending Notices to customers when PFOA levels were reported to be above NJDEP guidelines due to third-party defendant 3M's pollution of the water supply.

On April 21, 2022, the Superior Court of New Jersey Certified five (5) classes pursuant to the Plaintiff's motion for certification. (See the attached Exhibit "H"). Each class and subclass were delineated as New Jersey Citizens who received the form Notices that MWC was required to send.

On May 4, 2022, MWC, a New Jersey citizen, filed a third-party complaint in the subject case against 3M, a citizen of the State of Minnesota, in State Court. (See the attached Exhibit "I"). On June 13, 2022, 3M filed a Notice of Appearance. (See the attached Exhibit "J"). On July 6, 2022, MWC filed a Notice of Removal removing this action to this Honorable Court bases upon 28 U.S.C. §1332(d)(2) and § 1453(b), and the Class Action Fairness Act of 2005. ("CAFA") (See the attached Exhibit "K"). Plaintiffs now move to remand the case to State Court.

## SUMMARY OF ARGUMENT

First, Defendant MWC contends that Plaintiffs in the subject action engineered their complaints by purposefully not naming the party that proximately caused any alleged damage to purposefully federal jurisdiction. Specifically, Plaintiffs engineered the complaints to refrain from naming 3M, a diverse entity and the known polluter, as a direct defendant. Further, Plaintiffs attempted to define the class members as New Jersey citizens who received the Tier 2

9

Notices to avoid diversity with the express purpose of avoiding federal jurisdiction. These acts alone constitute violations of the relevant case law, statutes and legislative intent of CAFA. However, even a cursory review done by MXW evidences that over five hundred (500) putative class members received the Tier 2 Notice as New Jersey citizens, but have since moved to other states creating diversity from a plethora of states including but not limited to Utah, California, Florida, Texas, Pennsylvania, Ohio, New York, Arizona, Kentucky, Illinois, Virginia, Massachusetts, Washington, South Carolina, Maryland and Georgis. See Affidavit of Jay Kooper, attached hereto as Exhibit "L" (The list redacts the customer names for privacy reasons. The list without redaction can be provided upon the Court's request).

Second, this Court already has jurisdiction through the related *Lonsk* case. *Lonsk* is pending in this Court with the proper primary tortfeasor, 3M, named as a direct defendant. The interests of judicial economy, efficiency and avoiding inconsistent rulings requires that this matter remain in federal court.

Third, the local controversy exception does not apply as MWC's conduct does not "form a significant basis" for the claims asserted. Indeed, Plaintiffs do not allege misconduct by MWC in the three complaints that they have filed. On the contrary, Plaintiffs allege conduct by MWC in the three complaints consistent with MWC complying with a direct order issued upon it by the NJDEP, a state regulatory agency. Further, the local controversy exception does not apply as the *Lonsk* matter, making the same allegations against MWC, was filed within the three years preceding this motion to remand.

Fourth, removal was timely in that it was done within 30 days of the appearance of 3M, the diverse entity, filing a Notice of Appearance and subjecting itself to jurisdiction in the State Court action.

10

Finally, as removal was proper and the motion to remand should be denied, Plaintiffs are clearly not entitled to fees and costs.

**LEGAL ARGUMENT**

**POINT I – THE HOME DEPOT CASE DID NOT HOLD THAT A DIRECT NON-DIVERSE DEFENDANT CANNOT REMOVE UNDER CAFA UPON THE IMPLEADER OF A DIVERSE THIRD-PARTY DEFENDANT**

Plaintiffs rely heavily on Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743 (2019), and argue that the case held that the filing of a third-party complaint by a non-diverse direct defendant/third-party plaintiff against a diverse third-party defendant cannot create diversity and thereby allow the original defendant to remove the case. That is not what Home Depot held. Home Depot solely held that the general removal statute, 28 U.S.C. § 1441(a), and 28 U.S.C. § 1453(b) of the Class Action Fairness Act of 2005, do not permit a third-party counter-claim defendant to remove a case based upon diversity. Indeed, the Court expressly stated the issue in the case:

> In this case, we address whether either provision allows a third-party counterclaim defendant – that is, a party brought into a lawsuit by the original defendant – to remove the counter claim filed against it. Home Depot at 1745-1746.

Home Depot in no way addressed the issue of whether an original defendant, who is compelled to bring a third-party action against an indispensable party that Plaintiffs intentionally failed to sue, can thereafter remove the case based upon the diversity of that third-party defendant. It is respectfully submitted that this issue is an issue of first impression for this Honorable Court, and that pursuant to the plain language of 28 U.S.C. § 1453(b), removal is proper and Plaintiffs' motion to remand this case to State Court should be denied.

28 U.S.C. § 1453(b) expressly states "[a] class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under

11

section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without consent of all defendants." By the plain meaning of this text, complete diversity is not required and there need be only one party to the case that is diverse for "any defendant" to remove the case "without regard" to whether that defendant is a citizen of the State in which the action was brought. MWC is a citizen of the State of New Jersey, where this action was originally brought. Third-party Defendant 3M is a citizen of Minnesota. As such, upon the appearance 3M, the minimal diversity requirement of 28 U.S.C. § 1453(b) was satisfied, and MWC, which clearly qualifies as "any defendant" under this statute, was permitted to remove this case to Federal Court.

**POINT II – REMOVAL IS PROPER UNDER 28 U.S.C. § 1332(d) AND THE CLASS ACTION FAIRNESS ACT ("CAFA")**

Under 28 U.S.C. § 1332(d)(2), "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a state different from any defendant; (B) any member of a class of plaintiffs is a citizen of a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of state; or (C) any member of a class plaintiffs is a citizen of a state and any defendant is a foreign state or a citizen or a citizen or subject of a foreign state."

This action satisfies the minimal diversity requirement of 28 U.S.C. § 1332(d) as plaintiffs allege all class members are residents of New Jersey, and third-party defendant 3M is a resident of Minnesota. In addition, since the inception of the lawsuit, approximately 511 customers of MWC have stopped their MWC water account and are now citizens of states diverse from New Jersey, thus making them diverse from both MWC and 3M. (See Affidavit of

12

Jay Kooper, annexed hereto as Exhibit "L"). Despite Plaintiffs' blatant attempt to avoid CAFA jurisdiction, they defined their classes and subclasses as "New Jersey citizens to whom [MWC] sent a form notice…", and the State Court granted class certification based upon that definition. However, those class and subclass definitions are silent as to those putative class members once they move out of the State of New Jersey. In fact, as of July 22, 2022, 511 customers who received MWC's Tier 2 Notice, customers who would qualify as putative class members, have moved out of New Jersey and into foreign states. Thus, despite Plaintiffs' glaring attempt to avoid CAFA and federal jurisdiction, there is diversity between Plaintiffs and MWC because more than 500 class members reside outside of the State of New Jersey. This number will only increase as the litigation continues. According, depite the Plaintiffs' best efforts to avoid the Court's jurisdiction, there is sufficient diversity under CAFA for this Court to have jurisdiction, as it rightfully maintains in the *Lonsk* matter.

This action also satisfies the amount in controversy requirement of 28 U.S.C. § 1332(d) as plaintiffs have placed more than $5,000,000 in controversy. Specifically, the Complaint alleges that the Notices at issue were sent to over 20,000 MWC customers, and that each customer would be entitled to reimbursement of approximately $3,000, thus exceeding $5,000,000.

While there was previously a presumption against federal jurisdiction when state court cases were removed to federal court, the Supreme Court has unequivocally clarified that "no antiremoval presumption attends cases invoking CAFA." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014).

The Supreme Court has also recognized CAFA's deviation from traditional tenets of federal jurisdiction by noting that "Congress intended CAFA to be interpreted expansively", and

that "[i]n furtherance of this objective", "CAFA wrought several changes to the Judicial Code including amending the federal diversity statute, 28 U.S.C. § 1332(d)(2) and liberalizing the requirements governing removal from state court, 28 U.S.C. § 1453." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

It is also established that Congress' intent in passing CAFA was to retain federal jurisdiction over interstate class actions. "[T]he overall intent of [CAFA] is to strongly favor the exercise of federal diversity jurisdiction over [interstate] class actions." Dart Cherokee at 561. In addition, it has been recognized that "Congress passed [CAFA] 'primarily to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." Visendi v. Bank of America, N.A., 733 F.3d 863 (9th Cir. 2013) quoting Tanoa v. Dow Chem. Co., 561 F.3d 945, 953 (9th Cir. 2009).

In the matter at bar, Plaintiffs' intentional failure to name 3M as a direct defendant, given the existence of the *MWC v. 3M* action in this Court for three years prior to the filing of this case in State Court, and the known facts that MWC did not pollute its own water, is just the type of abuse of the class action device that Congress sought to curb. Plaintiffs' intentional omission of 3M as a direct defendant in order to keep in State Court a case that rightfully belongs in Federal Court is in direct contravention to both the plain language of and Congress' intent in passing CAFA.

### POINT III – REMOVAL IS PERMITTED WHERE IT CAN BE ESTABLISHED THAT PLAINTIFFS PURPOSEFULLY ENGINEERED THE COMPLAINT TO AVOID FEDERAL JURISDICTION

Even assuming *arguendo* that the plain text of 28 U.S.C. 1332(d)(2) and 28 U.S.C. § 1453(b) does not permit removal as Plaintiffs argue, removal is proper where it can be

established that Plaintiffs purposefully engineered the complaint to avoid federal jurisdiction. It is beyond denial that that is precisely what Plaintiffs have done in this case.

It is well settled that federal courts may determine jurisdiction over class actions under certain conditions pursuant to CAFA by weighing several judicial interests, one of which is an inquiry into "whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction." 28 U.S.C. § 1332(d)(3). There can be no doubt that Plaintiffs have done so in the case at bar. As noted, the *MWC v. 3M* case, a matter of public record, was pending for three years prior to the filing of this case. The *Lonsk* case was filed in this Court eleven days after the filing of this case, with the same allegations as in this case but adding 3M, the polluter and indispensable party, as a direct defendant. As noted, counsel for Plaintiffs in the *Lonsk* matter have now served a notice of appearance as co-counsel for Plaintiffs in this matter. Clearly counsel knew of the identity of the polluter, 3M, but chose not to sue 3M as a direct defendant in order to avoid federal jurisdiction. This was a fraudulent non-joinder of an indispensable party in order to avoid federal jurisdiction.

To avoid the proper consequences of the wrongful and purposeful engineering of the complaint, and to support the instant groundless motion to remand this case to State Court, Plaintiffs erroneously argue that a number of cases decided since Home Depot mandate remand in this case. Plaintiffs are incorrect. The majority of the cases cited by Plaintiffs are completely distinguishable on the grounds that removal in those cases was not based upon 28 U.S.C. § 1332(d)(2) and 28 U.S.C. §1453(b). Simply put, the grounds for removal in those cases was not based upon CAFA, as it was here.

Reecon N. Am., LLC v. Du-Hope Int'l Grp., No. 2:18-CV-02234-JFC, 2019 U.S. Dist. LEXIS 103915 (W.D. Pa. June 20, 2019) involved removal based upon federal question

jurisdiction pursuant to a treaty, the United Nations Convention on the International Sale of Goods. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

Broad Coverage Serv. v. Oriska Ins. Co., No. 20-CV-1108 (PMH), 2021 U.S. Dist. LEXIS 45908 (S.D.N.Y. Mar. 11, 2021) involved a third-party defendant, not a direct defendant, attempting to remove a case by arguing that they were the real party-in-interest to the operative pleading and thus should be able to remove under 28 U.S.C. § 1441(a). The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

Amazing Trucking & Logistics v. Am. Inter-Fidelity Corp. No. 2:19 CV 284, 2020 U.S. Dist. LEXIS 60936 (N.D. Ind. Apr. 7 2020), actually involved a plaintiff who attempted removal of its own case under 28 U.S.C. § 1332. The Court noted that plaintiff is not permitted to remove a case and in any event could not satisfy the amount in controversy requirement. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

Chejfec v. Citibank N.A., No. 18-CV7601, 2019 U.S. Dist. LEXIS 192894 (N.D. Ill. July 2, 2019), involved a defendant attempting removal based on diversity jurisdiction and a counterclaim, arguing that the counterclaim satisfied the amount in controversy issue. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

Capital One Bank United States v. Jones, No. 2:18-cv-12988-ES-CLW, 2019 U.S. Dist LEXIS 181760 (D.N.J. Jan 4, 2019), involve a collection action not a class action. The Court held that Defendant was not permitted to remove based upon a counter-claim that purportedly

16

created federal question jurisdiction. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826 (2002) involved a claim for a declaratory judgment, and a counter-claim raised a patent-infringement claim under federal law. The Court held that the counter-claim could not create federal question jurisdiction. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

State of Texas by and Through Bd. of Regents of the Univ. of Texas v. Walker, 142 F.3d 813 (5th Cir. 1998) involved an employment dispute and contract claim. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

OSI Educ. Servs. V. Albert, No. 07-3508, 2007 U.S. Dist LEXIS 98703 (2007 WL 3511884 (D. Minn. Sept. 28, 2007) involved a defendant who attempted to remove a case based upon federal question jurisdiction. The case was not a class action and removal did not invoke 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

The only case that Plaintiffs have cited that involves a class action is Cowan v. Lifelong Med. Care, No. 21-cv-10062-VC, 2002 U.S. Dist. LEXIS 64203 (N.D. Cal. Apr. 6, 2022). Initially, it is noted that this case is not binding authority on this Court and is at most persuasive authority on this Court. The issue at bar is a an issue of first impression in this Court. MWC asserts that Cowan was incorrectly decided in first instance. Even so, it is also noted that there is language in Cowan that supports denial of remand in this case. Specifially, the Cowan court held that remand would not be proper if it could be established that Plaintiffs engineered their complaint to avoid federal jurisdiction. The Court in Cowan, then found that Defendant Lifelong did not adequately allege that Plaintiff engineered the complaint to avoid federal court, and that

17

the Plaintiff's complaint *"focuses on misconduct by Lifelong."* (emphasis added) <u>Cowan</u> at pg. 5.

This case is different. In fact, it is the polar opposite of the fact pattern in <u>Cowan</u>. As noted, in the matter at bar, the three complaints filed in this matter do not *"focus on misconduct"* by MWC. The Vera Plaintiffs' complaints do not allege that MWC polluted its own water, and that is because Plaintiffs know full well the identity of the polluter, 3M. The three Vera Plaintiffs' complaints filed in this matter focus on one thing and one thing only, to seek reimbursement for the costs of bottled water, filtration devices and doctor's visits that were recommended under certain circumstances and that the Plaintiffs all claim are the direct result of MWC's conduct in issuing Notices to them under the direct orders from NJDEP, a state regulatory agency.

Indeed, in their motion to remand, Plaintiffs' counsel expressly states the "claims pleaded in the class complaint arise from two uniformly-worded notices which MWC sent to MWC customers." (Plaintiffs Memorandum of Law at pg. 2). MWC was ordered to send such Notices by the NJDEP. That is not misconduct. It is in fact the exact opposite of misconduct. It is compliance with the direct order of a governing body with jurisdiction over MWC. Plaintiffs have conceded that their complaints do not allege any pollution of the water by MWC. Thus, unlike the complaint in the <u>Cowan</u> case, which the Court held, *"focuses on misconduct by Lifelong"*, the complaints in this case do not focus on any alleged misconduct of MWC. As such, MWC adequately alleges and indeed it is established that Plaintiffs in the instant matter engineered the complaint to intentionally omit 3M as a direct defendant, in order to avoid what is proper federal court jurisdiction in this matter.

**POINT III – THE LOCAL CONTROVERSY EXCEPTION DOES NOT APPLY**

Plaintiffs argue that even if removal was proper, which it was, the local controversy exception requires this court to remand the case to state Court. However, plaintiffs do not satisfy all of the elements of the local controversy exception. The local controversy exception requires that "the local defendant's conduct forms a significant basis for the claims asserted." 28 U.S.C. § 1332(d)(4)(A). Plaintiffs' entire action is based upon elevated levels of PFOA in the Park Avenue Well Field. Plaintiffs do not allege that MWC caused these elevated PFOA levels. Plaintiffs are and were for the three years prior to the filing of their initial complaint in this matter on notice that 3M caused these elevated PFOA levels. As such, it is beyond dispute that MWC's conduct does not form a significant basis for the claims asserted. To the contrary, it is 3M's conduct that forms the only basis for the claims asserted. As noted, Plaintiffs' complaint and amended complaints focus on the Notices that MWC was ordered to issue by the NJDEP. These required Notices cannot be considered, and are not a "significant basis" for the claims asserted. The elevated PFOA levels arose out of the conduct of 3M. MWC was required by NJDEP to notify its customers of the elevated PFOA levels and did so through the issuance of the two Notices, including the specific language contained in these notices, at the direction of and close supervision by the NJDEP.

Indeed, Plaintiffs' own Memorandum of Law actually confirms that the "significant basis" for the claims asserted are in reality the actions of 3M, not MWC. Plaintiffs state that the "sole basis" of the complaint is MWC's "act in sending out form notices to its customers, directing them to take certain actions and admitting that the water being sold to customers by Middlesex Water Company failed to meet minimal New Jersey Standards for drinking water." (Plaintiffs' Memo of Law at pg. 24). The form Notices that MWC sent and the directives in them were controlled by and required by the NJDEP. As such, those actions do not constitute

19

misconduct and therefore cannot be a "significant basis" for the claims asserted. That would mean that MWC can be sued for complying with the directives of the regulatory authority overseeing MWC. That is a nonsensical outcome. Thus, Plaintiffs are left with MWC "admitting" that the water did not meet minimal New Jersey standards. Admitting that the water did not meet the standards is not misconduct. Causing the water to not meet the standards is misconduct, and Plaintiffs never allege that MWC caused the water to not meet the standards. Plaintiffs are fully aware that 3M, the party they purposefully chose not to sue in order to engineer the complaint to avoid federal jurisdiction, is the entity that caused the water not to meet the standards.

In addition, the local controversy exception requires that "no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years." 28 U.S.C. § 1332(d)(4)(A). Plaintiffs then inexplicably state "[i]t is undisputed that no other class actions have been filed against defendant Middlesex Water Company in the last three years involving any claims remotely similar to the case at bar." (Plaintiffs' Memo of Law at pg. 26). This completely ignores the *Lonsk* matter which makes virtually all of the same claims of the case at bar, and in which there is counsel from the same law firm that has filed a notice of appearance in both matters. Clearly, Plaintiffs cannot satisfy this element of the local controversy exception and the motion to remand should be denied.

### POINT IV – THE REMOVAL WAS TIMELY

Plaintiffs' argue that the removal was untimely in that it was not filed within 30 days of the service of the Second Amended Complaint upon Defendant MWC on April 25, 2022. This argument ignores that removal was based on minimal diversity under 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b), the CAFA standards, and this minimal diversity was not established until the diverse party, 3M, filed a notice of appearance on June 13, 2022. The notice of removal was

then filed on July 6, 2022, 23 days after 3M filed its notice of appearance and minimal diversity was established, well within the 30 day time limit.  There was no minimal diversity as required under 28 U.S.C. §1332(d)(2) on April 25, 2022 because Plaintiffs deliberately chose not to name the diverse indispensable party, 3M, at that time.

Plaintiffs alternatively argue that the 30 days should run from the filing of the third-party complaint against 3M, which was May 4, 2022.  Plaintiffs argue that the filing of the third-party complaint alone without 3M's appearance created federal diversity jurisdiction over this matter.  Plaintiffs' cite no cases to support this argument.  Further, the argument fails in that neither the State Court or Federal Court could exercise jurisdiction over 3M until it either appeared or defaulted in the lawsuit.  3M did not default, and filed its notice of appearance on June 13, 2022, submitting to the jurisdiction of the State Court.  Thus, federal diversity jurisdiction over 3M and the case as a whole began when 3M filed its notice of appearance.  This argument also ignores the fact that a plaintiff is not permitted to remove a case, only a defendant.  MWC was only a third-party plaintiff as to 3M on May 4, 2022, and thus could not remove the case without an appearance by 3M.  Once 3M filed its notice of appearance on June 13, 2022, MWC became permitted to remove the case as a direct defendant exercising its rights under 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b).

### POINT V – PLAINTIFFS ARE NOT ENTITLED TO FEES AND COSTS

Plaintiffs are not entitled to fees and costs pursuant to 28 U.S.C. § 1447.  As demonstrated above, removal was entirely proper and thus Plaintiffs are not entitled to fees and costs.  Indeed, as demonstrated, the motion for remand should be denied.

In addition, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S. Ct. 704 (2005).  There is

21

LEGAL\58820424\1

clearly an objectively reasonable basis for seeking removal in this case. 28 U.S.C. §1332(d)(2) and 28 U.S.C. §1453(b) expressly permit removal under the circumstances of this case.

**CONCLUSION**

For the foregoing reasons, MWC respectfully requests that this Court deny Plaintiffs' Motion to remand this matter to State Court.

Respectfully submitted,

Vincent Pozzuto (VP-7108)

Dated:  July 25, 2022

22