**B**

**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951

**JAVERBAUM, WURGAFT, HICKS,
KAHN, WIKSTROM & SININS, P.C.**
Michael A. Galpern, Esquire
Zachary M. Green, Esquire
1000 Haddonfield-Berlin Rd., Ste. 203
Voorhees, New Jersey 08043
(856) 596-4100

**Attorneys for Plaintiff and the Proposed Class**

| | |
|---|---|
| TOMAS VERA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MIDDLESEX WATER COMPANY, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> MIDDLESEX COUNTY <br> LAW DIVISION <br><br> DOCKET NO. <br><br> **CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.      This is a class action, brought on behalf of a proposed class of New Jersey citizens to whom Defendant sent the Attachment A form notice in October 2021.

2.      This action does not bring any claims under the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-5 and does not seek any relief from the New Jersey Department of Environmental Protection ("NJ DEP") or any relief which is within the power or jurisdiction of the NJ DEP to grant.

3.   Nor does this action bring any claim within the jurisdiction of the New Jersey Board of Public Utilities ("BPU") and does not seek any relief from the BPU or any relief which is within the power or jurisdiction of the BPU to grant.

4.      Rather, the sole relief sought in this action is an order from the New Jersey Superior Court:

1

a) Directing Defendant to pay money damages to reimburse class members for the costs they have incurred or will incur in following the directive in the Attachment A form notice directing that certain categories of persons specified in the notice to seek medical advice;

b) Directing Defendant to pay money damages to reimburse class members for the costs they have incurred or will incur in following the directive in the Attachment A form notice directing class members to use bottled water in lieu of tap water for drinking and cooking;

c) Directing Defendant to pay money damages to reimburse class members for the costs they have incurred or will incur in following the directive in the Attachment A form notice directing class members to install a home water filter; and

d) Directing that a program of adequate injunctive and equitable relief be established under the court's equitable powers in order to protect the class and mitigate the effects described in the Attachment A form notice on class members, including a court-supervised program of periodic medical testing of class members on multiple occasions over time as described in the landmark decision <u>Ayers v. Jackson Twp.</u>, 106 N.J. 557 (1987).

5.    This action arises solely from a uniformly-worded form notice which Defendant sent to the class on October 22, 2021 which is entitled:  **"Important Information About Your Drinking Water"** and is sub-titled:  **"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards"** (hereafter "the Notice"). <u>See</u> Attachment A, Middlesex Water Company Notice dated October 22, 2021.

6.    The Notice stated to class members that:

> **"<u>Our water system recently violated a New Jersey drinking water standard</u>, and as our customers, you have a right to know what happened, <u>what you should do</u>, and what we are doing to correct this situation." (emphasis added)**

7.    Defendant's Notice to the class went on to admit that the water distributed by Defendant to class members had violated a New Jersey standard relating to the allowable amount of a chemical human carcinogen called perfluoroactanoic acid ("PFO") in drinking water, and,

2

indeed, that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. See Attachment A:

> **"New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results."**

8.      Defendant's Notice went on to explain the consequences and risks involved in exposure to PFOA in drinking water as levels higher than the allowable standard, stating in a section of the Attachment A form notice entitled **"What does this mean?"** that:

> **"People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system.**
>
> **Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood."**

9.      Defendant's Notice also directed recipients of the Notice to take certain steps, in a section entitled **"What Should I do?"** See Attachment A.

10.     For example, Defendant directed certain specified categories of recipients of the Notice to seek medical advice regarding drinking the water provided by Defendant, stating:

> **"If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water."** (emphasis added)

11.     Defendant's Notice further directed that recipients should consider using bottled water for drinking and cooking to reduce exposure to PFOA or installation of a home water filter.

Id.

12.     The Notice stated specifically that these directives were based on what the Notice itself described as violations of standards by Defendant.

13.     Upon receiving Defendant's form Notice, Plaintiff, who suffers from specific health concerns and a severely compromised immune system, did exactly what the Notice urged him to do. He followed Defendant's written directives to consult with his doctor and buy bottled water as a substitute for his contaminated tap water. In following that directive, Plaintiff incurred out-of-pocket expenses, including a co-pay for that doctor's consultation and the cost of bottled water; costs which were fully foreseeable to Defendant at the time Defendant placed the directive in its Notice.

14.     In issuing these directives, Defendant was not simply acting out of altruism, but rather Defendant sought to benefit itself through the Notice by trying to eliminate or minimize Defendant's potential liability for the violation of drinking water standards described in the Notice.

15.     The truth and accuracy of the assertions and admissions made by Defendant in the Notice regarding this violation are not at issue in this action.

16.     Defendant is legally and equitably estopped from denying Defendant's own statements which Defendant placed in a written form notice which it sent to the class.

17.     Moreover, what is important for the purposes of this Complaint is not whether Defendant's assertions and admissions in the Notice were true or accurate, but the fact that Defendant made these written statements to the class, along with written directives to the class to take certain actions.

18.     Defendant knew when it issued the Notice that class members would follow

4

Defendant's directives to take certain actions and would thereby incur costs and expenses in following those directives.

19.   Plaintiff now files this lawsuit, seeking indemnification and reimbursement under equitable and common law principles for himself and a class of other similarly situated recipients of Defendant's Notice, for the expenses he incurred as a consequence of following the above-quoted directive in Defendant's Notice to seek medical advice about his drinking water and to replace the contaminated tap water with bottled water and a water filter for drinking and cooking as well as future medical monitoring to ensure his exposure has not caused the risk of a disease.

20.   Put simply, having admitted and alleged in Defendant's own Notice that Defendant's violation of standards had made it necessary for Defendant to issue written directives to Plaintiff and the class to seek medical advice, use bottled water and obtain a water filter, Defendant is now legally and equitably obligated to pay the cost incurred by Plaintiff and the class in carrying out Defendant's written directive.

21.   This is especially true since at least one purpose of Defendant sending that Notice was to try to minimize Defendant's potential liability for the admitted violations by inducing class members to take the actions directed in the Notice.

**THE PARTIES**

22.   Plaintiff is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff is a member of the proposed class in that he received the Attachment A Notice from Defendant, has specific health concerns and a severely compromised immune system, and followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking and to install a water filter. In

5

following Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs in the form of a co-pay for the medical visit and the cost of bottled water and the water filter.

23.     Defendant Middlesex Water Company is a New Jersey corporation with its principal place of business at 485C Route One South, Suite 400, Iselin, New Jersey, and thus is a citizen of New Jersey. Defendant supplies water to New Jersey citizens who reside in Middlesex County, New Jersey.

## JURISDICTION AND VENUE

24.     This class action complaint raises claims against a New Jersey Defendant on behalf of a proposed class composed entirely of those New Jersey citizens who are or were customers of Defendant who received the relevant Attachment A form notice and who purchased water from Defendant for their New Jersey homes. The claims of Plaintiff and the class arise exclusively under New Jersey state law.

25.     There is no federal jurisdiction over this matter in that the Plaintiff, the Defendant and all members of the proposed class are all New Jersey citizens and thus diversity is lacking and no federal claims or federal questions are at issue in this complaint.

26.     This matter is properly venued in Middlesex County, New Jersey, in that Plaintiff and each class member is a resident of Middlesex County, New Jersey and is supplied water by Defendant to their homes in Middlesex County, New Jersey. Additionally, the injuries to Plaintiff and the class occurred in Middlesex County, New Jersey.

## FACTUAL BASIS FOR THE RELIEF REQUESTED

27.     Defendant is a water company that supplies water to approximately 61,000 New Jersey citizens.

28.     On or about October 22, 2021, Defendant distributed a form Notice to its

6

customers.

29.     This form Notice, which is attached hereto as Attachment A, was entitled

**"Important Information About Your Drinking Water"** and was sub-titled:  **"Middlesex
Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water
Standards"**.

30.     PFOA, or Perfluorooctanoic Acid, is a likely human carcinogen that is known to

never break down in water, soil, or the human body. Thus, once released into the environment

PFOA is persistent in the environment. PFOA is also bioretentive and bioaccumulative, meaning

once it enters a human body it never leaves.

31.     Scientific studies have shown PFOA exposure causes at least six diseases:

ulcerative colitis; pregnancy-induced hypertension; high cholesterol; thyroid disease; testicular

cancer; and kidney cancer. Several published peer-reviewed journals, prove that the chemical

affects the entire body, even at low exposure levels. The research has concluded that PFOA

poses a health threat even at very low level.

32.     As admitted in Defendant's Attachment A form notice, the State of New Jersey

has established a legal standard for PFOA in drinking water of 14 parts per trillion (ppt). See

Attachment A.

33.     The Notice admits to class members that the water delivered and sold by

Defendant to the class violated that standard, admitting:  **"Our water system recently violated
a New Jersey drinking water standard…."**.

34.     Defendant's Notice to the class went on to admit that Defendant's water in

August and September 2021 contained more than double the amount of PFOA allowed under

that standard. See Attachment A:

7

> **"New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results."**

35.     It is submitted that Defendant is now equitably and legally estopped from denying the written admissions it made in this written notice. Indeed, this action is not about proving these violations of standards, because Defendant itself has already admitted to the violation of standards in writing.

36.     Moreover, the truth and accuracy of the assertions and admissions made by Defendant in the Notice regarding this violation are not at issue in this action. Rather, what is important for the purposes of this Complaint is that Defendant made these assertions and admissions in a Notice which Defendant drafted and distributed to the class.

37.     Regardless whether the admissions made by Defendant are true and accurate, the fact is that Defendant made them to the class and directed the class to take certain actions; directions which many class members followed or will follow and thereby have incurred or will incur reasonable and foreseeable expenses.

38.     In short, this action is about the words in Defendant's notice. As a result, Defendant is now estopped from denying the truth and accuracy of those statements.

39.     After admitting to a violation of drinking water PFOA standards, Defendant's Notice went on to explain the consequences and risks involved in exposure to PFOA in levels higher than the allowable standard, stating in a section of the Attachment A form notice entitled **"What does this mean?"** that:

> **"People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system.**
>
> **Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood."**

40.    Perhaps most importantly, Defendant's Notice also directed recipients of the Notice to take certain affirmative actions, in a section entitled **"What Should I do?"** See Attachment A.

41.    For example, Defendant directed certain specified categories of recipients of the Notice to seek medical advice regarding drinking the water provided by Defendant, stating:

> **"If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and <u>should seek advice from your health care providers about drinking this water</u>." (emphasis added)**

42.    Defendant's Notice further directed that recipients should consider using bottled water for drinking and cooking to reduce exposure to PFOA and/or install a home water filter. Id.

43.    The Notice stated specifically that these directives were based on what the Notice itself described as violations of standards by Defendant.

44.    Plaintiff is a citizen of New Jersey, a resident of Middlesex County and a water customer of Defendant.

45.    Plaintiff received the Defendant's form Notice attached hereto as Attachment A on or about October 23, 2021, or shortly thereafter.

46.    Upon reading the Notice, Plaintiff was extremely concerned because he suffers from specific health concerns and a compromised immune system and thus fell into the category

9

of persons defined by Defendant in Defendant's Notice, whom Defendant directed **"should seek advice from your health care providers about drinking this water."** (emphasis added). See Attachment A.

47.     Consequently, Plaintiff followed Defendant's directive in the Notice and promptly sought evaluation from his doctor, for which he was required to pay a doctor's co-pay that has not be reimbursed by anyone.

48.     In addition, Plaintiff followed the directive in the Attachment A form notice that advised that recipients of the Notice substitute bottled water for tap water for drinking and cooking. In following that directive, Plaintiff incurred expenses for such bottled water. He has not been reimbursed for such costs by anyone.

49.     Finally, Plaintiff intends in the immediate future to follow the directive in the Attachment A form notice that advised that recipients of the Notice to install **"a home water filter that is certified to reduce levels of PFOA."** In so doing, he will incur costs that will not be reimbursed by anyone.

50.     On behalf of himself and a class and/or sub-class of similarly situated persons, Plaintiff now seeks an order from the New Jersey Superior Court:

> a. **Directing Defendant to pay money damages to reimburse class members for the costs they have incurred or will incur in following the directive in the Attachment A form notice directing certain categories of persons specified in the notice to seek medical advice as to the water contamination described in said form notice;**
>
> b. **Directing Defendant to pay money damages to reimburse class members for the costs they have incurred or will incur in following the directive in the Attachment A form notice to use bottled water in lieu of tap water for drinking and cooking;**
>
> c. **Directing Defendant to pay money damages to reimburse class members for the costs they have incurred or will incur in following the directive in the**

10

Attachment A form notice to install a home water filter to reduce PFOA in their tap water; and

d. Directing that a program of adequate injunctive and equitable relief be established under the court's equitable powers in order to protect the class and mitigate the effects described in the Attachment A form notice on class members, including a court-supervised program of periodic medical testing of class members on multiple occasions over time as described in the landmark decision Ayers v. Jackson Twp., 106 N.J. 557 (1987).

### CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action as a class action pursuant to Rule 4:32, seeking relief on behalf of a proposed main class defined as:

> All New Jersey citizens to whom Defendant sent the Attachment A form notice.

52.     Plaintiff also brings this action as a class action pursuant to Rule 4:32, seeking relief on behalf of a proposed sub-class defined as:

> All New Jersey citizens to whom Defendant sent the Attachment A form notice, who at the time had "specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly," as those terms are used in the Notice, and who incurred or will incur medical expenses as a result of following the directive issued by Defendant in the Attachment A form notice that directed such persons to seek advice from their health care providers.

53.     The class and sub-class are each so numerous that joinder of all members is impracticable.

54.     The exact number and identities of the persons who fit within the proposed classes are either contained in Defendant's records or can be ascertained from those records.  It is alleged that the proposed class contains at least one hundred persons.

55.     The claims in this action arise exclusively from the language Defendant chose to place in Defendant's uniformly-worded Attachment A Notice and the admissions, assertions and directive Defendant issued therein.

11

56.     No claims are a result of any individualized interaction between Defendant and any class member.

57.     There are numerous common questions of law and fact affecting the rights of class members, including inter alia:

a.  Whether Defendant is bound by the admissions and assertions made by Defendant in the Attachment A Notice that a violation by Defendant of the standards specified in the Notice made it necessary for the class to seek medical advice;

b.  Whether Defendant owed a legal duty to recipients of the Notice such as Plaintiff and the class;

c.  Whether it was foreseeable to Defendant that Plaintiff and the class would incur costs and/or be harmed as a result of following Defendant's directives in the Notice;

d.  Whether Defendant's refusal to reimburse Plaintiff and the class for the cost incurred in following Defendant's written directives breached a legal duty owed to Plaintiff and the class;

e.  Whether equitable principles demand that Defendant reimburse Plaintiff and the class for the cost they incurred in following Defendant's directives in the Notice, directives which the Notice admits and asserts were made necessary by Defendant's violation of legal standards; and

f.  Whether the class is in need of a court-monitored program of injunctive and equitable relief, including periodic medical monitoring on multiple occasions over time, under the New Jersey Supreme Court holding in Ayers v. Jackson Twp., 106 N.J. 557 (1987).

58.     Plaintiff is a member of the classes he seeks to represent.

59.     The claims of Plaintiff are not only typical of all class members, they are identical.

60.     All claims of Plaintiff and the classes arise from the same violation and form Notice by Defendant as outlined herein, and all claims are based on the exact same legal theories.

61.     Plaintiff seeks the same relief for himself as for every other class member.

62.     Plaintiff has no interest antagonistic to or in conflict with the classes.

63.     Plaintiff will thoroughly and adequately protect the interests of the classes, having

12

retained qualified and competent legal counsel to represent himself and the classes.

64.     Defendant has acted and/or refused to act on grounds generally applicable to the classes, in that it committed a violation of the drinking water requirement that adversely affected all class members and sent a form Notice to class members, thereby making appropriate injunctive relief for each class as a whole.

65.     The prosecution of separate actions by individual class members will create a risk of inconsistent or varying adjudications, would as a practical matter be dispositive of the interests of other members not parties to the adjudications, and would substantially impair or impede their ability to protect their interests.

66.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the medical expenses paid by each class member were less than $2,000 and thus are not great enough to make separate individual lawsuits against Defendant economically viable.

67.     Common questions will predominate, and there will be no unusual manageability issues.

## COUNT ONE

### GENERAL EQUITY/ EQUITABLE INDEMNITY/RESTITUTION

68.     Plaintiff repeats and re-alleges the paragraphs above as if fully set forth herein.

69.     Defendant intended that Plaintiff and the class would rely upon the truth and accuracy of the statements made by Defendant in the Notice, and that they would follow the directives placed in the Notice as a result of Defendant's admitted violation of drinking water standards.

70.    Under the principles of general equity, Defendant is required to reimburse Plaintiff and the class for the costs incurred in following the written directives issued by Defendant in the Attachment A Notice, particularly when the Notice drafted by Defendant clearly and expressly admitted that this directive was made necessary solely due to what Defendant itself admitted in the Notice were violations of standards by Defendant.

71.    In issuing the Notice, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for those violations of PFOA standards by urging them to seek medical advice, substituting bottled water for tap water, and using a water filter.

72.    Under the facts and circumstances alleged herein, equity requires Defendant to reimburse Plaintiff and the class members for any and all out-of-pocket costs and expenses they incurred or will incur as a result of following the directive set forth in Defendant's Notice.

73.    Wherefore, Plaintiff and the class seek indemnification and restitution from Defendant under equitable principles.

## COUNT TWO

### INJUNCTIVE RELIEF AND MEDICAL MONITORING

74.    Plaintiff repeats and re-alleges the paragraphs above as if fully set forth herein.

75.    Plaintiff and the class are in need of injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiff and the class members for any and all out-of-pocket costs and expenses they incurred or will incur as a result of following Defendant's written directives set forth in Defendant's Notice.

76.    Plaintiff and the class also seek an order for injunctive and equitable relief, establishing a court supervised and medically appropriate program of medical monitoring and

14

testing as described in the landmark decision <u>Ayers v. Jackson Twp.</u>, 106 N.J. 557 (1987), at Defendant's expense.

## COUNT THREE

## EQUITABLE ESTOPPEL

77.    Plaintiff repeats and re-alleges the paragraphs above as if fully set forth herein.

78.    Defendant is equitably estopped from denying the truth and accuracy of the statements made by Defendant in the Attachment A Notice that Defendant's violations of legal standards, as asserted and admitted by Defendant in the Notice, required that Plaintiff and the class follow Defendant's directives set forth in that Notice.

79.    At the time Defendant made these statements in the Attachment A Notice, Defendant was fully aware that Plaintiff and the class would believe these statements made by Defendant in the Notice and that Plaintiff and the class would incur costs as a result of following Defendant's written directives in the Notice as a result of what the Notice itself describes as a violation of standards by Defendant.

80.    In issuing the Notice, Defendant sought to, <u>inter alia</u>, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for those violations by urging the class to seek medical advice early, to substitute use of tap water for bottled water and to use water filters.

81.    As a result, Defendant is estopped from denying that Defendant's violations caused Plaintiff and the class to incur such costs or that Defendant is equitably obligated to reimburse such costs.

15

## COUNT FOUR

### NEGLIGENCE

82.    Plaintiff repeats and re-alleges the paragraphs above as if fully set forth herein.

83.    Defendant owed a legal duty to the class, including the duty to exercise the care that would be exercised by a reasonable person or entity under similar circumstance.

84.    By the actions complained of herein, Defendant breached the duties owed.

85.    A result of those breaches, Plaintiff and the class incurred damages in the form of the costs incurred by following the directives issued by Defendant in the Notice.

## COUNT FIVE

### UNJUST ENRICHMENT

86.    Plaintiff repeats and re-alleges the paragraphs above as if fully set forth herein.

87.    By the acts alleged herein, Defendant received an unearned benefit from Plaintiff and the class under circumstances which were unjust.

88.    Specifically, Defendant was legally and equitably obligated to pay the costs of medical evaluation and medical advice, bottled water and water filters, which Defendant's own Notice admits were necessary and which Defendant's own Notice admits were made necessary by what Defendant's own Notice describes as a violation of legal standards by Defendant.

89.    In issuing the Notice, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for costs associated with the admitted violations of PFOA water standards.

90.    By the acts alleged herein, Plaintiff and the class conferred a benefit on Defendant by paying costs and expenses which were legally and equitably owed by Defendant, under circumstances which were unjust and under which Plaintiff and the class have a reasonable

expectation of reimbursement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court to:

a.    Certify this matter as a class action pursuant to Rule 4:32;

b.    Require Defendant to pay restitution and indemnification to Plaintiff and the class as described herein;

c.    Grant equitable and injunctive relief to Plaintiff and the class as described herein;

d.    Award Plaintiff reasonable attorneys' fees and costs; and

e.    Grant Plaintiff and the class such other and further legal, equitable and declaratory relief as justice requires.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

**DeNITTIS OSEFCHEN PRINCE, P.C.**

Dated:  October 29, 2021          By:  _____

Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Fax: (856) 797-9978
sdenittis@denittislaw.com

and

Michael A. Galpern, Esquire
Zachary M. Green, Esquire
**JAVERBAUM, WURGAFT, HICKS,**
   **KAHN, WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Ste. 203
Voorhees, NJ 08043

17

Telephone:  (856) 596-4100
Fax:  (856) 702-6640
mgalpern@lawjw.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding. There are no other parties known to Plaintiff at this time who should be joined in this action.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Stephen DeNittis and Michael Galpern are designated as trial counsel on this complaint.

DeNITTIS OSEFCHEN PRINCE, P.C.

Dated: October 29, 2021          By: _____

Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Fax: (856) 797-9978
sdenittis@denittislaw.com

and

Michael A. Galpern, Esquire
Zachary M. Green, Esquire
**JAVERBAUM, WURGAFT, HICKS,
   KAHN, WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Ste. 203
Voorhees, NJ 08043
Telephone:  (856) 596-4100
Fax:  (856) 702-6640
mgalpern@lawjw.com

*Counsel for Plaintiff and the Proposed Class*

19

# Attachment A

# IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER

## Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards

Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation.

We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.

## What is PFOA?

Perfluorooctanoic acid (PFOA) is a member of the group of chemicals called per- and polyfluoroalkyl substances (PFAS), used as a processing aid in the manufacture of fluoropolymers used in non-stick cookware and other products, as well as other commercial and industrial uses, based on its resistance to harsh chemicals and high temperatures. PFOA has also been used in aqueous film-forming foams for firefighting and training, and it is found in consumer products such as stain-resistant coatings for upholstery and carpets, water-resistant outdoor clothing, and greaseproof food packaging. Major sources of PFOA in drinking water include discharge from industrial facilities where it was made or used and the release of aqueous film-forming foam. Although the use of PFOA has decreased substantially, contamination is expected to continue indefinitely because it is extremely persistent in the environment and is soluble and mobile in water.

## What does this mean?

*People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood.*

*\* For specific health information, see*
https://www.nj.gov/health/ceohs/documents/pfas_drinking%20water.pdf.

*(over)*

## What should I do?

- If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water.
- The New Jersey Department of Health advises that infant formula and other beverages for infants, such as juice, should be prepared with bottled water when PFOA is elevated in drinking water.
- Pregnant, nursing, and women considering having children may choose to use bottled water for drinking and cooking to reduce exposure to PFOA.
- Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.
- Boiling your water will not remove PFOA.

For more information, see https://www.nj.gov/dep/watersupply/pfas/

## What is being done?

Middlesex Water Company has been monitoring the levels of PFAS compounds for a number of years. We have been reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008.  In anticipation of New Jersey regulatory standards, we began evaluating treatment options in 2019. Design of a new treatment plant which will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in 2023.

Only a portion of our service area, served by the Company's Park Avenue Treatment Plant is affected by this public notice. This notice is being distributed to only those customers who, according to our records, may at times, receive all or some of their water from that facility. The impacted municipalities are South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway. Some portions of these municipalities may be affected, please see the map illustrating the affected area on our website at https://www.middlesexwater.com/water-quality/

For more information, please contact our Customer Service Department at 800-549-3802.

*Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can do this by posting this notice in a public place or distributing copies by hand or mail.*

This notice is being sent to you by Middlesex Water Company. State Water System ID#1225001

Date distributed: October 22, 2021

MID-L-006306-21   10/29/2021 3:37:13 PM   Pg 1 of 2 Trans ID: LCV20212533197

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-006306-21**

**Case Caption:** VERA TOMAS  VS MIDDLESEX WATER COMP ANY

**Case Initiation Date:** 10/29/2021

**Attorney Name:** STEPHEN P DE NITTIS

**Firm Name:** DE NITTIS OSEFCHEN AND PRINCE PC

**Address:** 5 GREENTREE CENTRE 525 ROUTE 73 NORTH STE 410
MARLTON NJ 08053

**Phone:** 8567979951

**Name of Party:** PLAINTIFF : Vera, Tomas

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Tomas Vera? NO**

---

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>10/29/2021</u>
Dated

<u>/s/ STEPHEN P DE NITTIS</u>
Signed