C

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROBERTA LONSK,**
*Plaintiff*

V.

**SUMMONS IN A CIVIL CASE**

**MIDDLESEX WATER COMPANY, ET AL.,**
*Defendant*

CASE NUMBER: **2:21−CV−19808−JXN−ESK**

TO: *(Name and address of Defendant):*

Middlesex Water Company
485C Route 1 South, Suite 400
Iselin, NJ 08830

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Amey J. Park
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000/apark@bm.net

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**s/ WILLIAM T. WALSH**

CLERK

**ISSUED ON 2021−11−09 11:27:54**, Clerk
USDC NJD

Amey J. Park (NJ Bar No. 070422014)
**BERGER MONTAGUE PC**
1818 Market Street,
Suite 3600
Philadelphia, PA 19103
Telephone: (267) 831-4701
Facsimile: (215) 875-4604
Email: apark@bm.net

*Counsel for Plaintiffs and the Proposed Class*
*Additional Counsel listed on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERTA LONSK, on behalf of herself
and all others similarly situated,

<div style="margin-left:2em">Plaintiff,</div>

<div>v.</div>

MIDDLESEX WATER COMPANY AND
3M COMPANY,

<div style="margin-left:2em">Defendants.</div>

Civil Action No. ___-cv-_____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Roberta (Bobbie) Lonsk ("Plaintiff"), through her undersigned counsel, on behalf

of herself and all others similarly situated, brings this action against Defendants Middlesex Water

Company ("Middlesex Water") and 3M Company ("3M" and together with Middlesex Water,

"Defendants"). In support hereof, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action against Defendants individually and on behalf of

all New Jersey residents who are customers of Defendant Middlesex Water and who receive all or

some of their drinking water from that company's Park Avenue Treatment Plant (the "Class"), as

further described in the October 22, 2021 Notice to Customers issued by Defendant Middlesex Water ("October 22 Notice"). A true and correct copy of the October 22, 2021 notice is attached hereto as Exhibit A.

2.     This lawsuit arises out of harm that has been proximately caused by Defendants' negligent and reckless conduct in contaminating the drinking water of Plaintiff and the Class; failing to promptly and properly remediate the contamination; and failing to provide Plaintiff and the Class with safe and clean water, and otherwise protect them from the risk of further harm from exposure to toxic chemicals.

3.     The underlying contamination resulted from Defendant 3M's manufacturing and distribution of Perfluorooctanoic Acid ("PFOA"), a chemical classified as a per- and polyfluoroalkyl substance ("PFAS"). PFOA is highly toxic and has been associated with numerous adverse human health effects, including a higher incidence of kidney and testicular cancers in communities with a substantial exposure to PFOA through drinking water. As a result of Defendant 3M's conduct, dangerous amounts of PFOA were discharged across New Jersey, contaminating the local environment, including the drinking water used by Plaintiff and the Class.

4.     Because of the health hazards associated with PFOA, New Jersey's Department of Environmental Protection has established a drinking water standard for the substance, setting an enforceable Maximum Contaminant Level ("MCL") for PFOA at 14 parts per trillion ("ppt"). Due to Defendant 3M's production and distribution of PFOA in New Jersey, the drinking water used by Plaintiff and Class members has been contaminated with PFOA in excess of the MCL for at least three consecutive quarters. The most recent sample collected in August 2021 yielded a reading of 36.1 ppt. Thus, at least as early as the first quarter of 2021 (and likely earlier), the public drinking water used by Plaintiff and the Class has been contaminated, and Class members continue

to be exposed to highly dangerous conditions created by Defendants' negligent conduct to the present day.

5.      Yet in the face of this potential harm, Defendants 3M and Middlesex Water have failed in their duties to protect Plaintiff and the Class from harm, to properly and promptly remediate the contamination, and to provide basic resources such as bottled water and home water filters or home water treatment devices certified to reduce levels of PFOA. Because boiling water is not effective in removing PFOA and traditional water filters are not able to eliminate the chemical, this is a critical cost that must be incurred immediately to provide Class members with safe and clean water for use in their daily life.

6.      Defendants have exacerbated and prolonged the crisis by failing to promptly notify Plaintiff and the Class of the contamination issues. Middlesex Water knew of the PFOA exceedance at least as early as the first quarter of 2021. Defendants, however, failed to notify Class members until October 22, 2021. This exposed Plaintiff and Class members, and their families and guests, to an unnecessary risk to their health and well-being.

7.      As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have sustained damage to their property, including, but not limited to, costs associated with remediating the water contamination and ensuring that Plaintiff and the Class have safe and clean water to use. The contamination of Plaintiff's and the Class's water supply has unreasonably interfered with their quality of life and the use and enjoyment of their property. To this end, Plaintiff and the Class have been damaged and will incur substantial expenses in addressing the disruption to their lives caused by the water pollution issues, including, but not limited to, the cost of bottled water and the cost of installing a home water filter or home water treatment device certified to reduce levels of PFOA.

3

8.      Plaintiff seeks to recover, for herself and the Class, all costs and economic damages associated with the contamination of her drinking water by Defendants' failure to properly remediate the contamination issue, and to otherwise promptly facilitate the provision of safe and clean water to Plaintiff and the Class. Further, Plaintiff and the Class seek damages for all out-of-pocket expenses and economic damages related to dealing with these problems, including, without limitation, expenses related to purchasing bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA. Plaintiff and the Class also seek damages associated with the diminution of value of their properties resulting from the water contamination issues. Plaintiff, individually and on behalf of the Class, also seeks injunctive relief requiring Defendants to pay for relief in accordance with their obligations under the law.

## **PARTIES**

### *Plaintiff*

9.      Plaintiff Roberta (Bobbie) Lonsk is a resident of Edison, New Jersey, one of the municipalities affected by the water contamination issue. She lives with her husband and pet dog, whom she is training to be a therapy animal, on Visco Drive, a street that is within the area affected by the contamination issue, as shown on the map referenced in the October 22 Notice and on Defendant Middlesex Water's website.

10.     As a result of the water issue, Plaintiff and her family have incurred economic damages, including loss of enjoyment and use of their home, as well as costs associated with the necessary purchase of safe and clean water to use in their daily life.

### *Defendants*

4

11.    Defendant Middlesex Water Company ("Middlesex") is a corporation organized and existing under the laws of the State of New Jersey having its principal place of business at 485C Route 1 South, Suite 400, Iselin, New Jersey 08830.

12.    Middlesex was incorporated as a water utility company in 1897 and owns and operates regulated water utility and wastewater systems primarily located in New Jersey and Delaware, including a public water system within Middlesex County, New Jersey.

13.    According to the company's public filings, the Middlesex Water system in New Jersey "treats, stores and distributes water for residential, commercial, industrial and fire protection purposes," and provides water services to approximately 61,000 retail customers, primarily located in eastern Middlesex County, New Jersey.[1] It also provides water under wholesale contracts to the City of Rahway, Townships of Edison and Marlboro, the Borough of Highland Park, and the Old Bridge Municipal Utilities Authority.

14.    Middlesex Water's retail customers are located in an area of approximately 55 square miles in Woodbridge Township, the City of South Amboy, the Boroughs of Metuchen and Carteret, portions of the Township of Edison and the Borough of South Plainfield, all in Middlesex County, and a portion of the Township of Clark in Union County. Retail customers are located in generally well-developed areas of central New Jersey and include a mix of residential customers, large industrial concerns and commercial and light industrial facilities.

15.    Middlesex Water's contract customers comprise an area of approximately 110 square miles with a population of over 200,000. Contract sales to the Township of Edison and the City of Rahway are supplemental to the water systems owned and operated by these municipalities.

---

[1] Middlesex Water Company, Annual Report (Form 10-K)(Feb. 25, 2021).

16.     Defendant 3M Company ("3M") is a Delaware corporation with its principal place of business located in St. Paul, Minnesota. 3M manufactures and distributes a broad range of products, including building materials, adhesives, and medical and home cleaning supplies. The company has over 60,000 products in its portfolio. 3M does business throughout the United States and globally, and conducts substantial business in the State of New Jersey.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d). The matter in controversy in this class action exceeds $5,000,000.00 exclusive of interest and costs, and Plaintiff and members of the Class are citizens of a state other than the state in which Defendant 3M is incorporated and has its primary place of business.

18.     Venue is proper pursuant to 28 U.S.C. §1391(b) because: (a) a substantial part of the events giving rise to this action occurred in this District; and (b) the property that is the subject of this action is located in this District.

19.     As a result of Defendant 3M marketing, distributing, promoting, and selling its products and/or services throughout New Jersey, either directly or indirectly through third parties or related entities, Defendants obtained the benefits of the laws of New Jersey and profited from New Jersey commerce.

20.     Defendant 3M conducted systematic and continuous business activities throughout the State of New Jersey and otherwise intentionally availed itself of the market in New Jersey through its promotion, marketing, and sale of its products and/or services.

## FACTUAL ALLEGATIONS

I.      **PFAS and Perfluorooctanoic Acid ("PFOA")**

6

21.    PFAS are known as "forever chemicals," a group of man-made chemicals that are widely used and have components that break down very slowly over time. These chemicals repel water and oil and are resistant to heat and chemical reactions. They have been manufactured since the 1940s and are found in many different consumer, commercial, and industrial products, including Teflon nonstick products, stains and water repellants, paints, cleaning products, food packaging, firefighting foams, and other products. PFAS chemicals are all identified by elemental bonds of fluorine and carbon, which are extremely strong and difficult to disintegrate in the environment and in human bodies.

22.    PFAS can enter drinking water through industrial release to water, air, or soil, through discharges from sewage treatment plants, land application of contaminated sludge, and the use of firefighting foam.

23.    Some studies of the general population, communities with drinking water exposures, and exposed workers, suggest that PFAS increases the risk of a number of health effects. Indeed, a growing body of scientific research has shown that exposure to PFAS in the environment may be linked to potential harmful health effects including liver damage, thyroid disease, decreased fertility, high cholesterol, obesity, hormone suppression, and cancer.

24.    Further, exposure to PFAS before birth or in early childhood may result in decreased birth weight, decreased immune responses, and hormonal effects later in life. Because infants and children consume more water per body weight than older individuals, their exposures may be higher than adults in communities with PFAS in drinking water, and they may also be more sensitive to the effects of PFAS.

25.    One type of PFAS is PFOA, a manufactured substance that is one of a group of chemicals used to make fluoropolymer coatings and products that resist heat, oil, stains, grease,

and water. Like other PFAS chemicals, PFOA persists in the environment and does not break down. PFOA has been identified in bodies of water and in a variety of land and water animals.

26.    The American Cancer Society has acknowledged that "PFOA has the potential to be a health concern because it can stay in the environment and in the human body for long periods of time."[2] Further, studies have found that PFOA is present worldwide at very low levels in just about everyone's blood, though higher blood levels have been found in community residents where local water supplies have been contaminated by PFOA. The most consistent human health effect findings for PFOA are increases in serum cholesterol, some liver enzymes, and uric acid levels. In addition, PFOA has been associated with decreased antibody response following vaccination, has been found to cause tumors in rodents and, in communities with a substantial exposure to PFOA through drinking water, has been associated with a higher incidence of kidney and testicular cancers.

27.    Given the obvious dangers of PFOA, New Jersey's Department of Environmental Protection established a drinking water standard for the chemical, setting an enforceable Maximum Contaminant Level (MCL) for PFOA at 14 parts per trillion (ppt).

## II.    Defendant 3M Pollutes New Jersey Drinking Water with PFOA

28.    3M has produced PFAS for use in the manufacture of certain products, including electronic devices such as cell phones, tablets and semi-conductors, surgical gowns and drapes, and commercial aircraft and low-emissions vehicles. The PFAS that 3M has produced do not easily degrade and 3M admits that these compounds have the potential to build up over time. Though 3M has phased out production of PFOA globally, it still produces certain PFAS compounds, and

---

[2] American Cancer Society, Inc., https://www.cancer.org/cancer/cancer-causes/teflon-and-perfluorooctanoic-acid-pfoa.html (last visited Nov. 5, 2021).

it is currently defending numerous lawsuits, and is subject to various governmental regulatory proceedings and inquiries, relating to the production and use of PFAS in a variety of jurisdictions, including New Jersey.

29.    New Jersey's Department of Environmental Protection has identified 3M as "the dominant global producer of PFOA" responsible for manufacturing approximately 85% or more of the total worldwide volumes of PFOA. The Department of Environment Protection further found that, as the primary manufacturer of PFOA, 3M was responsible for PFOA discharged in New Jersey when it supplied the chemical to companies operating in the state, which caused the chemical to be discharged across New Jersey's environment.[3]

30.    For instance, 3M supplied PFOA to DuPont for use in its manufacturing processes until at least the early 2000s, and DuPont discharged this PFOA in New Jersey, including at its Parlin facility in Parlin, New Jersey (Middlesex County). This resulted in the contamination of New Jersey's environment.

31.    Further, the Department of Environmental Protection found that 3M knew of the health and environmental impacts of PFAS for decades but persisted in using them in products and releasing them into the environment, including in New Jersey. 3M knew that PFOA was harmful to people and the environment, including from its own studies dating as far back as the 1970s. 3M also knew that the chemicals could leach into groundwater and contaminate the environment.

32.    Thus, 3M knew or should have known that its manufacture and distribution of PFOA in New Jersey would result in the contamination of drinking water in New Jersey and would cause injury to Plaintiff and the Class.

---

[3] State of New Jersey Department of Environmental Protection, Statewide PFAS Directive, Information Request and Notice to Insurers, March 25, 2019, https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf (last visited Nov. 5, 2021).

9

33.    Nonetheless, 3M persisted in producing and selling PFOA, including in New Jersey, which has resulted in damage to the state's environment and the contamination of the drinking water used by Plaintiff and the Class.

34.    Despite 3M's knowledge of the dangers of PFOA and the potential harm that could result from the continued production and distribution of the chemical, 3M concealed and/or failed to provide this information to governmental regulators, the public, or Plaintiff and the Class. In the absence of such notice, Plaintiff and the Class were unaware of the risks of PFOA to their drinking water.

35.    As 3M acknowledges in its public filings, it has been subject to substantial litigation relating to its manufacturing and distribution of PFOA and its impact on New Jersey communities and the environment. For instance, in March 2019, the New Jersey Attorney General filed two actions against 3M and other parties on behalf of the New Jersey Department of Environmental Protection and other entities regarding alleged discharges at facilities in Pennsville, New Jersey, and Parlin, New Jersey. The cases seek to have 3M, among other defendants, pay the costs necessary to investigate, remediate, assess, and restore the affected natural resources of New Jersey.[4]

36.    In addition, 3M is defending two other federal court cases filed by individuals with private drinking water wells near the DuPont and Solvay facilities that were allegedly supplied with PFAS by 3M. 3M is also defending three federal court cases brought by individuals who live near the DuPont and Solvay facilities, alleging personal injury caused by PFAS exposure. Further, in September 2020, a federal court case was filed against 3M on behalf of the Borough of Hopatcong, alleging PFAS contamination of the public water supply.

_____

[4] 3M Company, Annual Report (Form 10-K)(Feb. 4, 2021).

37.    3M is also a defendant in a related action brought in this Court by Defendant Middlesex Water, alleging PFAS contamination of its water wells. This lawsuit seeks damages arising from the intentional, knowing, reckless, and/or negligent acts and/or omissions of 3M in connection with the PFOA contamination of Middlesex Water's drinking water supplies.

38.    The lawsuit filed by Defendant Middlesex Water is part of its purported strategy to address the elevated PFOA levels in the affected communities. In recently addressing the concerns of area residents relating to the elevated PFOA levels in the wake of the October 22 Notice, Middlesex Water produced a slide show which, among other things, summarized the impetus for the lawsuit as follows: "We have filed a lawsuit in the U.S. District Court for the District of New Jersey against 3M Corporation for polluting our groundwater and to recoup wellfield remediation costs...We are not the cause of PFOA but now have to remove what 3M has put into our groundwater."[5]

39.    Despite knowing that it is responsible for the contamination of the drinking water of Plaintiff and the Class because of its manufacture and distribution of PFOA, Defendant 3M has not remediated the problem for its customers or provided them with safe and clean drinking water.

### III.    Defendant Middlesex Water Provided Plaintiff and the Class with Delayed Notice of the Water Contamination and has Failed to Remedy or Remediate the Problems

40.    Though it claims not to have been the initial cause of the PFOA in the affected groundwater, since discovering elevated levels of PFOA, Defendant Middlesex Water has failed to properly remediate the water contamination issue and failed to ensure that its customers have clean and safe water and are otherwise protected from the risk of further harm.

---

[5] Middlesex Water Company, *Regulation, Risks and Remediation, An Information Session on PFOA* ("Slideshow"), https://online.flipbuilder.com/ucfo/bplh/ (last visited Nov. 5, 2021).

41.     On September 7, 2021, Defendant Middlesex Water received notice that the August 2, 2021 groundwater sample from its wellfield was found to have 36.1 ppt of PFOA, at least the third consecutive quarter that PFOA levels exceeded the maximum allowable under the law. This meant that the Quarterly Running Annual Average of samples collected in the 1st, 2nd, and 3rd quarters of 2021 (25 ppt, 23 ppt, and 36 ppt, respectively) exceeded the maximum contaminant level regardless of the results from the 4th quarter of 2021. Middlesex Water was therefore required to issue a notice to all customers who received any amount of water from the groundwater treatment facility at issue.

42.     Despite having received notice that the August 2, 2021 sample exceeded the PFOA maximum contaminant level on September 7, Middlesex Water waited over six weeks to inform residents in the affected communities, noted to be portions of Middlesex's service area served by the company's Park Avenue Treatment Plant in South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway, New Jersey. Middlesex Water's preemptive explanation for its delayed notification (that "[d]eveloping the notification language and audience, and obtaining NJDEP approval takes time—as does printing and mailing"),[6] while the health and welfare of the communities it serves are at risk, belies belief.

43.     It further belies belief that Middlesex Water did not provide prior written notice to its customers of the contamination issues even though Middlesex Water was on notice of prior test results, and in fact, had even sued 3M over the contamination issues.

44.     Finally, on October 22, 2021, Defendant Middlesex Water issued a notice to certain of its customers, including Plaintiff, entitled "IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER" and including the following subheading: "Middlesex Water Company Has

---

[6] Slideshow, https://online.flipbuilder.com/ucfo/bplh/ (last visited Nov. 5, 2021).

Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards." The October 22

Notice provided the following information:

> Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation. We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.[7]

45.    The October 22 Notice explicitly acknowledged the dire health consequences of

exposure to PFOA, noting that "[p]eople who drink water containing PFOA in excess of the MCL

over time could experience problems with their blood serum cholesterol levels, liver, kidney,

immune system, or, in males, the reproductive system." Further, the Notice stated that drinking

water containing PFOA in excess of the MCL over time "may also increase the risk of testicular

and kidney cancer" and "may cause developmental delays in a fetus and/or an infant" with some

of the developmental effects persisting through childhood. The Notice also acknowledged that

boiling the affected water will not remove PFOA and suggested that residents use bottled water

and/or a home water filter or home water treatment device certified to reduce levels of PFOA.[8]

46.    Conspicuously absent from the October 22 Notice was any reference to substantive

remedial measures that Defendant Middlesex Water was taking to provide its customers with clean

and safe water for immediate use. Instead, under the heading, "What is being done?", the notice

simply recited the monitoring and evaluation activities that Middlesex Water has undertaken over

the last several years, including that Middlesex Water "has been monitoring the levels of PFAS

---

[7] Exhibit A.
[8] *Id.*

13

compounds for a number of years," has been "reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008", and began evaluating treatment options in 2019.[9]

47.    Further, Middlesex Water noted that a new treatment plant which will remove PFOA is under construction, with an expected completion date some time in 2023. In its customer slideshow, Middlesex Water also noted that it was making an initial estimated investment of approximately $47 million in upgrading treatment, upgrades that are expected to be in place by mid-2023.[10]

48.    None of these stated measures do anything to address the *immediate* needs and concerns of Plaintiff and Class members who have been left without consumable water. As Middlesex Water admitted in its slideshow, the current groundwater treatment facility is expected to exceed the MCL for PFOA until the new treatment program is installed.[11]

49.    The frustration of Class members was laid bare at a public presentation and question and answer session with Middlesex Water officials on October 25, 2021 at Colonia High School in Colonia, New Jersey. Though company officials tried to downplay the threat and health risk of the PFOA exceedance, the residents from the affected municipalities of Woodbridge, Edison, Metuchen, and South Plainfield "didn't seem to agree."[12]

50.    The "packed house ... was buzzing with questions from the mic and shouts from an angry crowd in attendance...[o]ne after another residents and [Middlesex] customers asked for

---

[9] *Id.*
[10] Slideshow, https://online.flipbuilder.com/ucfo/bplh/ (last visited Nov. 5, 2021).
[11] *Id.*
[12] Darlene Tedesco Cullen, *Anger Flows as Middlesex Water Tries to Calm Customers,* TapintoSouth Plainfield On-line, https://www.tapinto.net/towns/south-plainfield/sections/government/articles/anger-flows-as-middlesex-water-tries-to-calm-customers (last visited Nov. 5, 2021).

the water company to provide water filters to its customers." Other residents expressed concern about personal health care issues and wondered whether they were the result of the water contamination issues. A number of attendees spoke of their life health experiences and asked if this was due to water contamination issues. Middlesex Water demurred, offering only that they were spending $47 million to upgrade their treatment facility while acknowledging that the facility will not be operational until sometime in the future.[13]

51.     Remarkably, and despite that PFOA levels have exceeded the maximum allowable for at least three quarters, Defendants' have failed to propose and implement meaningful and immediate remediation measures to resolve the water contamination issue. Defendants have also failed to ensure that Plaintiff and Class members are provided with safe and clean water for their immediate and daily use, including without limitation, by apparently simple measures such as providing Plaintiff and Class members with a supply of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, or reimbursing Class members for such expenses.

**IV.    Plaintiff's Allegations**

52.     Plaintiff first learned of the water contamination issue when she read Defendant Middlesex Water's October 22 Notice on or about October 25, 2021. Upon reading the notice, Plaintiff contacted Middlesex Water to inquire about the issue and see what the company was doing to address the problem. Once reached on the telephone, a representative of Middlesex Water told Plaintiff that the company was working to address the issue and trying to "reverse" the problem though the representative failed to indicate exactly what the company was doing to remediate the issue or how long any such remediation may take. When Plaintiff continued to seek

---

[13] *Id.*

information from the company representative, Plaintiff was told that the problem was "really not that bad" and that Middlesex Water was currently constructing a new water treatment plant to address the removal of PFOA but that the facility would not be completed until 2023. Plaintiff was not provided with any information with respect to how Middlesex Water or 3M would address the issue in the short term.

53.     Plaintiff disputes Middlesex Water's assessment that the problem is "not that bad." In fact, the water contamination issue has completely upended Plaintiff's and Class members' lives and prevented them from properly cleaning their homes, cooking, bathing, taking care of their pets (including Plaintiff's pet dog), and consuming safe and clean water.

54.     In light of Defendants' failure to remediate the problem, let alone provide any information or resources to assist Plaintiff and Class members, Plaintiff proactively ordered a $50 water cooler as well as a subscription to receive four large water receptacles monthly for $40 per month. The water cooler and first shipment of water receptacles arrived at Plaintiff's home on Thursday, October 28, 2021, and Plaintiff and her family have used the water to prepare food and coffee and provide drinking water to the household. Though Plaintiff drank bottled water or water from her refrigerator's water filter prior to receiving notice of the water contamination issue, she has now increased her consumption of bottled water given that she believes that her water filter is now polluted with PFOA. In addition, extra bottled water will be used by Plaintiff and her husband to brush their teeth. Plaintiff also believes that the water in her clothes washer and dishwasher has been impacted by the water contamination issue and that the clothes/dishes that are cleaned in them are contaminated.

55.     Further, though Plaintiff and her husband continue to use the shower in their home to bathe, they do so only to briefly rinse themselves, and Plaintiff has taken to supplementing her showers by using sanitizing liquid at additional out-of-pocket expense.

56.     Plaintiff is particularly concerned with her ability to properly bathe in the PFOA-contaminated water given that she is scheduled to have hip replacement surgery on November 10, 2021, and she is required to follow a specific pre-surgery bathing and cleanliness protocol as well as a post-surgery protocol that is designed to avoid bacteria/infections. Plaintiff is understandably concerned that water contamination will impact her ability to follow these protocols, especially since she is allergic to antibiotics and can ill afford to suffer any post-procedure infections.

## CLASS ACTION ALLEGATIONS

57.     This action is brought and may be properly maintained as a New Jersey class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class:

> All New Jersey residents who are customers of Defendant Middlesex Water and who receive all or some of their drinking water from Middlesex Water's Park Avenue Treatment Plant (the "Class").

58.     Excluded from the Class are Defendants and Defendants' legal representatives, assigns and successors.

59.     Plaintiff reserves the right to redefine the Class prior to class certification.

60.     Members of the Class are so numerous that their individual joinder is impracticable. While the precise number of Class members is unknown at this time, the Class numbers in the tens of thousands. The precise number of affected households is known by Middlesex Water and discoverable through its books and records.

61.     There are numerous questions of law and fact common to Plaintiff and the Class, that predominate over any questions that may affect individual Class members, including, but not limited to:

a)     whether the subject water has been contaminated with PFOA and is not suitable for use and consumption by Class members;

b)     whether and when Defendants knew or should have known of the PFOA contamination;

c)     whether Defendants properly and timely provided notice and advised all affected consumers about the problems with the water;

d)     whether Defendant 3M owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the manufacture and distribution of PFOA;

e)     whether Defendant Middlesex Water owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the distribution of contaminated water to Plaintiff and the Class;

f)     whether Defendants owed Plaintiff and the Class a duty to promptly provide notice and remediate the contamination of the water and to provide clean and safe water, and otherwise prevent further risk of harm, to Plaintiff and the Class;

g)     whether Defendants breached their duties to Plaintiff and the Class;

h)     whether the subject water will continue to be polluted over time;

i)     whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages; and

j)     whether Plaintiff and the Class are entitled to consequential and ancillary damages.

18

62.     Plaintiff's claim is typical of the claims of the Class members. As a result of the contamination of the subject drinking water, Plaintiff and all Class members have suffered damages.

63.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions and environmental class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse or antagonistic to those of the Class.

64.     Plaintiff and the Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' conduct as described herein.

65.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of Class members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole. Class treatment of predominating common questions of law and fact is also superior to multiple individual actions, in that class treatment would conserve the resources of the courts and the litigants, and will further the efficient adjudication of Class members' claims.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE AGAINST DEFENDANT 3M

66.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

67.     Defendant 3M owes a duty to Plaintiff and the Class to exercise due and reasonable care in the manufacturing and distribution of its products, to prevent the discharge of toxic

19

chemicals, including PFOA, into the water supply of Plaintiff and Class members, and to otherwise protect Plaintiff and the Class from the unnecessary risks of harm associated with PFOA exposure.

68.     Defendant breached its duty owed to Plaintiff and the Class, to the extent it failed to prevent the emission of PFOA at levels exceeding the maximum allowable under the law, which contaminated the drinking water of Plaintiff and the Class. Defendant further breached its duty to Plaintiff and the Class when it failed to promptly remediate the contamination issues and failed to provide Plaintiff and the Class with safe and clean water for use in their daily lives.

69.     Defendant knew or should have known that its manufacture and distribution of PFOA was likely to contaminate the local environment in New Jersey, including the drinking water of Plaintiff and the Class, was an immediate danger to the surrounding communities and property, including Plaintiff's property, and was likely to cause injury to Plaintiff and the Class. Further, Defendant knew or should have known that its failure to promptly and properly remediate the water contamination issues and to provide Plaintiff and the Class with bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, would expose Plaintiff and the Class to an unnecessary risk of harm.

70.     Defendant's breaches constitute negligent, willful, and/or reckless conduct.

71.     As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff and Class members have been caused to suffer, and will continue to suffer, damages, including out-of-pocket expenses relating to the purchase of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, other damages arising from the water contamination, and the need for prompt and expedited remediation of the contamination.

72.     Plaintiff and members of the proposed Class claim money damages in an amount that will fairly and reasonably compensate them for the harm caused by Defendant 3M.

20

## COUNT II
### NEGLIGENCE AGAINST DEFENDANT MIDDLESEX WATER

73.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

74.    Defendant Middlesex Water owed Plaintiff and the Class a duty to exercise reasonable care including a duty to act reasonably to contain and remediate the water contamination issue before it injured Plaintiff, the Class, and their property, and to act reasonably to minimize the damage to Plaintiff, the Class, and their property.

75.    Defendant Middlesex Water breached its duty to Plaintiff and the Class when it failed to promptly remediate the contamination issue and failed to promptly provide Plaintiff and the Class with safe and clean water for use in their daily lives.

76.    Further, Defendant Middlesex Water breached its duty of reasonable care by failing to timely notify Plaintiff and the Class of the contamination of their drinking water, allowing Plaintiff and the Class to be unnecessarily exposed to PFOAs in their drinking water. As a result of this breach, Plaintiff and the Class were forestalled from undertaking effective and immediate remedial measures, including seeking and securing alternative sources of clean and safe water for use in their daily lives.

77.    Defendant knew or should have known that its failure to promptly and properly remediate the water contamination issue and to provide Plaintiff and the Class with bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA would expose Plaintiff and the Class to an unnecessary risk of harm.

78.    Further, Defendant knew or should have known that its failure to promptly notify Plaintiff and the Class of the water contamination issue would expose Plaintiff and the Class to an unnecessary risk of harm.

21

79.     Defendant's breaches constitute negligent, willful and/or reckless conduct.

80.     As a direct, proximate, and foreseeable result of Defendant's conduct, Plaintiff and Class members have been caused to suffer, and will continue to suffer, damages, including expenses relating to the purchase of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, other damages arising from the water contamination, and the need for remediation of the contamination.

81.     Plaintiff and the Class reserve their right to seek all damages available by statute or law.

## COUNT III
## NUISANCE AGAINST DEFENDANT 3M

82.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

83.     Defendant's actions in manufacturing and distributing PFOA in New Jersey caused PFOA contaminated water to be delivered to the homes of Plaintiff and the Class and resulted in the presence of contaminants on the properties and/or persons of Plaintiff and the Class.

84.     Defendant's actions substantially and unreasonably interfered with Plaintiff's and the Class's lives and their ability to use and enjoy their homes and other properties, thereby constituting a nuisance.

85.     Plaintiff and the Class have property rights and privileges with respect to the use and enjoyment of their property. The water contamination caused an invasion of Plaintiff's and the Class's interest in the private use and enjoyment of their land. Further, the invasion resulted in significant harm and Defendants' conduct in causing the emission of PFOA is the legal cause of the invasion. The invasion was either (i) intentional and unreasonable, or (ii) unintentional and

otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

86.     Plaintiff and Class members did not consent for PFOA contaminated water to physically invade their persons or property.

87.     Plaintiff suffered injuries and damage as a direct and proximate result of Defendant's actions in causing PFOA-contaminated water to be delivered to their homes.

88.     Defendant's actions in causing a substantial and unreasonable interference with Plaintiff's ability to use and enjoy their properties constitutes a nuisance and Defendant is liable for all damages arising from such nuisance, including compensatory and exemplary relief.

89.     In addition, the water contamination constitutes a nuisance to the extent it unreasonably interfered with public health and safety and posed a wrongful, continuing, impending danger to the lives and health of the public. The contamination resulted from Defendants' neglect and disregard of their obligations under New Jersey law. Defendant knew or should have known that the contamination was of a continuing nature that produces a permanent or long-lasting, significant effect on the common rights enjoyed by the general public.

90.     As a direct and proximate result of the nuisance created by Defendant 3M, Plaintiff and the Class have suffered damages and have been placed at a substantially increased risk of harm as a result of being exposed to the PFOA-contaminated water.

## COUNT IV
## TRESPASS AGAINST DEFENDANT 3M

91.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

92.     Defendant 3M's negligent manufacturing and distribution of PFAS and related chemicals has caused a PFOA-contaminated water supply to enter onto the properties of Plaintiff

and Class members without their permission, constituting an invasion by foreign substance and an unauthorized trespass.

93. Defendant, knowingly or in circumstances under which it should have known, engaged in deliberate actions and/or omissions in manufacturing and distributing PFAS, including PFOA, which contaminated water that invaded the properties of Plaintiff and the Class.

94. Defendant knew or should have known of the likelihood that its negligent production and distribution of PFOA would cause PFOA-contaminated water to invade the properties of Plaintiff and the Class and cause damage to their properties.

95. Defendant's actions were done with actual malice or wanton, reckless or willful disregard for the safety, rights, and/or property of Plaintiff and the Class.

96. Plaintiff and the Class did not consent for the contaminated water released as a result of Defendant's negligence to physically invade their homes and other properties.

97. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff and the Class have been caused to suffer, and will continue to suffer, damages, including expenses relating to the purchase of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA, other damages arising from the water contamination, and the need for prompt remediation of the contamination. Plaintiff and the Class seek damages in an amount to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, respectfully request that the Court grant the following relief:

A. Enter an Order certifying the Class, appointing Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.      Enter an award to Plaintiff and the Class that includes all actual, compensatory, consequential, ancillary, statutory, exemplary, punitive, or other damages as allowed by New Jersey law or other law, and statutory damages and penalties, including interest thereon, in an amount to be proven at trial;

C.      An injunctive order to remediate the harm caused by Defendants' conduct including, but not limited to, the immediate establishment of a program to provide Plaintiff and Class members with clean and safe water for use in their daily life; to include the provision of bottled water and a home water filter or home water treatment device certified to reduce levels of PFOA; and to provide for the reimbursement of all out-of-pocket expenses and economic damages incurred by Plaintiff and Class members relating to the water contamination issue;

D.      Award pre-judgment and post-judgment interest at the maximum rate allowable by law;

E.      Award reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and her counsel in connection with this action; and

H.      Award such other and further injunctive relief and damages as the Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the Class, hereby demands trial by jury on all issues so triable.

Dated: November 5, 2021                       s/ Amey J. Park
                                              Amey J. Park (NJ Bar No. 070422014)
                                              Shanon J. Carson
                                              Y. Michael Twersky
                                              Jeffrey L. Osterwise
                                              J. Quinn Kerrigan
                                              **BERGER MONTAGUE PC**
                                              1818 Market Street,

25

Case 2:22-cv-04446-KM-ESK    Document 9-3    Filed 07/25/22    Page 28 of 28 PageID: 1821

Case 2:21-cv-19808   Document 1   Filed 11/05/21   Page 26 of 26 PageID: 26

Suite 3600
Philadelphia, PA 19103
Tel: (267) 831-4701
Email : apark@bm.net
Email: scarson@bm.net
Email : mitwersky@bm.net
Email : josterwise@bm.net
Email: jkerrigan@bm.net

John G. Albanese
**BERGER MONTAGUE PC**
1229 Tyler Street NE
Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5997
Email: jalbanese@bm.net

*Counsel for Plaintiff and the Proposed Class*