**E**

**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951

**JAVERBAUM, WURGAFT, HICKS,
KAHN, WIKSTROM & SININS, P.C.**
Michael A. Galpern, Esquire
Zachary M. Green, Esquire
1000 Haddonfield-Berlin Rd., Ste. 203
Voorhees, New Jersey 08043
(856) 596-4100

Attorneys for Plaintiffs and the Proposed Classes

| | |
|---|---|
| TOMAS VERA, JOEL VELEZ, MARGARET KENNEDY, DONNA ZIELINSKI, MICHAEL ZIELINSKI, MARCO L. NEAD, and RENEE WILLIAMS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MIDDLESEX WATER COMPANY, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY LAW DIVISION <br><br> DOCKET NO. MID-L-6306-21 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.    This is a class action, brought on behalf of several proposed classes composed of New Jersey citizens who receive their domestic water service from Defendant Middlesex Water Company.

2.    This action does not bring any claims under the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-5 and does not seek any relief from the New Jersey Department of Environmental Protection ("NJ DEP") or any relief which is within the power or jurisdiction of the NJ DEP to grant.

3.    Nor does this action bring any claim within the jurisdiction of the New Jersey Board of Public Utilities ("BPU") and does not seek any relief from the BPU or any relief which

1

is within the power or jurisdiction of the BPU to grant.

4.    Rather, the sole relief sought in this action is an order from the New Jersey

Superior Court:

      a.  Directing Defendant to reimburse class members for the costs they have incurred or will incur in following the directives in the Attachment A and/or Attachment B form notices, in which Defendant directs certain categories of persons specified in the notices to seek medical advice;

      b.  Directing Defendant to reimburse class members for the costs they have incurred or will incur in following the directives in the Attachment A and/or Attachment B form notices, directing class members to use bottled water in lieu of tap water for drinking and cooking;

      c.  Directing Defendant to reimburse class members for the costs they have incurred or will incur in following the directives in the Attachment A and/or Attachment B form notices, directing class members to install a home water filter;

      d.  Directing that a program of adequate injunctive and equitable relief be established under the court's equitable powers in order to protect the class and mitigate the effects described in the Attachment A and/or Attachment B form notice on class members, including a court-supervised program of periodic medical testing of class members on multiple occasions over time as described in the landmark decision Ayers v. Jackson Twp., 106 N.J. 557 (1987); and

      e.  Directing that Defendant provide reasonable notice of the conditions described in the Attachment A and B form notices to those persons who receive their domestic water service from Middlesex Water Company but who have not yet been sent any notice by Defendant advising of the conditions described in the Attachment A and B form notices.

5.    This action arises from two uniformly-worded form notices which Defendant sent

to those Middlesex Water Company customers who are billed directly by Defendant, the

circumstances described in those form notice and the directives contained in those form notices.

6.    The first such form notice which was dated October 22, 2021, was entitled:

**"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled:

**"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above**

**Drinking Water Standards.**" See Attachment A, Middlesex Water Company Notice dated October 22, 2021.

7.    The second such form notice was dated November 8, 2021 and was entitled **"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled **"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards and Failed to Meet All Public Notification Requirements."** See Attachment B, Middlesex Water Company Notice dated November 8, 2021.

8.    Both of these Notices (hereafter collectively "Defendant's Notices") stated to class members in identical language that:

> "**Our water system recently violated a New Jersey drinking water standard**, and as our customers, you have a right to know what happened, **what you should do**, and what we are doing to correct this situation." (emphasis added)

9.    Both of Defendant's Notices to the classes went on to admit in identical language that the water distributed by Defendant to class members had violated a New Jersey standard relating to the allowable amount of a chemical human carcinogen called perfluoroactanoic acid ("PFOA") in drinking water, and, indeed, that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. See Attachment A and Attachment B, both of which admit:

> "**New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.**"

3

10.     Both of Defendant's Notices went on to explain in identical language the consequences and risks involved in exposure to PFOA in drinking water as levels higher than the allowable standard, stating in a section of the Attachment A form notice and the Attachment B form notice entitled **"What does this mean?"** that:

> **"People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system.**
>
> **Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood."**

11.     Both of Defendant's Notices also directed recipients of the Notices to take certain steps, in a section entitled **"What Should I do?"** See Attachment A and Attachment B.

12.     For example, both of Defendant's Notices contained identical language directing certain specified categories of recipients of the Notices to seek medical advice regarding drinking the water provided by Defendant, stating:

> **"If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water."** (emphasis added)

13.     Both of Defendant's Notices further contained identical language directing that recipients should consider using bottled water for drinking and cooking to reduce exposure to PFOA or installation of a home water filter. See Attachment A and Attachment B.

14.     Both of Defendant's Notices stated in identical language that these directives were based on what the two Notices themselves described as violations of standards by Defendant.

4

15.     Indeed, the only real difference between the Attachment A and the Attachment B form Notices is that the Attachment B form notice dated November 8, 2021 includes translations of the English text into various other languages including Spanish, simplified Chinese, Hindi, Korean and several other languages.

16.     As described in greater detail herein, upon receiving Defendant's form Notices, various plaintiffs named herein and other class members; many of whom suffer from specific health concerns named in the Notices (i.e., are elderly; and/or have a severely compromised immune system; and/or are pregnant or have infant children) did exactly what the Notices urged them to do. They followed Defendant's written directives in the Notices to consult with their doctors, to buy bottled water as a substitute for their contaminated tap water, and/or installed a water filter to protect against their contaminated tap water.

17.     In following those directives in Defendant's Notices, Plaintiffs and the other class members incurred out-of-pocket expenses, including co-pays for doctor's consultations, the cost of bottled water and/or the cost of installing a water filter.

18.     All such costs were fully foreseeable to Defendant at the time Defendant placed these directives in its Notices.

19.     In issuing these directives in these Notices, Defendant was not simply acting out of altruism. Rather, Defendant sought to benefit itself through the Notices by trying to eliminate or minimize Defendant's potential liability for the violation of drinking water standards described in the two Notices.

20.     The truth and accuracy of the assertions and admissions made by Defendant in these two Notices regarding the violation are not at issue in this action.

21.     Rather, Defendant is legally and equitably estopped from denying Defendant's

own statements which Defendant placed in two written form Notices which it sent to the classes.

22.    Moreover, what is important for the purposes of this Complaint is not whether Defendant's assertions and admissions in the two Notices were true or accurate, but the fact that Defendant made these written statements to the class, along with written directives to the class to take certain actions.

23.    Defendant knew when it issued the two Notices that class members would follow Defendant's directives to take certain actions and would thereby incur costs and expenses in following those directives.

24.    Plaintiffs now file this lawsuit, seeking indemnification and reimbursement under equitable and common law principles for themselves and several proposed classes of other similarly situated persons, for the expenses they incurred as a consequence of following the above-quoted directive in Defendant's Notices to seek medical advice about their drinking water and to replace the contaminated tap water with bottled water and/or a water filter for drinking and cooking.

25.    Put simply, having admitted and alleged in Defendant's own Notices that Defendant's violation of standards had made it necessary for Defendant to issue written directives to Plaintiffs and the classes to seek medical advice, use bottled water and obtain a water filter, Defendant is now legally and equitably obligated to pay the costs incurred by Plaintiffs and the classes in carrying out Defendant's written directives.

26.    This is especially true since at least one purpose of Defendant sending these Notices was to try to minimize Defendant's potential liability for the admitted violations by inducing class members to take, and pay for, the actions directed in the Notices, thereby shifting costs that were legally and equitably the obligation of Defendant onto wholly innocent class

members.

27.     This complaint also seeks future medical monitoring for the class who have been directly exposed to PFOA. Such medical surveillance is required because the exposure caused a distinctive increased risk of future injury, and will require a course of medical monitoring for class members independent of any other that they would otherwise have to undergo.

28.     Finally, this complaint seeks injunctive relief to remedy the fact that Defendant has thus far failed to provide reasonable notice about the dangerous conditions described in the Attachment A and B form Notices to all persons who receive their domestic drinking water supply from Middlesex Water Company.

29.     Defendant did not send notice to all persons who receive their domestic drinking water supply from Middlesex Water Company. Rather, Defendant only sent the Attachment A and B form Notices to those persons whose name appears as the billed party on a Middlesex Water Company bill.

30.     Yet, Defendant is fully aware that many people who receive their domestic drinking water supply from Middlesex Water Company are not billed directly by Defendant and thus do not receive a water bill in their name. This includes tenants who reside in apartment complexes and other rental properties whose water service is provided by Defendant but the water bill is sent to and paid by their landlord; persons who reside in retirement homes, group homes, long term care facilities, and any other persons who receive their domestic water supply from the Middlesex Water Company who have not yet been sent any notice by Defendant advising them of the dangerous conditions described in the Attachment A and Attachment B Notices.

31.     Indeed, Defendant's own Attachment B form Notice recognizes this fact and even

7

asks those to whom Defendant did send the Notices to notify such persons. See Attachment B, where Defendant stated:

> **"Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses)."**

32.    Thus, Defendant's proposed method of notifying these persons is to essentially ask certain customers of Defendant to play a giant game of "Password" and notify those persons who drink Defendant's water but are not billed directly. It is impractical, illogical and unreasonable for Defendant to rely on some Middlesex Water Company customers to notify other persons who receive their domestic water service from Middlesex Water Company about the dangers associated with Defendant's PFOA contaminated water.

33.    Defendant is the entity which sold and delivered this contaminated water. Defendant has the responsibility of providing reasonable notice to all persons who receive their domestic water supply from Middlesex Water Company of the dangers described in Defendant's Notices. It is Defendant who has the legal and equitable duty to formulate a realistic and reasonable plan to give notice to persons who receive their domestic water supply from Middlesex Water Company but who are not billed directly by Defendant.

34.    The dangerous conditions described in the Attachment A and B form Notices do not simply affect those whose names appear on Middlesex Water Company bills. Rather, it affects any person whose regular domestic tap water is provided by Middlesex Water Company, regardless of who pays the bill.

35.    Despite being aware of this, Defendant has not sent any notice to such persons.

36.    Accordingly, in addition to the other relief described herein, this complaint seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide all

persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in the Attachment A and Attachment B notices, in whatever reasonable manner the Court directs.

## THE PARTIES

37.     Plaintiff Tomas Vera is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff Vera is a member of several of the proposed classes and the proposed sub-class in that he received the Attachment A Notice and the Attachment B Notice from Defendant, and has specific health concerns and a severely compromised immune system. Plaintiff Vera followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking and to install a water filter. In following Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs in the form of a co-pay for the medical visit and the cost of bottled water and the water filter.

38.     Plaintiff Joel Velez is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff Velez is a member of several of the proposed classes and the proposed sub-class in that he received the Attachment A Notice and the Attachment B Notice from Defendant, and is the father of an infant who resides with him. Plaintiff Velez followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking relating to his infant son. In following Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs in the form of a co-pay for the medical visit and the cost of bottled water.

9

39.    Plaintiff Margaret Kennedy is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff Kennedy is a member of several of the proposed classes and the proposed sub-class in that she received the Attachment A Notice and is 83 years old and suffers from a number of serious medical conditions. Plaintiff Kennedy followed Defendant's directives in the Notice to seek medical advice from her doctor about her contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking. In following Defendant's directives, she incurred reasonably foreseeable and unreimbursed costs for the medical visit and the cost of bottled water.

40.    Plaintiffs Donna and Michael Zielinski are individuals and citizens of New Jersey who resides in Colonia, Middlesex County, New Jersey. Plaintiffs Zielinski are members of several of the proposed classes and the proposed sub-class in that they received the Attachment A Notice and Donna Zielinski is over 70 years old and her husband, Plaintiff Michael Zielinski, is immunocompromised. Plaintiffs Zielinski followed Defendant's directives in the Notice to seek medical advice from her doctor about her contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking and is the process of purchasing a water filter at a cost of over $2,000. In following Defendant's directives, they incurred reasonably foreseeable and unreimbursed costs for the medical visit, the cost of bottled water and the water filter.

41.    Plaintiff Marco L. Nead is an individual and citizen of New Jersey who resides in Metuchen, Middlesex County, New Jersey. Plaintiff Nead is a member of several of the proposed classes and the proposed sub-class in that he received the Attachment A Notice and has specific health concerns. Plaintiff Nead followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to

use bottle water instead of tap water for drinking and cooking. Moreover, Plaintiff Nead has

purchased and is in the process of installing a water filter at a cost of over $3,000. In following

Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs.

42.     Plaintiff Renee Williams is an individual and citizen of New Jersey who resides in

Ford, Middlesex County, New Jersey. Plaintiff Williams is a member of the proposed "No

Notice Class" as defined herein in that she receives her domestic water supply from Middlesex

Water Company but has thus far not has not been sent any notice by Defendant describing the

conditions described in the Attachment A or Attachment B Notices. After learning about the

contamination in the news, Plaintiff Kennedy incurred expenses in seeking medical advice from

her doctor about her contaminated drinking water, as well as purchasing bottled water instead of

tap water for drinking and cooking.

43.     Defendant Middlesex Water Company is a New Jersey corporation with its

principal place of business at 485C Route One South, Suite 400, Iselin, New Jersey, and thus is a

citizen of New Jersey. Defendant supplies water to New Jersey citizens who reside in Middlesex

County, New Jersey.

### JURISDICTION AND VENUE

44.     This class action complaint raises claims against a New Jersey Defendant, brought

by Plaintiffs who are all New Jersey citizens, on behalf of proposed classes which are composed

entirely of New Jersey citizens, and is based entirely on actions which occurred in Middlesex

County, New Jersey.

45.     There is no federal jurisdiction over this matter in that the Plaintiffs, the

Defendant and all members of the proposed classes are all New Jersey citizens and thus diversity

is lacking and no federal claims or federal questions are at issue in this complaint.

11

46.    This matter is properly venued in Middlesex County, New Jersey, in that Plaintiffs and each class member are residents of Middlesex County, New Jersey and are supplied water by Defendant in Middlesex County, New Jersey. Additionally, the actions which give rise to this lawsuit and any damages or injuries to Plaintiffs and the classes occurred in Middlesex County, New Jersey.

### FACTUAL BASIS FOR THE RELIEF REQUESTED

47.    PFOA, or Perfluorooctanoic Acid, is a known human carcinogen that never breaks down in water, soil, or the human body. Thus, once released into the environment, PFOA is persistent in the environment. PFOA is also bioretentive and bioaccumulative, meaning it accumulates within the human body and has an extremely long half-life of at least two to four years.

48.    Scientific studies have shown PFOA exposure causes at least six diseases: ulcerative colitis; pregnancy-induced hypertension; high cholesterol; thyroid disease; testicular cancer; and kidney cancer. Several published peer-reviewed journals, prove that the chemical affects the entire body, even at low exposure levels. The research has concluded that PFOA poses a health threat even at very low level.

49.    Defendant is a water company that supplies water to approximately 61,000 New Jersey homes and over 300,000 New Jersey citizens.

50.    On or about October 22, 2021, Defendant distributed a mass-produced, uniformly worded form Notice to over 20,000 of its customers residing in several townships where Middlesex Water Company provides domestic water service, with the Notice being titled: **"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled: **"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above**

**Drinking Water Standards.**" <u>See</u> Attachment A, Middlesex Water Company Notice dated October 22, 2021.

51.    Approximately fourteen days after that first form Notice, Defendant sent a second uniformly-worded form Notice to its customers in certain Middlesex County Townships. The second such form Notice was dated November 8, 2021 and was entitled **"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled **"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards and Failed to Meet All Public Notification Requirements."** <u>See</u> Attachment B, Middlesex Water Company Notice dated November 8, 2021.

52.    The primary difference between these two form Notices is that the Notice dated November 8, 2021 includes, along with the English text found in the Notice dated October 22, 2021, translations of that text in various other languages, including Spanish, simplified Chinese, Hindi, Korean and several other languages.

53.    Both of these two Notices (hereafter collectively "Defendant's Notices") stated to class members in English in identical language that:

> **"<u>Our water system recently violated a New Jersey drinking water standard</u>, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation." (emphasis added)**

54.    Both of Defendant's Notices went on to admit in identical language that the water distributed by Defendant to class members had violated a New Jersey standard relating to the allowable amount of a chemical human carcinogen called perfluoroactanoic acid ("PFOA") in drinking water, and, indeed, that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. <u>See</u> Attachment A and Attachment B, both of which admit:

13

"New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results."

55.    Both of Defendant's Notices went on to explain in identical language the consequences and risks involved in exposure to PFOA in drinking water as levels higher than the allowable standard, stating in a section of the Attachment A form Notice and the Attachment B form Notice entitled "**What does this mean?**" that:

"**People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood.**"

56.    Both of Defendant's Notices also directed recipients of the Notice to take certain steps, in a section entitled "**What Should I do?**". See Attachment A and Attachment B.

57.    For example, both of Defendant's Notices contained identical language directing certain specified categories of recipients of the Notice to seek medical advice regarding drinking the water provided by Defendant, stating:

"**If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and *should* seek advice from your health care providers about drinking this water.**" (emphasis added)

58.    Both of Defendant's Notices further contained identical language directing that recipients should consider using bottled water for drinking and cooking to reduce exposure to PFOA or installation of a home water filter. See Attachment A and Attachment B.

14

59.     Both of Defendant's Notices stated in identical language that these directives were based on what the two Notices themselves described as a violation of legal water standards in the water sold and delivered by Defendant.

60.     As admitted in Defendant's Attachment A and Attachment B form Notices, the State of New Jersey has established a legal standard for PFOA in drinking water of 14 parts per trillion (ppt). <u>See</u> Attachment A and Attachment B.

61.     Both of Defendant's Notices admit to class members that the water delivered and sold by Defendant to the class violated that standard, admitting:  **"Our water system recently violated a New Jersey drinking water standard…"**.

62.     Indeed, both of Defendant's Notices went on to admit that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. <u>See</u> Attachment A and Attachment B.

63.     It is submitted that Defendant is now equitably and legally estopped from denying the written admissions it made in these two written Notices. Indeed, this action is not about proving these violations of standards, because Defendant itself has already admitted in writing to the violation of standards in the two Notices.

64.     Moreover, the truth and accuracy of the assertions and admissions made by Defendant in the two Notices regarding this violation are not the core of the class claims.

65.     This case is about what Defendant said in its form Notices. Regardless whether the admissions made by Defendant are true and accurate, the fact is that Defendant made them to the class and then directed the class to take certain actions; directions which many class members followed or will follow and thereby have incurred or will incur reasonable and foreseeable expenses.

66.    Defendant was fully aware when it issued the two Notices that class members would follow Defendant's directives to take certain actions and would thereby incur costs and expenses in following those directives.

67.    As such, Defendant is legally and equitably obligated to reimburse class members who followed Defendant's directives.

68.    Accordingly, this lawsuit seeks indemnification and reimbursement under equitable and common law principles for Plaintiffs and several proposed classes of other similarly situated persons for the expenses they incurred as a consequence of following the above-quoted directive in Defendant's Notices to seek medical advice about their drinking water and to replace the contaminated tap water with bottled water and/or a water filter for drinking and cooking.

69.    Put simply, having admitted and alleged in Defendant's own Notices that Defendant's violation of standards had made it necessary for Defendant to issue written directives to Plaintiffs and the classes to seek medical advice, use bottled water and obtain a water filter, Defendant is now legally and equitably obligated to pay the costs incurred by Plaintiffs and the classes in carrying out Defendant's written directives.

70.    This is especially true since at least one purpose of Defendant in sending these Notices was to try to minimize Defendant's potential liability for the admitted violations by inducing class members to take the actions directed in the Notices and to shift the costs of those measures, whose payment was legally and equitably the responsibility of Defendant, unto Plaintiffs and the class (who had no responsibility for the violations described in the Notices).

71.    This complaint also seeks future medical monitoring for the class who have been directly exposed to PFOA. Medical surveillance is required because the exposure caused a

distinctive increased risk of future injury, and will require a course of medical monitoring independent of any other that the class members would otherwise have to undergo.

72.    Finally, this complaint seeks injunctive relief to remedy the fact that Defendant has thus far failed to provide reasonable notice about the dangerous conditions described in the Attachment A and B form Notices to many persons who receive their domestic drinking water supply from Middlesex Water Company.

73.    Defendant sent the Attachment A and B form Notices only to those persons whose name appears as the billed party on a Middlesex Water Company bill.

74.    Yet, Defendant is fully aware that many people who receive their domestic drinking water supply from Middlesex Water Company do not receive a water bill in their name. This includes tenants who reside in apartment complexes and other rental properties whose water service is provided by Defendant but the landlord is billed for the entire complex, as well as persons who reside in retirement homes, group homes, long term care facilities, and any other persons who receive their domestic water supply from the Middlesex Water Company who have not yet been sent any notice by Defendant advising them of the dangerous conditions described in the Attachment A and Attachment B Notices.

75.    The dangerous conditions described in the Attachment A and B form Notices do not simply affect those whose names appear on Middlesex Water Company bills. Rather, it affects any person whose regular domestic tap water is provided by Middlesex Water Company, regardless of who pays the bill.

76.    Despite being aware of this, Defendant has not sent any notice to such persons.

77.    Accordingly, in addition to the other relief described herein, this complaint seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide all

persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in the Attachment A and Attachment B Notices, in whatever reasonable manner the Court directs.

## CLASS ACTION ALLEGATIONS

78.    Plaintiffs Vera, Velez, Kennedy, Zielinski and Nead bring this action as a class action pursuant to Rule 4:32, seeking relief on behalf of a proposed main class (hereafter the "Attachment A class") defined as:

> **All New Jersey citizens to whom Defendant sent a form notice which was identical or substantially similar to Attachment A.**

79.    Plaintiffs Vera, Velez, Kennedy and Nead also bring this action as a class action pursuant to Rule 4:32, seeking relief on behalf of a proposed main class (hereafter the "Attachment B class") defined as:

> **All New Jersey citizens to whom Defendant sent a form notice which was identical or substantially similar to Attachment B.**

80.    Plaintiffs Vera, Velez, Zielinski and Kennedy also bring this action as a class action pursuant to Rule 4:32, seeking relief on behalf of a proposed sub-class (hereafter the "specified conditions sub-class") defined as:

> **All New Jersey citizens who are members of either the Attachment A Class or the Attachment B Class, who at the time of the notice had "specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly," as those terms are used in the Notices, and who have incurred or will incur medical expenses as a result of following the directive issued by Defendant in the form notice that directed such persons to seek advice from their health care provider.**

81.    Finally, Plaintiff Williams brings this action as a class action pursuant to Rule 4:32, seeking relief on behalf of a proposed main class (hereafter the "No Notice Class") defined as:

18

**All New Jersey citizens whose domestic water supply is provided by Middlesex Water Company who have not yet received notice from Defendant of the conditions described in the Attachment A and/or Attachment B form notices.**

82.     The classes and sub-class are each so numerous that joinder of all members is impracticable.

83.     The exact number and identities of the persons who fit within the proposed classes are either contained in Defendant's records or can be ascertained from those records. It is alleged that each proposed class contains more than one hundred persons.

84.     The claims in this action arise exclusively from the language Defendant chose to place in Defendant's uniformly-worded Attachment A Notice and/or Attachment B Notice, and the admissions, assertions and directives Defendant issued therein.

85.     No claims are a result of any individualized interaction between Defendant and any class member.

86.     There are numerous common questions of law and fact affecting the rights of class members, including inter alia:

   a.  Whether Defendant is bound by the admissions and assertions made by Defendant in the Notices that a violation by Defendant of the standards specified in the Notice made it necessary for the class to seek medical advice;

   b.  Whether Defendant owed a legal duty to recipients of the Notice such as Plaintiffs and the class;

   c.  Whether it was foreseeable to Defendant that Plaintiffs and the class would incur costs and/or be harmed as a result of following Defendant's directives in the Notice;

   d.  Whether Defendant's refusal to reimburse Plaintiffs and the class for the cost incurred in following Defendant's written directives breached a legal duty owed to Plaintiffs and the class;

   e.  Whether equitable principles demand that Defendant reimburse Plaintiffs and the class for the cost they incurred in following Defendant's directives in the Notice, directives which the Notice admits and asserts were made necessary by

Defendant's violation of legal standards; and

    f.   Whether the class is in need of a court-monitored program of injunctive and equitable relief, including periodic medical monitoring on multiple occasions over time, under the New Jersey Supreme Court holding in Ayers v. Jackson Twp., 106 N.J. 557 (1987).

87.    Each Plaintiff is a member of the classes and sub-class he or she seeks to represent.

88.    The claims of Plaintiffs are not only typical of all members of the classes and sub-class they seek to represent, they are identical.

89.    All claims of Plaintiffs and the classes arise from the same violation and form Notices as outlined herein, and all claims are based on the exact same legal theories.

90.    Plaintiffs seek the same relief for themselves as for every other class member.

91.    Plaintiffs have no interest antagonistic to or in conflict with the classes.

92.    Plaintiffs will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent themselves and the classes.

93.    Defendant has acted and/or refused to act on grounds generally applicable to the classes, in that it committed a violation of the drinking water requirement that adversely affected all class members and sent form Notices to class members, thereby making appropriate injunctive relief for each class as a whole.

94.    The prosecution of separate actions by individual class members will create a risk of inconsistent or varying adjudications, would as a practical matter be dispositive of the interests of other members not parties to the adjudications, and would substantially impair or impede their ability to protect their interests.

95.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the costs paid by each class member were less

than $3,000 and thus are not great enough to make separate individual lawsuits against Defendant economically viable.

96.    Common questions will predominate, and there will be no unusual manageability issues.

## COUNT ONE

### GENERAL EQUITY/EQUITABLE INDEMNITY/RESTITUTION

97.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

98.    Defendant intended that Plaintiffs and the class would rely upon the truth and accuracy of the statements made by Defendant in the Notices, and that they would follow the directives placed in the Notices as a result of Defendant's admitted violation of drinking water standards.

99.    Under the principles of general equity, Defendant is required to reimburse Plaintiffs and the relevant class and sub-class members for the costs incurred in following the written directives issued by Defendant in the Attachment A and/or Attachment B Notice, particularly when the Notices drafted by Defendant clearly and expressly admitted that this directive was made necessary solely due to what Defendant itself admitted in the Notices were violations of standards by Defendant.

100.    In issuing the Notices, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for those violations of PFOA standards by urging class members to seek – and pay for – medical advice, substituting bottled water for tap water, and/or a water filter.

101.    As a matter of both law and equity, Defendant was obligated to bear the costs of any remedial measures which were made necessary by the fact that the water sold and delivered

21

by Defendant failed to meet legal standards.

102.    Through the form notices at issue, Defendant sought to shift those costs unto Plaintiffs and the classes; who were wholly innocent and had no responsibility for the fact that the water sold and delivered by Defendant failed to meet legal standards.

103.    Under the facts and circumstances alleged herein, equity requires Defendant to reimburse Plaintiffs and the class members for any and all out-of-pocket costs and expenses they incurred or will incur as a result of following the directive set forth in Defendant's Notice.

104.    Wherefore, Plaintiffs and the classes seek indemnification and restitution from Defendant under equitable principles.

## COUNT TWO

### INJUNCTIVE RELIEF AND MEDICAL MONITORING

105.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

106.    Plaintiffs and the classes are in need of injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiffs and the class members for any and all out-of-pocket costs and expenses they incurred or will incur as a result of following Defendant's written directives set forth in Defendant's Notices.

107.    Plaintiffs and the classes also seek an order for injunctive and equitable relief, establishing a court supervised and medically appropriate program of medical monitoring and testing as described in the landmark decision Ayers v. Jackson Twp., 106 N.J. 557 (1987), at Defendant's expense.

108.    Finally, Plaintiff Williams and the proposed "No Notice Class" is in need of injunctive relief to remedy the fact that Defendant has thus far failed to provide reasonable notice about the dangerous conditions described in the Attachment A and B form Notices to all persons

who receive their domestic drinking water supply from Middlesex Water Company.

109.    Defendant sent the Attachment A and B form Notices only to those persons whose name appears as the billed party on a Middlesex Water Company bill.

110.    Yet, Defendant is fully aware that many people who receive their domestic drinking water supply from Middlesex Water Company do not receive a water bill in their name, including tenants who reside in apartment complexes and other rental properties whose water service is provided by Defendant but is paid for by their landlord, as well as persons who reside in retirement homes, group homes, long term care facilities, and any other persons who receive their domestic water supply from the Middlesex Water Company who have not yet been sent any notice by Defendant advising them of the dangerous conditions described in the Attachment A and Attachment B Notices.

111.    The dangerous conditions described in the Attachment A and B form Notices do not simply affect those whose names appear on Middlesex Water Company bills. Rather, it affects any person whose regular domestic tap water is provided by Middlesex Water Company, regardless of who pays the bill.

112.    Despite being aware of this, Defendant has not sent any notice to such persons.

113.    Accordingly, in addition to the other relief described herein, this complaint seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide all persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in the Attachment A and Attachment B Notices, in whatever reasonable manner the Court directs.

23

## COUNT THREE

### EQUITABLE ESTOPPEL

114.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

115.    Defendant is equitably estopped from denying the truth and accuracy of the statements made by Defendant in the Attachment A Notice and/or Attachment B Notice that Defendant's violations of legal standards, as asserted and admitted by Defendant in the Notices, required that Plaintiffs and the classes follow Defendant's directives set forth in the Notices.

116.    At the time Defendant made these statements in the Notices, Defendant was fully aware that Plaintiffs and the classes would believe these statements made by Defendant in the Notices and that Plaintiffs and the class would incur costs as a result of following Defendant's written directives in the Notices as a result of what the Notices describe as a violation of water quality standards in the water sold and delivered by Defendant.

117.    In issuing the Notices, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for the costs incurred as a result of such violations by urging the class to seek medical advice early, to substitute use of tap water for bottled water and to use water filters.

118.    As a result, Defendant is estopped from denying that Defendant's violations caused Plaintiffs and the class to incur such costs or that Defendant is equitably obligated to reimburse such costs.

## COUNT FOUR

### NEGLIGENCE

119.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

120.    Defendant owed a legal duty to Plaintiffs and the classes, including the duty to

exercise the care that would be exercised by a reasonable person or entity under similar circumstance.

121.    By the actions complained of herein, Defendant breached the duties owed.

122.    As a result of those breaches, Plaintiffs and the classes incurred damages in the form of the costs incurred by following the directives issued by Defendant in the Notices.

### COUNT FIVE

### UNJUST ENRICHMENT

123.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

124.    By the acts alleged herein, Defendant received an unearned benefit from Plaintiffs and the classes under circumstances which were unjust.

125.    Specifically, Defendant was legally and equitably obligated to pay the costs of medical evaluation and medical advice, bottled water and water filters, which Defendant's own Notices admit were necessary and which Defendant's own Notices admit were made necessary by what Defendant's own Notice describes as a violation of legal water quality standards in the water sold and delivered by Defendant.

126.    In issuing the Notices, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for costs associated with the admitted violations of PFOA water standards.

127.    By the acts alleged herein, Plaintiffs and the classes conferred a benefit on Defendant by paying costs and expenses which were legally and equitably owed by Defendant, under circumstances which were unjust and under which Plaintiffs and the classes have a reasonable expectation of reimbursement.

MID-L-006306-21  11/18/2021 4:18:36 PM  Pg 26 of 37 Trans ID: LCV20212698871

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

a.    Certify this matter as a class action pursuant to Rule 4:32;

b.    Require Defendant to pay restitution and indemnification to Plaintiffs and the classes as described herein;

c.    Grant equitable and injunctive relief to Plaintiffs and the classes as described herein;

d.    Award Plaintiffs reasonable attorneys' fees and costs; and

e.    Grant Plaintiffs and the class such other and further legal, equitable and declaratory relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

DeNITTIS OSEFCHEN PRINCE, P.C.

Dated:  November 18, 2021         By: _____

Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Fax: (856) 797-9978
sdenittis@denittislaw.com
josefchen@denittislaw.com
sprince@denittislaw.com

and

Michael A. Galpern, Esquire
Zachary M. Green, Esquire
Adam P. Scalice, Esquire
**JAVERBAUM, WURGAFT, HICKS,
    KAHN, WIKSTROM & SININS, P.C.**

26

1000 Haddonfield-Berlin Road, Ste. 203
Voorhees, NJ 08043
Telephone:  (856) 596-4100
Fax:  (856) 702-6640
mgalpern@lawjw.com
zgreen@lawjw.com
ascalice@lawjw.com

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.  There are no other parties known to Plaintiffs at this time who should be joined in this action.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Stephen DeNittis and Michael Galpern are designated as trial counsel on this complaint.

**DeNITTIS OSEFCHEN PRINCE, P.C.**

Dated: November 18, 2021          By: _____

Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Fax: (856) 797-9978
sdenittis@denittislaw.com
josefchen@denittislaw.com
sprince@denittislaw.com

and

Michael A. Galpern, Esquire
Zachary M. Green, Esquire
Adam P. Scalice, Esquire
**JAVERBAUM, WURGAFT, HICKS,**
**KAHN, WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Ste. 203
Voorhees, NJ 08043
Telephone:  (856) 596-4100
Fax:  (856) 702-6640
mgalpern@lawjw.com
zgreen@lawjw.com
ascalice@lawjw.com

*Counsel for Plaintiffs and the Proposed Classes*

28

# Attachment A

MID-L-006306-21    11/18/2021 4:18:36 PM    Pg 30 of 37 Trans ID: LCV20212698871

# IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER

## Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards

Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation.

We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.

## What is PFOA?

Perfluorooctanoic acid (PFOA) is a member of the group of chemicals called per- and polyfluoroalkyl substances (PFAS), used as a processing aid in the manufacture of fluoropolymers used in non-stick cookware and other products, as well as other commercial and industrial uses, based on its resistance to harsh chemicals and high temperatures. PFOA has also been used in aqueous film-forming foams for firefighting and training, and it is found in consumer products such as stain-resistant coatings for upholstery and carpets, water-resistant outdoor clothing, and greaseproof food packaging. Major sources of PFOA in drinking water include discharge from industrial facilities where it was made or used and the release of aqueous film-forming foam. Although the use of PFOA has decreased substantially, contamination is expected to continue indefinitely because it is extremely persistent in the environment and is soluble and mobile in water.

## What does this mean?

*People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood.*

* For specific health information, see
https://www.nj.gov/health/ceohs/documents/pfas_drinking%20water.pdf.

*(over)*

**What should I do?**

- If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water.
- The New Jersey Department of Health advises that infant formula and other beverages for infants, such as juice, should be prepared with bottled water when PFOA is elevated in drinking water.
- Pregnant, nursing, and women considering having children may choose to use bottled water for drinking and cooking to reduce exposure to PFOA.
- Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.
- Boiling your water will not remove PFOA.

For more information, see https://www.nj.gov/dep/watersupply/pfas/

**What is being done?**

Middlesex Water Company has been monitoring the levels of PFAS compounds for a number of years. We have been reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008.  In anticipation of New Jersey regulatory standards, we began evaluating treatment options in 2019. Design of a new treatment plant which will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in 2023.

Only a portion of our service area, served by the Company's Park Avenue Treatment Plant is affected by this public notice. This notice is being distributed to only those customers who, according to our records, may at times, receive all or some of their water from that facility. The impacted municipalities are South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway. Some portions of these municipalities may be affected, please see the map illustrating the affected area on our website at https://www.middlesexwater.com/water-quality/

For more information, please contact our Customer Service Department at 800-549-3802.

*Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can do this by posting this notice in a public place or distributing copies by hand or mail.*

This notice is being sent to you by Middlesex Water Company. State Water System ID#1225001

Date distributed:  October 22, 2021

# Attachment B

# IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER

### Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards and Failed to Meet All Public Notification Requirements

Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation. A drinking water standard for Perfluorooctanoic acid (PFOA) was exceeded,

Additionally. Middlesex Water Company failed to provide the initial public notification in all required language(s) regarding the importance of the notice or contain where persons served may contact the water system to obtain a translated copy of the notice or to request assistance in the appropriate language.

Contact us at 800-549-3802 or info@middlesexwater.com to obtain a translated copy of the public notification materials or to request assistance.

**SPANISH:**
Middlesex Water Company tiene niveles de ácido perfluorooctanoico (PFOA)
Superó los estándares de agua potable y no cumplió con todos los requisitos de notificación pública

Nuestro sistema de agua violó recientemente una norma de agua potable de Nueva Jersey y, como nuestros clientes, tienen derecho a saber qué sucedió, qué debe hacer y qué estamos haciendo para corregir esta situación. Se superó un estándar de agua potable para el ácido perfluorooctanoico (PFOA),

Adicionalmente. Middlesex Water Company no proporcionó la notificación pública inicial en todos los idiomas requeridos con respecto a la importancia de la notificación y cómo las personas atendidas pueden comunicarse con el sistema de agua para obtener una copia traducida de la notificación o para solicitar asistencia. Si desea obtener una copia traducida de los materiales de notificación pública o solicitar asistencia, comuníquese con nosotros al 800-549-3802 oa través de info@middlesexwater.com

**CHINESE (Simplified):**

Middlesex Water Company 的全氟辛酸 (PFOA) 水平
高于饮用水标准且未满足所有公示要求

我们的供水系统最近违反了新泽西州的饮用水标准，作为我们的客户，您有权知道发生了什么、您应该做什么以及我们正在采取哪些措施来纠正这种情况。全氟辛酸 (PFOA) 饮用水标准超标，

此外。 Middlesex Water Company 未能以所有必需的语言提供关于通知重要性的初始公开通知，以及服务人员如何联系供水系统以获取通知的翻译副本或请求帮助。如果您希望获得公开通知材料的翻译副本或请求帮助，请致电 800-549-3802 或通过 info@middlesexwater.com 与我们联系
Middlesex Water Company de quánfúxīnsuān (PFOA) shuǐpíng
gāo yú yǐnyòng shuǐ biāozhǔn qiě wèi mǎnzú suǒyǒu gōngshì yāoqiú

wǒmen de gōngshuǐ xìtǒng zuìjìn wéifǎnle xīnzéxī zhōu de yǐnyòng shuǐ biāozhǔn, zuòwéi wǒmen de kèhù, nín yǒu quán zhīdào fāshēngle shénme, nín yīnggāi zuò shénme yǐjí wǒmen zhèngzài cǎiqǔ nǎxiē cuòshī lái jiūzhèng zhè zhǒng qíngkuàng. Quánfúxīnsuān (PFOA) yǐnyòng shuǐ biāozhǔn chāobiāo,

cǐwài. Middlesex Water Company wèi néng yǐ suǒyǒu bìxū de yǔyán tígōng guānyú tōngzhī zhòngyào xìng de chūshī gōngkāi tōngzhī, yǐjí fúwù rényuán rúhé liánxì gōngshuǐ xìtǒng yǐ huòqǔ tōngzhī de fānyì fùběn huò qǐngqiú bāngzhù. Rúguǒ nín xīwàng huòdé gōngkāi tōngzhī cáiliào de fānyì fùběn huò qǐngqiú bāngzhù, qǐng zhīdiàn 800-549-3802 huò tōngguò info@middlesexwater.Com yǔ wǒmen liánxì

**HINDI:**

midalaseks vaatar kampanee mein peraphluorooktenoik esid (peeephoe) ka star hai

peyajal maanakon se oopar aur sabhee saarvajanik adhisoochana aavashyakataon ko poora karane mein viphal

hamaaree jal pranaalee ne haal hee mein nyoo jarsee ke peene ke paanee ke maanak ka ullanghan kiya hai, aur hamaare graahakon ke roop mein, aapako yah jaanane ka adhikaar hai ki kya hua, aapako kya karana chaahie aur is sthiti ko theek karane ke lie ham kya kar rahe hain. pairfluoroochtanoich esid (pfo) ke lie ek peyajal maanak ko paar kar gaya tha,

isake atirikt. midilaseks vaatar kampanee notis ke mahatv ke baare mein sabhee aavashyak bhaashaon mein praarambhik saarvajanik adhisoochana pradaan karane mein viphal rahee aur notis kee anuvaadit prati praapt karane ya sahaayata ka anurodh karane ke lie seva karane vaale vyakti jal pranaalee se kaise sampark kar sakate hain. yadi aap saarvajanik adhisoochana saamagree kee anuvaadit prati praapt karana chaahate hain ya sahaayata ka anurodh karana chaahate hain to krpaya hamase 800-549-3802 par ya info@middlesexwater.com ke maadhyam se sampark karen.

मिडलसेक्स वाटर कंपनी में पेरफ्लुओरूक्टेनोइक एसिड (पीएफओ) का स्तर है

पेयजल मानकों से ऊपर और सभी सार्वजनिक अधिसूचना आवश्यकताओं को पूरा करने में विफल

हमारी जल प्रणाली ने हाल ही में न्यू जर्सी के पीने के पानी के मानक का उल्लंघन किया है, और हमारे ग्राहकों के रूप में, आपको यह जानने का अधिकार है कि क्या हुआ, आपको क्या करना चाहिए और इस स्थिति को ठीक करने के लिए हम क्या कर रहे हैं। Perfluorooctanoic एसिड (PFOA) के लिए एक पेयजल मानक को पार कर गया था,

इसके अतिरिक्त। मिडिलसेक्स वाटर कंपनी नोटिस के महत्व के बारे में सभी आवश्यक भाषाओं में प्रारंभिक सार्वजनिक अधिसूचना प्रदान करने में विफल रही और नोटिस की अनुवादित प्रति प्राप्त करने या सहायता का अनुरोध करने के लिए सेवा करने वाले व्यक्ति जल प्रणाली से कैसे संपर्क कर सकते हैं? यदि आप सार्वजनिक अधिसूचना सामग्री की अनुवादित प्रति प्राप्त करना चाहते हैं या सहायता का अनुरोध करना चाहते हैं तो कृपया हमसे 800-549-3802 पर या info@middlesexwater.com के माध्यम से संपर्क करें।

**GUJARATI:**

Miḍalasēksa vōtara kampanī pāsē paraphlu'ōrōkṭēnō'īka ēsiḍa (PFOA) nā starō chē.

Pīvānā pāṇīnā dhōraṇō upara anē tamāma jāhēra sūcanā āvasyakatā'ōnē pūrṇa karavāmāṁ niṣphala amārī pāṇī praṇālī'ē tājētaramāṁ n'yu jarsīnā pīvānā pāṇīnā dhōraṇanuṁ ullaṅghana karyuṁ chē, anē amārā grāhakō tarīkē, tamanē śuṁ thayuṁ, tamārē śuṁ karavuṁ jō'ī'ē anē ā paristhitinē sudhārava māṭē amē śuṁ karī rahyā chī'ē tē jāṇavānō tamanē adhikāra chē. Paraphlurō'ōkṭēnō'ika ēsiḍa (PFOA) māṭē pīvānā pāṇīnā dhōraṇanē ōlaṅgavāmāṁ āvyuṁ hatuṁ,

vadhumāṁ. Miḍalasēksa vōtara kampanī nōṭisanā mahatvanē lagatī tamāma jarūrī bhāṣā(bhāṣā'ō)māṁ prārambhika jāhēra sūcanā pradāna karavāmāṁ niṣphaḷa rahī anē kēvī rītē sēvā āpatī vyakti'ō nōṭisanī bhāṣāntarita nakala mēḷavava athavā sahāyanī vinantī karavā māṭē vōtara sisṭamanō samparka karī śakē chē. Jō tamē jāhēra sūcanā sāmagrīnī bhāṣāntarita nakala mēḷavava māṅgatā hō athavā sahāyanī vinantī karavā māṅgatā hō, tō kṛpā karīnē amārō 800-549-3802 para athavā info@middlesexwater.com dvārā samparka karō.

મિડલસેક્સ વોટર કંપની પાસે પરફ્લુઓરોક્ટેનોઈક એસિડ (PFOA) ના સ્તરો છે.

પીવાના પાણીના ધોરણો ઉપર અને તમામ જાહેર સૂચના આવશ્યકતાઓને પૂર્ણ કરવામાં નિષ્ફળ

અમારી પાણી પ્રણાલીએ તાજેતરમાં ન્યુ જર્સીના પીવાના પાણીના ધોરણનું ઉલ્લંઘન કર્યું છે, અને અમારા ગ્રાહકો તરીકે, તમને શું થયું, તમારે શું કરવું જોઈએ અને આ પરિસ્થિતિને સુધારવા માટે અમે શું કરી રહ્યા છીએ તે જાણવાનો તમને અધિકાર છે. પરફ્લુરોઓક્ટેનોઈક એસિડ (PFOA) માટે પીવાના પાણીના ધોરણને ઓળંગવામાં આવ્યું હતું,

વધુમાં. મિડલસેક્સ વોટર કંપની નોટિસના મહત્વને લગતી તમામ જરૂરી ભાષા(ભાષાઓ)માં પ્રારંભિક જાહેર સૂચના પ્રદાન કરવામાં નિષ્ફળ રહી અને કેવી રીતે સેવા આપતી વ્યક્તિઓ નોટિસની ભાષાંતરિત નકલ મેળવવા અથવા સહાયની વિનંતી કરવા માટે વોટર સિસ્ટમનો સંપર્ક કરી શકે છે. જો તમે જાહેર સૂચના સામગ્રીની ભાષાંતરિત નકલ મેળવવા માંગતા હો અથવા સહાયની વિનંતી કરવા માંગતા હો, તો કૃપા કરીને અમારો 800-549-3802 પર અથવા info@middlesexwater.com દ્વારા સંપર્ક કરો.

**KOREAN:**

Middlesex Water Company 에는 과불화옥탄산(PFOA) 수치가 있습니다.

음용수 기준을 초과하고 모든 공시 요건을 충족하지 못함

우리의 상수도 시스템은 최근 뉴저지 식수 기준을 위반했으며, 우리의 고객으로서 당신은 무슨 일이 일어났는지, 무엇을 해야 하는지, 우리가 이 상황을 바로잡기 위해 무엇을 하고 있는지 알 권리가 있습니다. 과불화옥탄산(PFOA)에 대한 음용수 기준을 초과했습니다.

추가적으로. Middlesex Water Company 는 통지의 중요성과 서비스를 받는 사람이 통지의 번역본을 얻거나 지원을 요청하기 위해 수도 시스템에 연락하는 방법에 대해 모든 필수 언어로 최초 공개 통지를 제공하지 못했습니다. 공고 자료의 번역본을 구하거나 도움을 요청하려면 800-549-3802 또는 info@middlesexwater.com 을 통해 저희에게 연락하십시오.

Middlesex Water Companyeneun gwabulhwaogtansan(PFOA) suchiga issseubnida.
eum-yongsu gijun-eul chogwahago modeun gongsi yogeon-eul chungjoghaji mosham

uliui sangsudo siseutem-eun choegeun nyujeoji sigsu gijun-eul wibanhaess-eumyeo, uliui gogaeg-euloseo dangsin-eun museun il-i il-eonassneunji, mueos-eul haeya haneunji, uliga i sanghwang-eul balojabgi wihae mueos-eul hago issneunji al gwonliga issseubnida. gwabulhwaogtansan(PFOA)e daehan eum-yongsu gijun-eul chogwahaessseubnida.

chugajeog-eulo. Middlesex Water Companyneun tongjiui jung-yoseong-gwa seobiseuleul badneun salam-i tongjiui beon-yeogbon-eul eodgeona jiwon-eul yocheonghagi wihae sudo siseutem-e yeonlaghaneun bangbeob-e daehae modeun pilsu eon-eolo choecho gong-gae tongjileul jegonghaji moshaessseubnida. gong-go jalyoui beon-yeogbon-eul guhageona doum-eul yocheonghalyeomyeon 800-549-3802 ttoneun info@middlesexwater.com-eul tonghae jeohuiege yeonlaghasibsio.

**FILIPINO:**
Ang Middlesex Water Company ay May Mga Antas ng Perfluorooctanoic Acid (PFOA)
Higit sa Mga Pamantayan ng Tubig na Iniinom at Nabigong Matugunan ang Lahat ng Mga Kinakailangan sa Pampublikong Abiso

Ang aming sistema ng tubig ay lumabag kamakailan sa pamantayan ng tubig na inumin sa New Jersey, at bilang aming mga customer, may karapatan kang malaman kung ano ang nangyari, kung ano ang dapat mong gawin, at kung ano ang ginagawa namin upang itama ang sitwasyong ito. Nalampasan ang pamantayan ng inuming tubig para sa Perfluorooctanoic acid (PFOA),

Bukod pa rito. Nabigo ang Middlesex Water Company na magbigay ng paunang pampublikong abiso sa lahat ng kinakailangang (mga) wika tungkol sa kahalagahan ng paunawa at kung paano maaaring makipag-ugnayan ang mga taong pinaglilingkuran sa sistema ng tubig upang makakuha ng isinaling kopya ng paunawa o para humiling ng tulong. Kung nais mong makakuha ng isinalin na kopya ng mga pampublikong materyales sa abiso o humiling ng tulong mangyaring makipag-ugnayan sa amin sa 800-549-3802 o sa pamamagitan ng info@middlesexwater.com

**PUNJABI:**
Midalasaikasa vāṭara kapanī kōla paraphalū'ōrōkaṭānō'ika aisiḍa (PFOA) dē padhara hana
pīṇa vālē pāṇī dē mi'ārāṁ tōṁ upara hai atē sārī'āṁ janataka sūcanā lōṛāṁ nū pūrā karana vica asaphala rihā hai

sāḍē vāṭara sisatama nē hāla hī vica ni'ū jarasī dē pīṇa vālē pāṇī dē mi'āra dī ulaghaṇā kītī hai, atē sāḍē gāhaka hōṇa dē nātē, tuhānū iha jāṇana dā haka hai ki kī hō'i'ā, tuhānū kī karanā cāhīdā hai, atē asīṁ isa sathitī nū ṭhīka karana la'ī kī kara rahē hāṁ. Perfluorooctanoic acid (PFOA) la'ī pīṇa vālē pāṇī dē mi'āra nū pāra kītā gi'ā sī,

isa tōṁ ilāv MID-L-006306-21  11/18/2021 4:18:36 PM  Pg 36 of 37 Trans ID: LCV20212698871
(bhāśāvāṁ) vica śurūʼātī janataka sūcanā pradāna karana vica asaphala rahī atē kivēṁ sēvā kītē gaʼē
viʼakatī nōṭisa dī anuvādita kāpī prāpata karana jāṁ sahāʼitā dī bēnatī karana laʼī jala praṇālī nāla saparaka
kara sakadē hana. Jēkara tusīṁ janataka sūcanā samagarī dī anuvādita kāpī prāpata karanā cāhudē hō
jāṁ sahāʼitā laʼī bēnatī karanā cāhudē hō tāṁ kirapā karakē sāḍē nāla 800-549-3802ʼtē jāṁ
info@middlesexwater.Com rāhīṁ saparaka karō.

ਮਿਡਲਸੈਕਸ ਵਾਟਰ ਕੰਪਨੀ ਕੋਲ ਪਰਫਲੂਓਰੋਕਟਾਨੋਇਕ ਐਸਿਡ (PFOA) ਦੇ ਪੱਧਰ ਹਨ
ਪੀਣ ਵਾਲੇ ਪਾਣੀ ਦੇ ਮਿਆਰਾਂ ਤੋਂ ਉੱਪਰ ਹੈ ਅਤੇ ਸਾਰੀਆਂ ਜਨਤਕ ਸੂਚਨਾ ਲੋੜਾਂ ਨੂੰ ਪੂਰਾ ਕਰਨ ਵਿੱਚ ਅਸਫਲ ਰਿਹਾ ਹੈ

ਸਾਡੇ ਵਾਟਰ ਸਿਸਟਮ ਨੇ ਹਾਲ ਹੀ ਵਿੱਚ ਨਿਊ ਜਰਸੀ ਦੇ ਪੀਣ ਵਾਲੇ ਪਾਣੀ ਦੇ ਮਿਆਰ ਦੀ ਉਲੰਘਣਾ ਕੀਤੀ ਹੈ, ਅਤੇ ਸਾਡੇ ਗਾਹਕ ਹੋਣ ਦੇ ਨਾਤੇ,
ਤੁਹਾਨੂੰ ਇਹ ਜਾਨਣ ਦਾ ਹੱਕ ਹੈ ਕਿ ਕੀ ਹੋਇਆ, ਤੁਹਾਨੂੰ ਕੀ ਕਰਨਾ ਚਾਹੀਦਾ ਹੈ, ਅਤੇ ਅਸੀਂ ਇਸ ਸਥਿਤੀ ਨੂੰ ਠੀਕ ਕਰਨ ਲਈ ਕੀ ਕਰ ਰਹੇ ਹਾਂ।
Perfluorooctanoic acid (PFOA) ਲਈ ਪੀਣ ਵਾਲੇ ਪਾਣੀ ਦੇ ਮਿਆਰ ਦੇ ਪਾਰ ਕੀਤਾ ਗਿਆ ਸੀ,

ਇਸ ਤੋਂ ਇਲਾਵਾ। ਮਿਡਲਸੈਕਸ ਵਾਟਰ ਕੰਪਨੀ ਨੋਟਿਸ ਦੀ ਮਹੱਤਤਾ ਬਾਰੇ ਸਾਰੀਆਂ ਲੋੜੀਂਦੀਆਂ ਭਾਸ਼ਾਵਾਂ (ਭਾਸ਼ਾਵਾਂ) ਵਿੱਚ ਸ਼ੁਰੂਆਤੀ ਜਨਤਕ
ਸੂਚਨਾ ਪ੍ਰਦਾਨ ਕਰਨ ਵਿੱਚ ਅਸਫਲ ਰਹੀ ਅਤੇ ਕਿਵੇਂ ਸੇਵਾ ਕੀਤੇ ਗਏ ਵਿਅਕਤੀ ਨੋਟਿਸ ਦੀ ਅਨੁਵਾਦਿਤ ਕਾਪੀ ਪ੍ਰਾਪਤ ਕਰਨ ਜਾਂ ਸਹਾਇਤਾ ਦੀ
ਬੇਨਤੀ ਕਰਨ ਲਈ ਜਲ ਪ੍ਰਣਾਲੀ ਨਾਲ ਸੰਪਰਕ ਕਰ ਸਕਦੇ ਹਨ। ਜੇਕਰ ਤੁਸੀਂ ਜਨਤਕ ਸੂਚਨਾ ਸਮੱਗਰੀ ਦੀ ਅਨੁਵਾਦਿਤ ਕਾਪੀ ਪ੍ਰਾਪਤ ਕਰਨਾ
ਚਾਹੁੰਦੇ ਹੋ ਜਾਂ ਸਹਾਇਤਾ ਲਈ ਬੇਨਤੀ ਕਰਨਾ ਚਾਹੁੰਦੇ ਹੋ ਤਾਂ ਕਿਰਪਾ ਕਰਕੇ ਸਾਡੇ ਨਾਲ 800-549-3802 'ਤੇ ਜਾਂ
info@middlesexwater.com ਰਾਹੀਂ ਸੰਪਰਕ ਕਰੋ।

We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and required monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021, showed that our system exceeds the PFOA MCL. PFOA was detected at 36.1 ppt, which caused the RAA to exceed the MCL regardless of the following quarterly results.

## What is PFOA?
Perfluorooctanoic acid (PFOA) is a member of the group of chemicals called per- and polyfluoroalkyl substances (PFAS), used as a processing aid in the manufacture of fluoropolymers used in non-stick cookware and other products, as well as other commercial and industrial uses, based on its resistance to harsh chemicals and high temperatures. PFOA has also been used in aqueous film-forming foams for firefighting and training, and it is found in consumer products such as stain-resistant coatings for upholstery and carpets, water-resistant outdoor clothing, and greaseproof food packaging. Major sources of PFOA in drinking water include discharge from industrial facilities where it was made or used and the release of aqueous film-forming foam. Although the use of PFOA has decreased substantially, contamination is expected to continue indefinitely because it is extremely persistent in the environment and is soluble and mobile in water.

## What does this mean?
*People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood.*

* For specific health information, see
https://www.nj.gov/health/ceohs/documents/pfas_drinking%20water.pdf.

## What should I do?
- If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water.
- The New Jersey Department of Health advises that infant formula and other beverages for infants, such as juice, should be prepared with bottled water when PFOA is elevated in drinking water.

MID-L-006306-21   11/18/2021 4:18:36 PM   Pg 37 of 37 Trans ID: LCV20212698871

- Pregnant women, and those breastfeeding, may consider using bottled water for drinking and cooking to reduce exposure to PFOA.
- Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.
- Boiling your water will not remove PFOA.

For more information, see https://www.nj.gov/dep/watersupply/pfas/

## What is being done?

Middlesex Water Company has been monitoring the levels of PFAS compounds for a number of years. We have been reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008. In anticipation of New Jersey regulatory standards being enacted, we began evaluating treatment options in 2019. Design of a new treatment plant which, will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in mid-2023. Middlesex Water Company (MWC) provided initial notification to customers that were originally identified as being likely served drinking water from the treatment plant that exceeded the PFOA MCL. Based on continuous analysis and updates to the inputs and assumptions of hydraulic models, we have concluded that additional areas receive or may receive some portion of the water supply exceeding the PFOA MCL. Our distribution system is an integrated network where different source waters move in different areas of the distribution network throughout any day, depending on overall customer demands and uses. This comprehensive expansion of the notification area assures that all customers who are or may be served with any amount of this supply, at any time, are receiving a public notice.

With regard to the failure to meet all Public Notification (PN) requirements, Middlesex Water Company will ensure all templates include information in the required languages, we will update our applicable operating procedures and periodically evaluate our communication protocols for compliance in order to stay current with the Public Notification requirements.

The initial list of impacted communities included all MWC customers in South Plainfield and Clark, a portion of MWC customers in Edison, Metuchen, and Woodbridge, and all of Rahway, a MWC wholesale contract customer. The revised public notification now includes all MWC customers in South Plainfield, Clark, Edison, Metuchen, Woodbridge and Carteret which had previously not initially been included. In addition, we are providing additional information in prominent languages spoken within our service area. For more information, please contact our Customer Service Department at 800-549-3802.

*Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can do this by posting this notice in a public place or distributing copies by hand or mail.*
This notice is being sent to you by Middlesex Water Company. State Water System ID#1225001

Date distributed: November 2, 2021 (expanded notification)
Date initial PN distributed: October 22, 2021 (initial notification)