**G**

**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031981997)**
**Joseph A. Osefchen, Esq. (024751992)**
**Shane T. Prince, Esq. (022412002)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**JAVERBAUM, WURGAFT, HICKS,**
**KAHN, WIKSTROM & SININS, P.C.**
**Michael A. Galpern, Esquire**
**Zachary M. Green, Esquire**
**Steven J. Rogers, Esquire**
**1000 Haddonfield-Berlin Rd., Ste. 203**
**Voorhees, New Jersey 08043**
**(856) 596-4100**

**Attorneys for Plaintiffs and the Proposed Classes**

| | |
|---|---|
| TOMAS VERA, JOEL VELEZ, MARGARET KENNEDY, DONNA ZIELINSKI, MICHAEL ZIELINSKI, MARCO L. NEAD, and RENEE WILLIAMS, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY LAW DIVISION |
| Plaintiffs, | DOCKET NO. MID-L-6306-21 |
| v. | **SECOND AMENDED**<br>**CLASS ACTION COMPLAINT** |
| MIDDLESEX WATER COMPANY, | |
| Defendant. | |

## <u>INTRODUCTION</u>

1.    This is a class action, brought on behalf of several proposed classes composed of New Jersey citizens who receive their domestic water service from Defendant Middlesex Water Company.

2.    This action does not bring any claims under the New Jersey Environmental Rights Act, <u>N.J.S.A.</u> 2A:35A-5 and does not seek any relief from the New Jersey Department of Environmental Protection ("NJ DEP") or any relief which is within the power or jurisdiction of the NJ DEP to grant.

3.    Nor does this action bring any claim within the jurisdiction of the New Jersey

1

Board of Public Utilities ("BPU") and does not seek any relief from the BPU or any relief which is within the power or jurisdiction of the BPU to grant.

    4.    Rather, the sole relief sought in this action is an order from the New Jersey Superior Court:

    a.  Directing Defendant to reimburse class members for the costs they have incurred or will incur in following the directives in the Attachment A and/or Attachment B form notices, in which Defendant directs certain categories of persons specified in the notices to seek medical advice;

    b.  Directing Defendant to reimburse class members for the costs they have incurred or will incur in following the directives in the Attachment A and/or Attachment B form notices, directing class members to use bottled water in lieu of tap water for drinking and cooking;

    c.  Directing Defendant to reimburse class members for the costs they have incurred or will incur in following the directives in the Attachment A and/or Attachment B form notices, directing class members to install a home water filter;

    d.  Directing that a program of adequate injunctive and equitable relief be established under the court's equitable powers in order to protect the class and mitigate the effects described in the Attachment A and/or Attachment B form notice on class members, including a court-supervised program of periodic medical testing of class members on multiple occasions over time as described in the landmark decision <u>Ayers v. Jackson Twp.</u>, 106 N.J. 557 (1987); and

    e.  Directing that Defendant provide reasonable notice of the conditions described in the Attachment A and B form notices to those persons who receive their domestic water service from Middlesex Water Company but who have not yet been sent any notice by Defendant advising of the conditions described in the Attachment A and B form notices.

    5.    This action arises from two uniformly-worded form notices which Defendant sent to those Middlesex Water Company customers who are billed directly by Defendant, the circumstances described in those form notice and the directives contained in those form notices.

    6.    The first such form notice which was dated October 22, 2021, was entitled:

**"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled:

**"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above**

**Drinking Water Standards.**" <u>See</u> Attachment A, Middlesex Water Company Notice dated October 22, 2021.

7.      The second such form notice was dated November 8, 2021 and was entitled "**IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER**" and sub-titled "**Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards and Failed to Meet All Public Notification Requirements.**" <u>See</u> Attachment B, Middlesex Water Company Notice dated November 8, 2021.

8.      Both of these Notices (hereafter collectively "Defendant's Notices") stated to class members in identical language that:

> "<u>Our water system recently violated a New Jersey drinking water standard</u>, and as our customers, you have a right to know what happened, <u>what you should do</u>, and what we are doing to correct this situation." (emphasis added)

9.      Both of Defendant's Notices to the classes went on to admit in identical language that the water distributed by Defendant to class members had violated a New Jersey standard relating to the allowable amount of a chemical human carcinogen called perfluorooctanoic acid ("PFOA") in drinking water, and, indeed, that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. <u>See</u> Attachment A and Attachment B, both of which admit:

> "**New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.**"

3

10.     Both of Defendant's Notices went on to explain in identical language the consequences and risks involved in exposure to PFOA in drinking water as levels higher than the allowable standard, stating in a section of the Attachment A form notice and the Attachment B form notice entitled **"What does this mean?"** that:

> **"People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system.**
>
> **Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood."**

11.     Both of Defendant's Notices also directed recipients of the Notices to take certain steps, in a section entitled **"What Should I do?"** See Attachment A and Attachment B.

12.     For example, both of Defendant's Notices contained identical language directing certain specified categories of recipients of the Notices to seek medical advice regarding drinking the water provided by Defendant, stating:

> **"If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water." (emphasis added)**

13.     Both of Defendant's Notices further contained identical language directing that recipients should consider using bottled water for drinking and cooking to reduce exposure to PFOA or installation of a home water filter. See Attachment A and Attachment B.

14.     Both of Defendant's Notices stated in identical language that these directives were based on what the two Notices themselves described as violations of standards by Defendant.

4

15.    Indeed, the only real difference between the Attachment A and the Attachment B form Notices is that the Attachment B form notice dated November 8, 2021 includes translations of the English text into various other languages including Spanish, simplified Chinese, Hindi, Korean and several other languages.

16.    As described in greater detail herein, upon receiving Defendant's form Notices, various plaintiffs named herein and other class members; many of whom suffer from specific health concerns named in the Notices (i.e., are elderly; and/or have a severely compromised immune system; and/or are pregnant or have infant children) did exactly what the Notices urged them to do. They followed Defendant's written directives in the Notices to consult with their doctors, to buy bottled water as a substitute for their contaminated tap water, and/or installed a water filter to protect against their contaminated tap water.

17.    In following those directives in Defendant's Notices, Plaintiffs and the other class members incurred out-of-pocket expenses, including co-pays for doctor's consultations, the cost of bottled water and/or the cost of installing a water filter.

18.    All such costs were fully foreseeable to Defendant at the time Defendant placed these directives in its Notices.

19.    In issuing these directives in these Notices, Defendant was not simply acting out of altruism. Rather, Defendant sought to benefit itself through the Notices by trying to eliminate or minimize Defendant's potential liability for the violation of drinking water standards described in the two Notices.

20.    The truth and accuracy of the assertions and admissions made by Defendant in these two Notices regarding the violation are not at issue in this action.

21.    Rather, Defendant is legally and equitably estopped from denying Defendant's

5

own statements which Defendant placed in two written form Notices which it sent to the classes.

22.     Moreover, what is important for the purposes of this Complaint is not whether Defendant's assertions and admissions in the two Notices were true or accurate, but the fact that Defendant made these written statements to the class, along with written directives to the class to take certain actions.

23.     Defendant knew when it issued the two Notices that class members would follow Defendant's directives to take certain actions and would thereby incur costs and expenses in following those directives.

24.     Plaintiffs now file this lawsuit, seeking indemnification and reimbursement under equitable and common law principles for themselves and several proposed classes of other similarly situated persons, for the expenses they incurred as a consequence of following the above-quoted directive in Defendant's Notices to seek medical advice about their drinking water and to replace the contaminated tap water with bottled water and/or a water filter for drinking and cooking.

25.     Put simply, having admitted and alleged in Defendant's own Notices that Defendant's violation of standards had made it necessary for Defendant to issue written directives to Plaintiffs and the classes to seek medical advice, use bottled water and obtain a water filter, Defendant is now legally and equitably obligated to pay the costs incurred by Plaintiffs and the classes in carrying out Defendant's written directives.

26.     This is especially true since at least one purpose of Defendant sending these Notices was to try to minimize Defendant's potential liability for the admitted violations by inducing class members to take, and pay for, the actions directed in the Notices, thereby shifting costs that were legally and equitably the obligation of Defendant onto wholly innocent class

members.

27.     This complaint also seeks future medical monitoring for the class who have been directly exposed to PFOA. Such medical surveillance is required because the exposure caused a distinctive increased risk of future injury, and will require a course of medical monitoring for class members independent of any other that they would otherwise have to undergo.

28.     Finally, this complaint seeks injunctive relief to remedy the fact that Defendant has thus far failed to provide reasonable notice about the dangerous conditions described in the Attachment A and B form Notices to all persons who receive their domestic drinking water supply from Middlesex Water Company.

29.     Defendant did not send notice to all persons who receive their domestic drinking water supply from Middlesex Water Company. Rather, Defendant only sent the Attachment A and B form Notices to those persons whose name appears as the billed party on a Middlesex Water Company bill.

30.     Yet, Defendant is fully aware that many people who receive their domestic drinking water supply from Middlesex Water Company are not billed directly by Defendant and thus do not receive a water bill in their name. This includes tenants who reside in apartment complexes and other rental properties whose water service is provided by Defendant but the water bill is sent to and paid by their landlord; persons who reside in retirement homes, group homes, long term care facilities, and any other persons who receive their domestic water supply from the Middlesex Water Company who have not yet been sent any notice by Defendant advising them of the dangerous conditions described in the Attachment A and Attachment B Notices.

31.     Indeed, Defendant's own Attachment B form Notice recognizes this fact and even

7

asks those to whom Defendant did send the Notices to notify such persons. <u>See</u> Attachment B, where Defendant stated:

> **"Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses)."**

32.    Thus, Defendant's proposed method of notifying these persons is to essentially ask certain customers of Defendant to play a giant game of "Password" and notify those persons who drink Defendant's water but are not billed directly. It is impractical, illogical and unreasonable for Defendant to rely on some Middlesex Water Company customers to notify other persons who receive their domestic water service from Middlesex Water Company about the dangers associated with Defendant's PFOA contaminated water.

33.    Defendant is the entity which sold and delivered this contaminated water. Defendant has the responsibility of providing reasonable notice to all persons who receive their domestic water supply from Middlesex Water Company of the dangers described in Defendant's Notices. It is Defendant who has the legal and equitable duty to formulate a realistic and reasonable plan to give notice to persons who receive their domestic water supply from Middlesex Water Company but who are not billed directly by Defendant.

34.    The dangerous conditions described in the Attachment A and B form Notices do not simply affect those whose names appear on Middlesex Water Company bills. Rather, it affects any person whose regular domestic tap water is provided by Middlesex Water Company, regardless of who pays the bill.

35.    Despite being aware of this, Defendant has not sent any notice to such persons.

36.    Accordingly, in addition to the other relief described herein, this complaint seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide all

8

persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in the Attachment A and Attachment B notices, in whatever reasonable manner the Court directs.

## THE PARTIES

37.     Plaintiff Tomas Vera is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff Vera is a member of several of the proposed classes and the proposed sub-class in that he received the Attachment A Notice and the Attachment B Notice from Defendant, and has specific health concerns and a severely compromised immune system. Plaintiff Vera followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking and to install a water filter. In following Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs in the form of a co-pay for the medical visit and the cost of bottled water and the water filter.

38.     Plaintiff Joel Velez is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff Velez is a member of several of the proposed classes and the proposed sub-class in that he received the Attachment A Notice and the Attachment B Notice from Defendant, and is the father of an infant who resides with him. Plaintiff Velez followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking relating to his infant son. In following Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs in the form of a co-pay for the medical visit and the cost of bottled water.

39.     Plaintiff Margaret Kennedy is an individual and citizen of New Jersey who resides in Avenel, Middlesex County, New Jersey. Plaintiff Kennedy is a member of several of the proposed classes and the proposed sub-class in that she received the Attachment A Notice and is 83 years old and suffers from a number of serious medical conditions. Plaintiff Kennedy followed Defendant's directives in the Notice to seek medical advice from her doctor about her contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking. In following Defendant's directives, she incurred reasonably foreseeable and unreimbursed costs for the medical visit and the cost of bottled water.

40.     Plaintiffs Donna and Michael Zielinski are individuals and citizens of New Jersey who resides in Colonia, Middlesex County, New Jersey. Plaintiffs Zielinski are members of several of the proposed classes and the proposed sub-class in that they received the Attachment A Notice and Donna Zielinski is over 70 years old and her husband, Plaintiff Michael Zielinski, is immunocompromised. Plaintiffs Zielinski followed Defendant's directives in the Notice to seek medical advice from her doctor about her contaminated drinking water, as well as Defendant's directive to use bottle water instead of tap water for drinking and cooking and is the process of purchasing a water filter at a cost of over $2,000. In following Defendant's directives, they incurred reasonably foreseeable and unreimbursed costs for the medical visit, the cost of bottled water and the water filter.

41.     Plaintiff Marco L. Nead is an individual and citizen of New Jersey who resides in Metuchen, Middlesex County, New Jersey. Plaintiff Nead is a member of several of the proposed classes and the proposed sub-class in that he received the Attachment A Notice and has specific health concerns. Plaintiff Nead followed Defendant's directives in the Notice to seek medical advice from his doctor about his contaminated drinking water, as well as Defendant's directive to

10

use bottle water instead of tap water for drinking and cooking. Moreover, Plaintiff Nead has

purchased and is in the process of installing a water filter at a cost of over $3,000. In following

Defendant's directives, he incurred reasonably foreseeable and unreimbursed costs.

42.     Plaintiff Renee Williams is an individual and citizen of New Jersey who resides in

Ford, Middlesex County, New Jersey. Plaintiff Williams is a member of the proposed "No

Notice Class" as defined herein in that she receives her domestic water supply from Middlesex

Water Company but has thus far not has not been sent any notice by Defendant describing the

conditions described in the Attachment A or Attachment B Notices. After learning about the

contamination in the news, Plaintiff Kennedy incurred expenses in seeking medical advice from

her doctor about her contaminated drinking water, as well as purchasing bottled water instead of

tap water for drinking and cooking.

43.     Defendant Middlesex Water Company is a New Jersey corporation with its

principal place of business at 485C Route One South, Suite 400, Iselin, New Jersey, and thus is a

citizen of New Jersey. Defendant supplies water to New Jersey citizens who reside in Middlesex

County, New Jersey.

## JURISDICTION AND VENUE

44.     This class action complaint raises claims against a New Jersey Defendant, brought

by Plaintiffs who are all New Jersey citizens, on behalf of proposed classes which are composed

entirely of New Jersey citizens, and is based entirely on actions which occurred in Middlesex

County, New Jersey.

45.     There is no federal jurisdiction over this matter in that the Plaintiffs, the

Defendant and all members of the proposed classes are all New Jersey citizens and thus diversity

is lacking and no federal claims or federal questions are at issue in this complaint.

11

46.      This matter is properly venued in Middlesex County, New Jersey, in that

Plaintiffs and each class member are residents of Middlesex County, New Jersey and are

supplied water by Defendant in Middlesex County, New Jersey. Additionally, the actions which

give rise to this lawsuit and any damages or injuries to Plaintiffs and the classes occurred in

Middlesex County, New Jersey.

### FACTUAL BASIS FOR THE RELIEF REQUESTED

47.      PFOA, or Perfluorooctanoic Acid, is a known human carcinogen that never

breaks down in water, soil, or the human body. Thus, once released into the environment, PFOA

is persistent in the environment. PFOA is also bioretentive and bioaccumulative, meaning it

accumulates within the human body and has an extremely long half-life of at least two to four

years.

48.      Scientific studies have shown PFOA exposure causes at least six diseases:

ulcerative colitis; pregnancy-induced hypertension; high cholesterol; thyroid disease; testicular

cancer; and kidney cancer. Several published peer-reviewed journals, prove that the chemical

affects the entire body, even at low exposure levels. The research has concluded that PFOA

poses a health threat even at very low level.

49.      Defendant is a water company that supplies water to approximately 61,000 New

Jersey homes and over 300,000 New Jersey citizens.

50.      On or about October 22, 2021, Defendant distributed a mass-produced, uniformly

worded form Notice to over 20,000 of its customers residing in several townships where

Middlesex Water Company provides domestic water service, with the Notice being titled:

**"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled:

**"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above**

**Drinking Water Standards."** <u>See</u> Attachment A, Middlesex Water Company Notice dated October 22, 2021.

51.    Approximately fourteen days after that first form Notice, Defendant sent a second uniformly-worded form Notice to its customers in certain Middlesex County Townships. The second such form Notice was dated November 8, 2021 and was entitled **"IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER"** and sub-titled **"Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards and Failed to Meet All Public Notification Requirements."** <u>See</u> Attachment B, Middlesex Water Company Notice dated November 8, 2021.

52.    The primary difference between these two form Notices is that the Notice dated November 8, 2021 includes, along with the English text found in the Notice dated October 22, 2021, translations of that text in various other languages, including Spanish, simplified Chinese, Hindi, Korean and several other languages.

53.    Both of these two Notices (hereafter collectively "Defendant's Notices") stated to class members in English in identical language that:

> **"<u>Our water system recently violated a New Jersey drinking water standard</u>, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation." (emphasis added)**

54.    Both of Defendant's Notices went on to admit in identical language that the water distributed by Defendant to class members had violated a New Jersey standard relating to the allowable amount of a chemical human carcinogen called perfluorooctanoic acid ("PFOA") in drinking water, and, indeed, that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. <u>See</u> Attachment A and Attachment B, both of which admit:

13

> "New Jersey adopted a standard, or maximum contaminant level
> (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for
> PFOA is 14 parts per trillion (ppt) and is based on a running annual
> average (RAA), in which the four most recent quarters of monitoring
> data are averaged. On September 7, 2021, we received notice that the
> sample collected on August 2, 2021 showed that our system exceeds the
> PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to
> exceed the MCL regardless of the next quarter results."

55.    Both of Defendant's Notices went on to explain in identical language the

consequences and risks involved in exposure to PFOA in drinking water as levels higher than the

allowable standard, stating in a section of the Attachment A form Notice and the Attachment B

form Notice entitled **"What does this mean?"** that:

> "People who drink water containing PFOA in excess of the MCL over
> time could experience problems with their blood serum cholesterol
> levels, liver, kidney, immune system, or, in males, the reproductive
> system. Drinking water containing PFOA in excess of the MCL over
> time may also increase the risk of testicular and kidney cancer. For
> females, drinking water containing PFOA in excess of the MCL over
> time may cause developmental delays in a fetus and/or an infant. Some
> of these developmental effects may persist through childhood."

56.    Both of Defendant's Notices also directed recipients of the Notice to take certain

steps, in a section entitled **"What Should I do?"**. See Attachment A and Attachment B.

57.    For example, both of Defendant's Notices contained identical language directing

certain specified categories of recipients of the Notice to seek medical advice regarding drinking

the water provided by Defendant, stating:

> "If you have specific health concerns, a severely compromised immune
> system, have an infant, are pregnant, or are elderly, <u>you</u> may be at
> higher risk than other individuals and <u>*should*</u> <u>seek advice from your
> health care providers about drinking this water.</u>" (emphasis added)

58.    Both of Defendant's Notices further contained identical language directing that

recipients should consider using bottled water for drinking and cooking to reduce exposure to

PFOA or installation of a home water filter. See Attachment A and Attachment B.

14

59.     Both of Defendant's Notices stated in identical language that these directives were based on what the two Notices themselves described as a violation of legal water standards in the water sold and delivered by Defendant.

60.     As admitted in Defendant's Attachment A and Attachment B form Notices, the State of New Jersey has established a legal standard for PFOA in drinking water of 14 parts per trillion (ppt). See Attachment A and Attachment B.

61.     Both of Defendant's Notices admit to class members that the water delivered and sold by Defendant to the class violated that standard, admitting: **"Our water system recently violated a New Jersey drinking water standard…"**.

62.     Indeed, both of Defendant's Notices went on to admit that Defendant's water in August and September 2021 contained more than double the amount of PFOA allowed under that standard. See Attachment A and Attachment B.

63.     It is submitted that Defendant is now equitably and legally estopped from denying the written admissions it made in these two written Notices. Indeed, this action is not about proving these violations of standards, because Defendant itself has already admitted in writing to the violation of standards in the two Notices.

64.     Moreover, the truth and accuracy of the assertions and admissions made by Defendant in the two Notices regarding this violation are not the core of the class claims.

65.     This case is about what Defendant said in its form Notices. Regardless whether the admissions made by Defendant are true and accurate, the fact is that Defendant made them to the class and then directed the class to take certain actions; directions which many class members followed or will follow and thereby have incurred or will incur reasonable and foreseeable expenses.

66.    Defendant was fully aware when it issued the two Notices that class members would follow Defendant's directives to take certain actions and would thereby incur costs and expenses in following those directives.

67.    As such, Defendant is legally and equitably obligated to reimburse class members who followed Defendant's directives.

68.    Accordingly, this lawsuit seeks indemnification and reimbursement under equitable and common law principles for Plaintiffs and several proposed classes of other similarly situated persons for the expenses they incurred as a consequence of following the above-quoted directive in Defendant's Notices to seek medical advice about their drinking water and to replace the contaminated tap water with bottled water and/or a water filter for drinking and cooking.

69.    Put simply, having admitted and alleged in Defendant's own Notices that Defendant's violation of standards had made it necessary for Defendant to issue written directives to Plaintiffs and the classes to seek medical advice, use bottled water and obtain a water filter, Defendant is now legally and equitably obligated to pay the costs incurred by Plaintiffs and the classes in carrying out Defendant's written directives.

70.    This is especially true since at least one purpose of Defendant in sending these Notices was to try to minimize Defendant's potential liability for the admitted violations by inducing class members to take the actions directed in the Notices and to shift the costs of those measures, whose payment was legally and equitably the responsibility of Defendant, unto Plaintiffs and the class (who had no responsibility for the violations described in the Notices).

71.    This complaint also seeks future medical monitoring for the class who have been directly exposed to PFOA. Medical surveillance is required because the exposure caused a

distinctive increased risk of future injury, and will require a course of medical monitoring independent of any other that the class members would otherwise have to undergo.

72.    Finally, this complaint seeks injunctive relief to remedy the fact that Defendant has thus far failed to provide reasonable notice about the dangerous conditions described in the Attachment A and B form Notices to many persons who receive their domestic drinking water supply from Middlesex Water Company.

73.    Defendant sent the Attachment A and B form Notices only to those persons whose name appears as the billed party on a Middlesex Water Company bill.

74.    Yet, Defendant is fully aware that many people who receive their domestic drinking water supply from Middlesex Water Company do not receive a water bill in their name. This includes tenants who reside in apartment complexes and other rental properties whose water service is provided by Defendant but the landlord is billed for the entire complex, as well as persons who reside in retirement homes, group homes, long term care facilities, and any other persons who receive their domestic water supply from the Middlesex Water Company who have not yet been sent any notice by Defendant advising them of the dangerous conditions described in the Attachment A and Attachment B Notices.

75.    The dangerous conditions described in the Attachment A and B form Notices do not simply affect those whose names appear on Middlesex Water Company bills. Rather, it affects any person whose regular domestic tap water is provided by Middlesex Water Company, regardless of who pays the bill.

76.    Despite being aware of this, Defendant has not sent any notice to such persons.

77.    Accordingly, in addition to the other relief described herein, this complaint seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide all

17

persons who receive their domestic drinking water supply from Middlesex Water Company with

notice of the dangers described in the Attachment A and Attachment B Notices, in whatever

reasonable manner the Court directs.

### **CLASS ACTION ALLEGATIONS**

78.     Plaintiffs Vera, Velez, Kennedy, Zielinski and Nead bring this action as a class

action pursuant to Rule 4:32, seeking relief on behalf of a proposed main class (hereafter the

"Attachment A class") defined as:

> **All New Jersey citizens to whom Defendant sent a form notice which**
> **was identical or substantially similar to Attachment A.**

79.     Plaintiffs Vera, Velez, Kennedy and Nead also bring this action as a class action

pursuant to Rule 4:32, seeking relief on behalf of a proposed main class (hereafter the

"Attachment B class") defined as:

> **All New Jersey citizens to whom Defendant sent a form notice which**
> **was identical or substantially similar to Attachment B.**

80.     Plaintiffs Vera, Velez, Zielinski and Kennedy also bring this action as a class

action pursuant to Rule 4:32, seeking relief on behalf of a proposed sub-class (hereafter the

"specified conditions sub-class") defined as:

> **All New Jersey citizens who are members of either the Attachment A**
> **Class or the Attachment B Class, who at the time of the notice had**
> **"specific health concerns, a severely compromised immune system,**
> **have an infant, are pregnant, or are elderly," as those terms are used in**
> **the Notices, and who have incurred or will incur medical expenses as a**
> **result of following the directive issued by Defendant in the form notice**
> **that directed such persons to seek advice from their health care**
> **provider.**

81.     Finally, Plaintiff Williams brings this action as a class action pursuant to Rule

4:32, seeking relief on behalf of a proposed main class (hereafter the "No Notice Class") defined

as:

18

> **All New Jersey citizens whose domestic water supply is provided by Middlesex Water Company who have not yet received notice from Defendant of the conditions described in the Attachment A and/or Attachment B form notices.**

82.    The classes and sub-class are each so numerous that joinder of all members is impracticable.

83.    The exact number and identities of the persons who fit within the proposed classes are either contained in Defendant's records or can be ascertained from those records. It is alleged that each proposed class contains more than one hundred persons.

84.    The claims in this action arise exclusively from the language Defendant chose to place in Defendant's uniformly-worded Attachment A Notice and/or Attachment B Notice, and the admissions, assertions and directives Defendant issued therein.

85.    No claims are a result of any individualized interaction between Defendant and any class member.

86.    There are numerous common questions of law and fact affecting the rights of class members, including *inter alia*:

a.    Whether Defendant is bound by the admissions and assertions made by Defendant in the Notices that a violation by Defendant of the standards specified in the Notice made it necessary for the class to seek medical advice;

b.    Whether Defendant owed a legal duty to recipients of the Notice such as Plaintiffs and the class;

c.    Whether it was foreseeable to Defendant that Plaintiffs and the class would incur costs and/or be harmed as a result of following Defendant's directives in the Notice;

d.    Whether Defendant's refusal to reimburse Plaintiffs and the class for the cost incurred in following Defendant's written directives breached a legal duty owed to Plaintiffs and the class;

e.    Whether equitable principles demand that Defendant reimburse Plaintiffs and the class for the cost they incurred in following Defendant's directives in the Notice, directives which the Notice admits and asserts were made necessary by

19

Defendant's violation of legal standards; and

    f.  Whether the class is in need of a court-monitored program of injunctive and equitable relief, including periodic medical monitoring on multiple occasions over time, under the New Jersey Supreme Court holding in <u>Ayers v. Jackson Twp.</u>, 106 N.J. 557 (1987).

87.    Each Plaintiff is a member of the classes and sub-class he or she seeks to represent.

88.    The claims of Plaintiffs are not only typical of all members of the classes and sub-class they seek to represent, they are identical.

89.    All claims of Plaintiffs and the classes arise from the same violation and form Notices as outlined herein, and all claims are based on the exact same legal theories.

90.    Plaintiffs seek the same relief for themselves as for every other class member.

91.    Plaintiffs have no interest antagonistic to or in conflict with the classes.

92.    Plaintiffs will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent themselves and the classes.

93.    Defendant has acted and/or refused to act on grounds generally applicable to the classes, in that it committed a violation of the drinking water requirement that adversely affected all class members and sent form Notices to class members, thereby making appropriate injunctive relief for each class as a whole.

94.    The prosecution of separate actions by individual class members will create a risk of inconsistent or varying adjudications, would as a practical matter be dispositive of the interests of other members not parties to the adjudications, and would substantially impair or impede their ability to protect their interests.

95.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, <u>inter alia</u>, the costs paid by each class member were less

20

than $3,000 and thus are not great enough to make separate individual lawsuits against Defendant economically viable.

96.    Common questions will predominate, and there will be no unusual manageability issues.

## COUNT ONE

### GENERAL EQUITY/EQUITABLE INDEMNITY/RESTITUTION

97.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

98.    Defendant intended that Plaintiffs and the class would rely upon the truth and accuracy of the statements made by Defendant in the Notices, and that they would follow the directives placed in the Notices as a result of Defendant's admitted violation of drinking water standards.

99.    Under the principles of general equity, Defendant is required to reimburse Plaintiffs and the relevant class and sub-class members for the costs incurred in following the written directives issued by Defendant in the Attachment A and/or Attachment B Notice, particularly when the Notices drafted by Defendant clearly and expressly admitted that this directive was made necessary solely due to what Defendant itself admitted in the Notices were violations of standards by Defendant.

100.    In issuing the Notices, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for those violations of PFOA standards by urging class members to seek – and pay for – medical advice, substituting bottled water for tap water, and/or a water filter.

101.    As a matter of both law and equity, Defendant was obligated to bear the costs of any remedial measures which were made necessary by the fact that the water sold and delivered

by Defendant failed to meet legal standards.

102.    Through the form notices at issue, Defendant sought to shift those costs unto Plaintiffs and the classes; who were wholly innocent and had no responsibility for the fact that the water sold and delivered by Defendant failed to meet legal standards.

103.    Under the facts and circumstances alleged herein, equity requires Defendant to reimburse Plaintiffs and the class members for any and all out-of-pocket costs and expenses they incurred or will incur as a result of following the directive set forth in Defendant's Notice.

104.    Wherefore, Plaintiffs and the classes seek indemnification and restitution from Defendant under equitable principles.

## COUNT TWO

### INJUNCTIVE RELIEF AND MEDICAL MONITORING

105.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

106.    Plaintiffs and the classes are in need of injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiffs and the class members for any and all out-of-pocket costs and expenses they incurred or will incur as a result of following Defendant's written directives set forth in Defendant's Notices.

107.    Plaintiffs and the classes also seek an order for injunctive and equitable relief, establishing a court supervised and medically appropriate program of medical monitoring and testing as described in the landmark decision Ayers v. Jackson Twp., 106 N.J. 557 (1987), at Defendant's expense.

108.    Finally, Plaintiff Williams and the proposed "No Notice Class" is in need of injunctive relief to remedy the fact that Defendant has thus far failed to provide reasonable notice about the dangerous conditions described in the Attachment A and B form Notices to all persons

22

who receive their domestic drinking water supply from Middlesex Water Company.

109.    Each Plaintiff consumed the unfiltered tap water supplied to them by Defendant Middlesex Water Company during the period of time in which the PFOA levels were above the maximum contaminant level ("MCL") for PFOA in that tap water.

110.    In addition, each member of the "Attachment A Class", the "Attachment B Class", "the Specified Conditions Sub-Class," "the Infant Bottled Water Sub-Class" and the "No Notice Class," consumed the tap water supplied to them by Defendant Middlesex Water Company during the period of time in which the PFOA levels were above the MCL for PFOA in that tap water.

111.    Defendant sent the Attachment A and B form Notices only to those persons whose name appears as the billed party on a Middlesex Water Company bill.

112.    Yet, Defendant is fully aware that many people who receive their domestic drinking water supply from Middlesex Water Company do not receive a water bill in their name, including tenants who reside in apartment complexes and other rental properties whose water service is provided by Defendant but is paid for by their landlord, as well as persons who reside in retirement homes, group homes, long term care facilities, and any other persons who receive their domestic water supply from the Middlesex Water Company who have not yet been sent any notice by Defendant advising them of the dangerous conditions described in the Attachment A and Attachment B Notices.

113.    The dangerous conditions described in the Attachment A and B form Notices do not simply affect those whose names appear on Middlesex Water Company bills. Rather, it affects any person whose regular domestic tap water is provided by Middlesex Water Company, regardless of who pays the bill.

23

114.    Despite being aware of this, Defendant has not sent any notice to such persons.

115.    Accordingly, in addition to the other relief described herein, this complaint seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide all persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in the Attachment A and Attachment B Notices, in whatever reasonable manner the Court directs.

## COUNT THREE

### EQUITABLE ESTOPPEL

116.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

117.    Defendant is equitably estopped from denying the truth and accuracy of the statements made by Defendant in the Attachment A Notice and/or Attachment B Notice that Defendant's violations of legal standards, as asserted and admitted by Defendant in the Notices, required that Plaintiffs and the classes follow Defendant's directives set forth in the Notices.

118.    At the time Defendant made these statements in the Notices, Defendant was fully aware that Plaintiffs and the classes would believe these statements made by Defendant in the Notices and that Plaintiffs and the class would incur costs as a result of following Defendant's written directives in the Notices as a result of what the Notices describe as a violation of water quality standards in the water sold and delivered by Defendant.

119.    In issuing the Notices, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for the costs incurred as a result of such violations by urging the class to seek medical advice early, to substitute use of tap water for bottled water and to use water filters.

120.    As a result, Defendant is estopped from denying that Defendant's violations

24

caused Plaintiffs and the class to incur such costs or that Defendant is equitably obligated to reimburse such costs.

### COUNT FOUR

### NEGLIGENCE

121.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

122.    Defendant owed a legal duty to Plaintiffs and the classes, including the duty to exercise the care that would be exercised by a reasonable person or entity under similar circumstance.

123.    By the actions complained of herein, Defendant breached the duties owed.

124.    As a result of those breaches, Plaintiffs and the classes incurred damages in the form of the costs incurred by following the directives issued by Defendant in the Notices.

### COUNT FIVE

### UNJUST ENRICHMENT

125.    Plaintiffs repeat and re-allege the paragraphs above as if fully set forth herein.

126.    By the acts alleged herein, Defendant received an unearned benefit from Plaintiffs and the classes under circumstances which were unjust.

127.    Specifically, Defendant was legally and equitably obligated to pay the costs of medical evaluation and medical advice, bottled water and water filters, which Defendant's own Notices admit were necessary and which Defendant's own Notices admit were made necessary by what Defendant's own Notice describes as a violation of legal water quality standards in the water sold and delivered by Defendant.

128.    In issuing the Notices, Defendant sought to, inter alia, benefit itself by seeking to avoid, eliminate or minimize Defendant's possible liability to the class for costs associated with

25

the admitted violations of PFOA water standards.

129.    By the acts alleged herein, Plaintiffs and the classes conferred a benefit on Defendant by paying costs and expenses which were legally and equitably owed by Defendant, under circumstances which were unjust and under which Plaintiffs and the classes have a reasonable expectation of reimbursement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

a.    Certify this matter as a class action pursuant to Rule 4:32;

b.    Require Defendant to pay restitution and indemnification to Plaintiffs and the classes as described herein;

c.    Grant equitable and injunctive relief to Plaintiffs and the classes as described herein;

d.    Award Plaintiffs reasonable attorneys' fees and costs; and

e.    Grant Plaintiffs and the class such other and further legal, equitable and declaratory relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

DeNITTIS OSEFCHEN PRINCE, P.C.

Dated:  April 25, 2022          By: _____

Stephen P. DeNittis, Esq. (031981997)
Joseph A. Osefchen, Esq. (024751992)
Shane T. Prince, Esq. (022412002)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Fax: (856) 797-9978

26

sdenittis@denittislaw.com
josefchen@denittislaw.com
sprince@denittislaw.com

and

Michael A. Galpern, Esquire
Zachary M. Green, Esquire
Steven J. Rogers, Esquire
**JAVERBAUM, WURGAFT, HICKS,
    KAHN, WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Ste. 203
Voorhees, NJ 08043
Telephone:  (856) 596-4100
Fax:  (856) 702-6640
mgalpern@lawjw.com
zgreen@lawjw.com

*Counsel for Plaintiffs and the Proposed Classes*

27

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.  There are no other parties known to Plaintiffs at this time who should be joined in this action.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>R</u>. 4:25-4, Stephen DeNittis and Michael Galpern are designated as trial counsel on this complaint.

**DeNITTIS OSEFCHEN PRINCE, P.C.**

Dated: April 25, 2022            By:  _____
                                    Stephen P. DeNittis, Esq. (031981997)
                                    Joseph A. Osefchen, Esq. (024751992)
                                    Shane T. Prince, Esq. (022412002)
                                    525 Route 73 North, Suite 410
                                    Marlton, NJ 08053
                                    Telephone: (856) 797-9951
                                    Fax: (856) 797-9978
                                    sdenittis@denittislaw.com
                                    josefchen@denittislaw.com
                                    sprince@denittislaw.com

                                    and

                                    Michael A. Galpern, Esquire
                                    Zachary M. Green, Esquire
                                    Steven J. Rogers, Esquire
                                    **JAVERBAUM, WURGAFT, HICKS,**
                                        **KAHN, WIKSTROM & SININS, P.C.**
                                    1000 Haddonfield-Berlin Road, Ste. 203
                                    Voorhees, NJ 08043
                                    Telephone:  (856) 596-4100
                                    Fax:  (856) 702-6640
                                    mgalpern@lawjw.com
                                    zgreen@lawjw.com

                                    *Counsel for Plaintiffs and the Proposed Classes*

28

# Attachment A

## IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER

### Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards

Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation.

We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021 showed that our system exceeds the PFOA MCL. PFOA was found at 36.1 ppt which caused the RAA to exceed the MCL regardless of the next quarter results.

### What is PFOA?

Perfluorooctanoic acid (PFOA) is a member of the group of chemicals called per- and polyfluoroalkyl substances (PFAS), used as a processing aid in the manufacture of fluoropolymers used in non-stick cookware and other products, as well as other commercial and industrial uses, based on its resistance to harsh chemicals and high temperatures. PFOA has also been used in aqueous film-forming foams for firefighting and training, and it is found in consumer products such as stain-resistant coatings for upholstery and carpets, water-resistant outdoor clothing, and greaseproof food packaging. Major sources of PFOA in drinking water include discharge from industrial facilities where it was made or used and the release of aqueous film-forming foam. Although the use of PFOA has decreased substantially, contamination is expected to continue indefinitely because it is extremely persistent in the environment and is soluble and mobile in water.

### What does this mean?

*People who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system. Drinking water in excess of the MCL over time may also increase the risk of testicular and kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through childhood.*

*\* For specific health information, see*
https://www.nj.gov/health/ceohs/documents/pfas_drinking%20water.pdf.

*(over)*

## What should I do?

- If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water.
- The New Jersey Department of Health advises that infant formula and other beverages for infants, such as juice, should be prepared with bottled water when PFOA is elevated in drinking water.
- Pregnant, nursing, and women considering having children may choose to use bottled water for drinking and cooking to reduce exposure to PFOA.
- Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.
- Boiling your water will not remove PFOA.

For more information, see https://www.nj.gov/dep/watersupply/pfas/

## What is being done?

Middlesex Water Company has been monitoring the levels of PFAS compounds for a number of years. We have been reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008.  In anticipation of New Jersey regulatory standards, we began evaluating treatment options in 2019. Design of a new treatment plant which will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in 2023.

Only a portion of our service area, served by the Company's Park Avenue Treatment Plant is affected by this public notice. This notice is being distributed to only those customers who, according to our records, may at times, receive all or some of their water from that facility. The impacted municipalities are South Plainfield, Edison, Metuchen, Woodbridge, Clark and Rahway. Some portions of these municipalities may be affected, please see the map illustrating the affected area on our website at https://www.middlesexwater.com/water-quality/

For more information, please contact our Customer Service Department at 800-549-3802.

*Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can do this by posting this notice in a public place or distributing copies by hand or mail.*

This notice is being sent to you by Middlesex Water Company. State Water System ID#1225001

Date distributed: October 22, 2021

# Attachment B

# IMPORTANT INFORMATION ABOUT YOUR DRINKING WATER

### Middlesex Water Company Has Levels of Perfluorooctanoic Acid (PFOA) Above Drinking Water Standards and Failed to Meet All Public Notification Requirements

Our water system recently violated a New Jersey drinking water standard, and as our customers, you have a right to know what happened, what you should do, and what we are doing to correct this situation. A drinking water standard for Perfluorooctanoic acid (PFOA) was exceeded,

Additionally. Middlesex Water Company failed to provide the initial public notification in all required language(s) regarding the importance of the notice or contain where persons served may contact the water system to obtain a translated copy of the notice or to request assistance in the appropriate language.

Contact us at 800-549-3802 or info@middlesexwater.com to obtain a translated copy of the public notification materials or to request assistance.

**SPANISH:**

Middlesex Water Company tiene niveles de ácido perfluorooctanoico (PFOA)
Superó los estándares de agua potable y no cumplió con todos los requisitos de notificación pública

Nuestro sistema de agua violó recientemente una norma de agua potable de Nueva Jersey y, como nuestros clientes, tienen derecho a saber qué sucedió, qué debe hacer y qué estamos haciendo para corregir esta situación. Se superó un estándar de agua potable para el ácido perfluorooctanoico (PFOA),

Adicionalmente. Middlesex Water Company no proporcionó la notificación pública inicial en todos los idiomas requeridos con respecto a la importancia de la notificación y cómo las personas atendidas pueden comunicarse con el sistema de agua para obtener una copia traducida de la notificación o para solicitar asistencia. Si desea obtener una copia traducida de los materiales de notificación pública o solicitar asistencia, comuníquese con nosotros al 800-549-3802 oa través de info@middlesexwater.com

**CHINESE (Simplified):**

Middlesex Water Company 的全氟辛酸 (PFOA) 水平
高于饮用水标准且未满足所有公示要求

我们的供水系统最近违反了新泽西州的饮用水标准，作为我们的客户，您有权知道发生了什么、您应该做什么以及我们正在采取哪些措施来纠正这种情况。全氟辛酸 (PFOA) 饮用水标准超标，

此外。 Middlesex Water Company 未能以所有必需的语言提供关于通知重要性的初始公开通知，以及服务人员如何联系供水系统以获取通知的翻译副本或请求帮助。如果您希望获得公开通知材料的翻译副本或请求帮助，请致电 800-549-3802 或通过 info@middlesexwater.com 与我们联系

Middlesex Water Company de quánfúxīnsuān (PFOA) shuǐpíng
gāo yú yǐnyòng shuǐ biāozhǔn qiě wèi mǎnzú suǒyǒu gōngshì yāoqiú

wǒmen de gōngshuǐ xìtǒng zuìjìn wéifǎnle xīnzéxī zhōu de yǐnyòng shuǐ biāozhǔn, zuòwéi wǒmen de kèhù, nín yǒu quán zhīdào fāshēngle shénme, nín yīnggāi zuò shénme yǐjí wǒmen zhèngzài cǎiqǔ nǎxiē cuòshī lái jiūzhèng zhè zhǒng qíngkuàng. Quánfúxīnsuān (PFOA) yǐnyòng shuǐ biāozhǔn chāobiāo,

cǐwài. Middlesex Water Company wèi néng yǐ suǒyǒu bìxū de yǔyán tígōng guānyú tōngzhī zhòngyào xìng de chūshǐ gōngkāi tōngzhī, yǐjí fúwù rényuán rúhé liánxì gōngshuǐ xìtǒng yǐ huòqǔ tōngzhī de fānyì fùběn huò qǐngqiú bāngzhù. Rúguǒ nín xīwàng huòdé gōngkāi tōngzhī cáiliào de fānyì fùběn huò qǐngqiú bāngzhù, qǐng zhìdiàn 800-549-3802 huò tōngguò info@middlesexwater.Com yǔ wǒmen liánxì

**HINDI:**

midalaseks vaatar kampanee mein peraphluoorooktenoik esid (peeephoe) ka star hai
peyajal maanakon se oopar aur sabhee saarvajanik adhisoochana aavashyakataon ko poora karane mein viphal
hamaaree jal pranaalee ne haal hee mein nyoo jarsee ke peene ke paanee ke maanak ka ullanghan kiya hai, aur hamaare graahakon ke roop mein, aapako yah jaanane ka adhikaar hai ki kya hua, aapako kya karana chaahie aur is sthiti ko theek karane ke lie ham kya kar rahe hain. pairfluoroochtanoich esid (pfo) ke lie ek peyajal maanak ko paar kar gaya tha,

isake atirikt. midilaseks vaatar kampanee notis ke mahatv ke baare mein sabhee aavashyak bhaashaon mein praarambhik saarvajanik adhisoochana pradaan karane mein viphal rahee aur notis kee anuvaadit prati praapt karane ya sahaayata ka anurodh karane ke lie seva karane vaale vyakti jal pranaalee se kaise sampark kar sakate hain. yadi aap saarvajanik adhisoochana saamagree kee anuvaadit prati praapt karana chaahate hain ya sahaayata ka anurodh karana chaahate hain to krpaya hamase 800-549-3802 par ya info@middlesexwater.com ke maadhyam se sampark karen.

मिडलसेक्स वाटर कंपनी में पेरफ्लुओरूक्टेनोइक एसिड (पीएफओओ) का स्तर है
पेयजल मानकों से ऊपर और सभी सार्वजनिक अधिसूचना आवश्यकताओं को पूरा करने में विफल
हमारी जल प्रणाली ने हाल ही में न्यू जर्सी के पीने के पानी के मानक का उल्लंघन किया है, और हमारे ग्राहकों के रूप में, आपको यह जानने का अधिकार है कि क्या हुआ, आपको क्या करना चाहिए और इस स्थिति को ठीक करने के लिए हम क्या कर रहे हैं। Perfluorooctanoic एसिड (PFOA) के लिए एक पेयजल मानक को पार कर गया था,
इसके अतिरिक्त। मिडलसेक्स वाटर कंपनी नोटिस के महत्व के बारे में सभी आवश्यक भाषाओं में प्रारंभिक सार्वजनिक अधिसूचना प्रदान करने में विफल रही और नोटिस की अनुवादित प्रति प्राप्त करने या सहायता का अनुरोध करने के लिए सेवा करने वाले व्यक्ति जल प्रणाली से कैसे संपर्क कर सकते हैं। यदि आप सार्वजनिक अधिसूचना सामग्री की अनुवादित प्रति प्राप्त करना चाहते हैं या सहायता का अनुरोध करना चाहते हैं तो कृपया हमसे 800-549-3802 पर या info@middlesexwater.com के माध्यम से संपर्क करें।

**GUJARATI:**

Miḍalasēksa vōṭara kampanī pāsē paraphlu'ōrōkṭēnō'īka ēsiḍa (PFOA) nā starō chē.
Pīvānā pāṇīnā dhōraṇō upara anē tamāma jāhēra sūcanā āvaśyakatā'ōnē pūrṇa karavāmāṁ niṣphala amārī pāṇī praṇālī'ē tājētaramāṁ n'yu jarsīnā pīvānā pāṇīnā dhōraṇanuṁ ullaṅghana karyuṁ chē, anē amārā grāhakō tarīkē, tamanē śuṁ thayuṁ, tamārē śuṁ karavuṁ jō'īē anē ā paristhitinē sudhāravā māṭē amē śuṁ karī rahyā chī'ē tē jāṇavānō tamanē adhikāra chē. Paraphlurō'ōkṭēnō'ika ēsiḍa (PFOA) māṭē pīvānā pāṇīnā dhōraṇanē ōlaṅgavāmāṁ āvyuṁ hatuṁ,

vadhumāṁ. Miḍalasēksa vōṭara kampanī nōṭisanā mahatvanē lagatī tamāma jarūrī bhāṣā(bhāṣā'ō)māṁ prārambhika jāhēra sūcanā pradāna karavāmāṁ niṣphala rahī anē kēvī rītē sēvā āpatī vyakti'ō nōṭisanī bhāṣāntarita nakala mēḷavavā athavā sahāyanī vinantī karavā māṭē vōṭara sisṭamanō samparka karī śakē chē. Jō tamē jāhēra sūcanā sāmagrīnī bhāṣāntarita nakala mēḷavavā māṅgatā hō athavā sahāyanī vinantī karavā māṅgatā hō, tō kr̥pā karīnē amārō 800-549-3802 para athavā info@middlesexwater.com dvārā samparka karō.

મિડલસેક્સ વોટર કંપની પાસે પરફ્લુઓરોક્ટેનોઇક એસિડ (PFOA) ના સ્તરો છે.
પીવાના પાણીના ધોરણો ઉપર અને તમામ જાહેર સૂચના આવશ્યકતાઓને પૂર્ણ કરવામાં નિષ્ફળ

અમારી પાણી પ્રણાલીએ તાજેતરમાં ન્યુ જર્સીના પીવાના પાણીના ધોરણનું ઉલ્લંઘન કર્યું છે, અને અમારા ગ્રાહકો તરીકે, તમને શું થયું, તમારે શું કરવું જોઈએ અને આ પરિસ્થિતિને સુધારવા માટે અમે શું કરી રહ્યા છીએ તે જાણવાનો તમને અધિકાર છે. પરફ્લુરોઓક્ટેનોઇક એસિડ (PFOA) માટે પીવાના પાણીના ધોરણને ઓળંગવામાં આવ્યું હતું,

વધુમાં. મિડલસેક્સ વોટર કંપની નોટિસના મહત્ત્વને લગતી તમામ જરૂરી ભાષા(ભાષાઓ)માં પ્રારંભિક જાહેર સૂચના પ્રદાન કરવામાં નિષ્ફળ રહી અને કેવી રીતે સેવા આપતી વ્યક્તિઓ નોટિસની ભાષાંતરિત નકલ મેળવવા અથવા સહાયની વિનંતી કરવા માટે વોટર સિસ્ટમનો સંપર્ક કરી શકે છે. જો તમે જાહેર સૂચના સામગ્રીની ભાષાંતરિત નકલ મેળવવા માંગતા હો અથવા સહાયની વિનંતી કરવા માંગતા હો, તો ફૂપા કરીને અમારો 800-549-3802 પર અથવા info@middlesexwater.com દ્વારા સંપર્ક કરો.

**KOREAN:**

Middlesex Water Company 에는 과불화옥탄산(PFOA) 수치가 있습니다.
음용수 기준을 초과하고 모든 공시 요건을 충족하지 못함

우리의 상수도 시스템은 최근 뉴저지 식수 기준을 위반했으며, 우리의 고객으로서 당신은 무슨 일이
일어났는지, 무엇을 해야 하는지, 우리가 이 상황을 바로잡기 위해 무엇을 하고 있는지 알 권리가 있습니다.
과불화옥탄산(PFOA)에 대한 음용수 기준을 초과했습니다.

추가적으로. Middlesex Water Company 는 통지의 중요성과 서비스를 받는 사람이 통지의 번역본을 얻거나
지원을 요청하기 위해 수도 시스템에 연락하는 방법에 대해 모든 필수 언어로 최초 공개 통지를 제공하지
못했습니다. 공고 자료의 번역본을 구하거나 도움을 요청하려면 800-549-3802 또는
info@middlesexwater.com 을 통해 저희에게 연락하십시오.

Middlesex Water Companyeneun gwabulhwaogtansan(PFOA) suchiga issseubnida.
eum-yongsu gijun-eul chogwahago modeun gongsi yogeon-eul chungjoghaji mosham

uliui sangsudo siseutem-eun choegeun nyujeoji sigsu gijun-eul wibanhaess-eumyeo, uliui gogaeg-euloseo
dangsin-eun museun il-i il-eonassneunji, mueos-eul haeya haneunji, uliga i sanghwang-eul balojabgi wihae
mueos-eul hago issneunji al gwonliga issseubnida. gwabulhwaogtansan(PFOA)e daehan eum-yongsu
gijun-eul chogwahaessseubnida.

chugajeog-eulo. Middlesex Water Companyneun tongjiui jung-yoseong-gwa seobiseuleul badneun salam-i
tongjiui beon-yeogbon-eul eodgeona jiwon-eul yocheonghagi wihae sudo siseutem-e yeonlaghaneun
bangbeob-e daehae modeun pilsu eon-eolo choecho gong-gae tongjileul jegonghaji moshaessseubnida.
gong-go jalyoui beon-yeogbon-eul guhageona doum-eul yocheonghalyeomyeon 800-549-3802 ttoneun
info@middlesexwater.com-eul tonghae jeohuiege yeonlaghasibsio.

**FILIPINO:**

Ang Middlesex Water Company ay May Mga Antas ng Perfluorooctanoic Acid (PFOA)
Higit sa Mga Pamantayan ng Tubig na Iniinom at Nabigong Matugunan ang Lahat ng Mga Kinakailangan sa
Pampublikong Abiso

Ang aming sistema ng tubig ay lumabag kamakailan sa pamantayan ng tubig na inumin sa New Jersey, at
bilang aming mga customer, may karapatan kang malaman kung ano ang nangyari, kung ano ang dapat
mong gawin, at kung ano ang ginagawa namin upang itama ang sitwasyong ito. Nalampasan ang
pamantayan ng inuming tubig para sa Perfluorooctanoic acid (PFOA),

Bukod pa rito. Nabigo ang Middlesex Water Company na magbigay ng paunang pampublikong abiso sa
lahat ng kinakailangang (mga) wika tungkol sa kahalagahan ng paunawa at kung paano maaaring makipag-
ugnayan ang mga taong pinaglilingkuran sa sistema ng tubig upang makakuha ng isinaling kopya ng
paunawa o para humiling ng tulong. Kung nais mong makakuha ng isinalin na kopya ng mga pampublikong
materyales sa abiso o humiling ng tulong mangyaring makipag-ugnayan sa amin sa 800-549-3802 o sa
pamamagitan ng info@middlesexwater.com

**PUNJABI:**

Miḍalasaikasa vāṭara kapanī kōla paraphalū'ōrōkaṭānō'ika aisiḍa (PFOA) dē padhara hana
pīṇa vālē pāṇī dē mi'ārāṁ tōṁ upara hai atē sārī'āṁ janataka sūcanā lōṛāṁ nū pūrā karana vica asaphala
rihā hai

sāḍē vāṭara sisaṭama nē hāla hī vica ni'ū jarasī dē pīṇa vālē pāṇī dē mi'āra dī ulaghaṇā kītī hai, atē sāḍē
gāhaka hōṇa dē nātē, tuhānū iha jāṇana dā haka hai ki kī hō'i'ā, tuhānū kī karanā cāhīdā hai, atē asīṁ isa
sathitī nū ṭhīka karana la'ī kī kara rahē hāṁ. Perfluorooctanoic acid (PFOA) la'ī pīṇa vālē pāṇī dē mi'āra nū
pāra kītā gi'ā sī,

isa tõm ilɛ MID-L-006306-21   04/25/2022 4:47:30 PM Pg 36 of 37   Trans ID: LCV20221674519
(bhāṣāvāṁ) vica śurū'ātī janataka sūcanā pradāna karana vica asaphala rahī atē kivēṁ sēvā kītē ga'ē
vi'akatī nōṭisa dī anuvādita kāpī prāpata karana jāṁ sahā'itā dī bēnatī karana la'ī jala praṇālī nāla saparaka
kara sakadē hana. Jēkara tusīṁ janataka sūcanā samagarī dī anuvādita kāpī prāpata karanī cāhudē hō
jāṁ sahā'itā la'ī bēnatī karanī cāhudē hō tāṁ kirapā karakē sāḍē nāla 800-549-3802'tē jāṁ
info@middlesexwater.Com rāhīṁ saparaka karō.

ਮਿਡਲਸੈਕਸ ਵਾਟਰ ਕੰਪਨੀ ਕੋਲ ਪਰਫਲੂਓਰੋਕਟਾਨੋਇਕ ਐਸਿਡ (PFOA) ਦੇ ਪੱਧਰ ਹਨ
ਪੀਣ ਵਾਲੇ ਪਾਣੀ ਦੇ ਮਿਆਰਾਂ ਤੋਂ ਉੱਪਰ ਹੈ ਅਤੇ ਸਾਰੀਆਂ ਜਨਤਕ ਸੂਚਨਾ ਲੋੜਾਂ ਨੂੰ ਪੂਰਾ ਕਰਨ ਵਿੱਚ ਅਸਫਲ ਰਿਹਾ ਹੈ

ਸਾਡੇ ਵਾਟਰ ਸਿਸਟਮ ਨੇ ਹਾਲ ਹੀ ਵਿੱਚ ਨਿਯੂ ਜਰਸੀ ਦੇ ਪੀਣ ਵਾਲੇ ਪਾਣੀ ਦੇ ਮਿਆਰ ਦੀ ਉਲੰਘਣਾ ਕੀਤੀ ਹੈ, ਅਤੇ ਸਾਡੇ ਗਾਹਕ ਹੋਣ ਦੇ ਨਾਤੇ,
ਤੁਹਾਨੂੰ ਇਹ ਜਾਨਣ ਦਾ ਹੱਕ ਹੈ ਕਿ ਕੀ ਹੋਇਆ, ਤੁਹਾਨੂੰ ਕੀ ਕਰਨਾ ਚਾਹੀਦਾ ਹੈ, ਅਤੇ ਅਸੀਂ ਇਸ ਸਥਿਤੀ ਨੂੰ ਠੀਕ ਕਰਨ ਲਈ ਕੀ ਕਰ ਰਹੇ ਹਾਂ।
Perfluorooctanoic acid (PFOA) ਲਈ ਪੀਣ ਵਾਲੇ ਪਾਣੀ ਦੇ ਮਿਆਰ ਨੂੰ ਪਾਰ ਕੀਤਾ ਗਿਆ ਸੀ,

ਇਸ ਤੋਂ ਇਲਾਵਾ। ਮਿਡਲਸੈਕਸ ਵਾਟਰ ਕੰਪਨੀ ਨੋਟਿਸ ਦੀ ਮਹੱਤਤਾ ਬਾਰੇ ਸਾਰੀਆਂ ਲੋੜੀਂਦੀਆਂ ਭਾਸ਼ਾਵਾਂ (ਭਾਸ਼ਾਵਾਂ) ਵਿੱਚ ਸ਼ੁਰੂਆਤੀ ਜਨਤਕ
ਸੂਚਨਾ ਪ੍ਰਦਾਨ ਕਰਨ ਵਿੱਚ ਅਸਫਲ ਰਹੀ ਅਤੇ ਕਿਵੇਂ ਸੇਵਾ ਕੀਤੇ ਗਏ ਵਿਅਕਤੀ ਨੋਟਿਸ ਦੀ ਅਨੁਵਾਦਿਤ ਕਾਪੀ ਪ੍ਰਾਪਤ ਕਰਨ ਜਾਂ ਸਹਾਇਤਾ ਦੀ
ਬੇਨਤੀ ਕਰਨ ਲਈ ਜਲ ਪ੍ਰਣਾਲੀ ਨਾਲ ਸੰਪਰਕ ਕਰ ਸਕਦੇ ਹਨ। ਜੇਕਰ ਤੁਸੀਂ ਜਨਤਕ ਸੂਚਨਾ ਸਮੱਗਰੀ ਦੀ ਅਨੁਵਾਦਿਤ ਕਾਪੀ ਪ੍ਰਾਪਤ ਕਰਨਾ
ਚਾਹੁੰਦੇ ਹੋ ਜਾਂ ਸਹਾਇਤਾ ਲਈ ਬੇਨਤੀ ਕਰਨਾ ਚਾਹੁੰਦੇ ਹੋ ਤਾਂ ਕਿਰਪਾ ਕਰਕੇ ਸਾਡੇ ਨਾਲ 800-549-3802 'ਤੇ ਜਾਂ
info@middlesexwater.com ਰਾਹੀਂ ਸੰਪਰਕ ਕਰੋ।

We routinely monitor for the presence of federal and state regulated drinking water contaminants. New
Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and required
monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual
average (RAA), in which the four most recent quarters of monitoring data are averaged. On September 7,
2021, we received notice that the sample collected on August 2, 2021, showed that our system exceeds the
PFOA MCL. PFOA was detected at 36.1 ppt, which caused the RAA to exceed the MCL regardless of the
following quarterly results.

## What is PFOA?
Perfluorooctanoic acid (PFOA) is a member of the group of chemicals called per- and polyfluoroalkyl
substances (PFAS), used as a processing aid in the manufacture of fluoropolymers used in non-stick
cookware and other products, as well as other commercial and industrial uses, based on its resistance to
harsh chemicals and high temperatures. PFOA has also been used in aqueous film-forming foams for
firefighting and training, and it is found in consumer products such as stain-resistant coatings for upholstery
and carpets, water-resistant outdoor clothing, and greaseproof food packaging. Major sources of PFOA in
drinking water include discharge from industrial facilities where it was made or used and the release of
aqueous film-forming foam. Although the use of PFOA has decreased substantially, contamination is
expected to continue indefinitely because it is extremely persistent in the environment and is soluble and
mobile in water.

## What does this mean?
*People who drink water containing PFOA in excess of the MCL over time could experience problems with
their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system.
Drinking water containing PFOA in excess of the MCL over time may also increase the risk of testicular and
kidney cancer. For females, drinking water containing PFOA in excess of the MCL over time may cause
developmental delays in a fetus and/or an infant. Some of these developmental effects may persist through
childhood.*

* For specific health information, see
https://www.nj.gov/health/ceohs/documents/pfas_drinking%20water.pdf.

## What should I do?
- If you have specific health concerns, a severely compromised immune system, have an infant, are
  pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from
  your health care providers about drinking this water.
- The New Jersey Department of Health advises that infant formula and other beverages for infants, such
  as juice, should be prepared with bottled water when PFOA is elevated in drinking water.

MID-L-006306-21    04/25/2022 4:47:30 PM    Pg 37 of 37    Trans ID: LCV20221674519

- Pregn... for drinking and cooking to reduce exposure to PFOA.
- Other people may also choose to use bottled water for drinking and cooking to reduce exposure to PFOA or a home water filter that is certified to reduce levels of PFOA. Home water treatment devices are available that can reduce levels of PFOA. For more specific information regarding the effectiveness of home water filters for reducing PFOA, visit the National Sanitation Foundation (NSF) International website, http://www.nsf.org/.
- Boiling your water will not remove PFOA.

For more information, see https://www.nj.gov/dep/watersupply/pfas/

## What is being done?

Middlesex Water Company has been monitoring the levels of PFAS compounds for a number of years. We have been reporting on PFOA detection in our Annual Consumer Confidence Report sent to you since 2008. In anticipation of New Jersey regulatory standards being enacted, we began evaluating treatment options in 2019. Design of a new treatment plant which, will remove additional compounds, including PFOA, was completed and is under construction. The new treatment plant is expected to be in service in mid-2023.Middlesex Water Company (MWC) provided initial notification to customers that were originally identified as being likely served drinking water from the treatment plant that exceeded the PFOA MCL. Based on continuous analysis and updates to the inputs and assumptions of hydraulic models, we have concluded that additional areas receive or may receive some portion of the water supply exceeding the PFOA MCL. Our distribution system is an integrated network where different source waters move in different areas of the distribution network throughout any day, depending on overall customer demands and uses. This comprehensive expansion of the notification area assures that all customers who are or may be served with any amount of this supply, at any time, are receiving a public notice.

With regard to the failure to meet all Public Notification (PN) requirements, Middlesex Water Company will ensure all templates include information in the required languages, we will update our applicable operating procedures and periodically evaluate our communication protocols for compliance in order to stay current with the Public Notification requirements.

The initial list of impacted communities included all MWC customers in South Plainfield and Clark, a portion of MWC customers in Edison, Metuchen, and Woodbridge, and all of Rahway, a MWC wholesale contract customer. The revised public notification now includes all MWC customers in South Plainfield, Clark, Edison, Metuchen, Woodbridge and Carteret which had previously not initially been included. In addition, we are providing additional information in prominent languages spoken within our service area. For more information, please contact our Customer Service Department at 800-549-3802.

*Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can do this by posting this notice in a public place or distributing copies by hand or mail.* This notice is being sent to you by Middlesex Water Company. State Water System ID#1225001

Date distributed: November 2, 2021 (expanded notification)
Date initial PN distributed: October 22, 2021 (initial notification)

EXHIBIT C

Hon. Michael A. Toto, A.J.S.C.
Middlesex County Superior Court
56 Paterson Street
PO Box 964
New Brunswick, NJ 08903-0964
(732) 645-4300

<div style="border:1px solid black">

**FILED**
**APRIL 21, 2022**
**HON. MICHAEL A. TOTO, A.J.S.C.**

</div>

| | |
|---|---|
| TOMAS VERA, JOEL VELEZ, MARGARET KENNEDY, DONNA ZIELINSKI, MICHAEL ZIELINSKI, MARCO L. NEAD, and RENEE WILLIAMS, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-L-6306-21<br><br>*Civil Action* |
| Plaintiffs, | *ORDER AND MEMORANDUM OF LAW* |
| vs. | |
| MIDDLESEX WATER COMPANY, | |
| Defendant, | |

**THIS MATTER** having been brought before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, pursuant to R. 4:6-2 for failure to state a claim and/or failure to join an indispensable party, and the Court having duly considered the moving papers submitted in support thereof, and the opposition filed by Plaintiffs, and the oral argument by counsel on April 14, 2022, and for other good cause shown;

**IT IS ON THIS 21ST DAY OF APRIL 2022, ORDERED AS FOLLOWS:**

1. **ORDERED** that Defendant's Motion to Dismiss is **GRANTEED** as to Count Three which is hereby dismissed for the reasons stated in the accompanying memorandum; and it is further

1

2. **ORDERED** that Defendant's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE** as to Count Two, allowing Plaintiffs leave to amend their complaint within thirty (30) days of the date herein as to whether Plaintiffs consumed the unfiltered water provided to them; and it is further

3. **ORDERED** that Defendant's Motion to Dismiss is **DENIED** as to Counts One, Four, and Five; and it is further

4. **ORDERED** that Defendant's Motion to Dismiss for failure to join an indispensable party is **DENIED WITHOUT PREJUDICE**; and it is further

5. **ORDERED** that service of this Order shall be deemed effectuated on all parties upon its upload to eCourts. Pursuant to <u>Rule</u> 1:5-1(a), movant shall serve a copy of this Order on all parties not served electronically within seven days of the date of this Order.

**Hon. Michael A. Toto, A.J.S.C.**

2

Vera et al. v. Middlesex Water Company,
MID-L-6306-21

<u>**MEMORANDUM**</u>

**FACTS AND PROCEDURAL HISTORY**

  This is a class action lawsuit filed on behalf of a class of New Jersey Citizens who receive their water from Defendant Middlesex Water Company. On October 22 and November 8, 2021, Defendant sent two notices to its customers advising them that their water has levels of Perfluorooctanoic Acid (PFOA) above drinking water standards.

  Perfluoroalkyl substances (PFAS) are a group of man-made chemicals that include Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA). PFOA, which is the chemical at issue in this matter, resists heat, oil, stains, grease, and water, and can remain in the human body for long periods of time. Although the CDC claims the human health effects from exposure to PFOA are unknown, the EPA reports that exposure over certain levels may result in adverse health effects such as developmental effects to fetuses or breastfed infants, cancer, liver effects, immune effects, thyroid effects, and other effects such as cholesterol changes. In May 2016, the EPA issued a notice that set the lifetime health advisory for PFOA at 0.07 µg/L, or 70 parts per trillion. This health advisory is not a regulation. In 2020, the New Jersey Department of Environmental Protection ("DEP") adopted a maximum contaminant level ("MCL") for PFOA in drinking water at 0.014 µg/L, or 14 parts per trillion, with monitoring for such beginning in the first quarter of 2021. <u>N.J.A.C.</u> 7:10-5.2 (a) (5) (ii).

  Both notices that Defendant sent to its customers on October 22 and November 8, 2021, admitted that the MCL for PFOA in New Jersey is 14 parts per trillion (ppt), and that a sample of Defendant's system collected on August 2, 2021 found PFOA at 36.1 ppt. The notices explained that "[p]eople who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system." Pff. Attachments A, B. The noticed further explained that drinking water containing PFOA in excess of the MCL over time could also increase the risk of testicular and kidney cancer, and for females, could cause developmental delays in a fetus or infant which may persist through childhood. <u>Id.</u> Defendant advised that if customers had "specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, [they] may be at higher risk than other individuals and should seek advice from [their] health care providers about drinking this water." <u>Id.</u> Further, Defendant recommended installing a home water filter to reduce levels of PFOA in the tap water or use bottled water for drinking, cooking, or preparing beverages for infants. <u>Id.</u>

  Defendant is currently constructing a new plant that will allow them to bring the PFOA levels into compliance permanently, but that new plant will not be complete until mid-2023.

Defendant specified that their water for the affected areas came from three sources, only one of which is contaminated with an above-MCL level of PFOA. These three sources include the Park Avenue Plant, which accounts for 25% of the water and has above-MCL levels of PFOA; a surface water plant that accounts for 70% of the water and has single-digit ppt PFOA levels below the MCL; and the remainder of the water is provided by New Jersey American Water, also with single-digit ppt PFOA levels below the MCL.

On November 9, 2021 Defendant shut down the Park Avenue Wellfield, which was the source of the PFOA contamination. On December 22, 2021, this Court signed an Order in which the parties stipulated that Defendant does not intend to activate or operate the Park Avenue wellfields before the completion of the remediation efforts unless (1) the New Jersey Department of Environment Protection (NJDEP) requires Defendant to operate the wellfield, or (2) Defendant in its sole judgment determines that activation of the Park Avenue wellfields is "necessary for public health, adequacy of supply, or any other reason determined by Middlesex that necessitates doing so for it to provide safe and reliable drinking water service in accordance with applicable New Jersey and federal law."

In the background of this matter is Defendant's own suit against 3M Company in the U.S. District Court for the District of New Jersey. In that suit, Defendant alleges 3M Company is the polluter who put PFOA in the ground water supply. There, Defendant is seeking to recoup from 3M wellfield remediation costs for the construction of their new plant.

Plaintiffs filed suit against Defendant on October 29, 2021, and amended their complaint on November 18, 2021. There initially was a motion for an Order to Show Cause with temporary restraints and injunctive relief filed November 18, 2021. On the same date, Plaintiffs also filed their motion to certify class. The consent order filed on December 22, 2021 settled the motion for temporary restraints and adjourned the motion to certify class.

Count One of Plaintiff's complaint claims that under the principles of general equity, Defendant is required to reimburse Plaintiffs and relevant class members for costs incurred from the two written notices. Count Two seeks injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiffs for all out-of-pocket costs because of the notices. Count Two also seeks injunctive and equitable relief in an order establishing a court supervised and medically appropriate program of medical monitoring and testing at Defendant's expense. Further, Count Two seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide notice of the dangers to Middlesex Water Company customers. Count Three seeks to equitably estop Defendant from denying the accuracy of the statements made in the two notices. Count Four is a negligence claim that Defendant breached a duty owed to Plaintiffs. Finally, Count Five claims Defendant was unjustly enriched by not paying the costs of medical evaluation, medical advice, bottled water, and water filters for their affected customers.

On February 14, 2022, this Court signed and filed a consent order setting a briefing schedule for Defendant's incoming motion to dismiss, which would be returnable April 14, 2022. Defendant filed their motion to dismiss on February 17, 2022. Plaintiffs submitted an opposition on March 17, 2022, and Defendant submitted their reply on April 11, 2022.

## DEFENDANT/MOVANT'S REQUESTED RELIEF

Defendants primarily argue that Plaintiffs' complaint should be dismissed in its entirety for failure to name an indispensable party, as provided by R. 4:28-1. In the alternative, Defendants argue that this Court should individually dismiss Counts one, two, three, four, and five of Plaintiff's complaint.

## DEFENDANT'S ARGUMENT

As to the entirety of Plaintiffs' complaint, Defendant argue this Court should grant its motion to dismiss because Plaintiffs failed to name 3M Company as a necessary and indispensable party under R. 4:28-1. Defendant claims that 3M Company is the party responsible for the PFOA contamination of Defendant's wellfield, and thus must be a party to the action if the judgment is to accurately determine the rights of all parties before the Court. If the Court finds that dismissal is not warranted, Defendant ask that the Court orders Plaintiffs to amend the Complaint to include 3M as a defendant. Defendant claims that doing such would allow the Court to apportion liability and responsibility for any potential damages.

Defendant argues that Count One should be dismissed because even though Plaintiffs allege Count one in general equity, money damages are a perfectly adequate remedy available the Plaintiffs. Further, Defendant argues that Count one of duplicative of Plaintiff's claim of negligence in Count Four and injunctive relief in Count Two.

Defendant claims that Count Two, in which Plaintiffs ask for injunctive relief and medical monitoring, should be dismissed because medical monitoring is not an independent cause of action. Defendant again alleges that Count Two is duplicative of Counts One and Four.

As to Count Three, Defendant argues that Plaintiffs fail to make out a claim of equitable estoppel. Defendant also posits that Plaintiffs' request to enjoin any evidence surrounding the two notices would be more appropriate as a motion *in limine* or as requests for admissions.

Defendant argues that Count Four of Plaintiffs' complaint for negligence is "bare-bones" and "not adequately pled." Defendant claims that Plaintiffs fail to establish any breach of a duty, as well as any action or inaction on part of Defendant that caused Plaintiff's injuries. Further, Defendant alleges that Plaintiffs fail to explain how Plaintiffs' injuries were a foreseeable result of Defendant's actions where Defendant did not cause the PFOA water contamination.

Regarding Count Five, Defendant claims that Plaintiff's allegation of unjust enrichment is not sustainable because Plaintiffs never conveyed any benefit to Defendant and Defendant was not enriched by any expenditures. Further, Defendant points to case law for the proposition that New Jersey does not recognize unjust enrichment as an independent tort cause of action.

## PLAINTIFFS' ARGUMENT

In opposition to Defendant's motion to dismiss, Plaintiffs argue that overall, Defendant fails to acknowledge the "generous and hospitable" approach that Court take when deciding a motion under R. 4:6-2(e). Plaintiffs claim that Defendant's motion does not meet its burden of showing that no cause of action can be gleaned from the first amended complaint. Plaintiffs further allege that Defendant's "mandatory joinder" argument is without merit because the action concerns only the seller/buyer consumer relationship between Defendant and its customers. Plaintiffs point out that each of their claims against Defendant are specific to that seller/buyer relationship and would not lie against 3M, with whom Plaintiffs are not in privity. Plaintiffs further posit that even if 3M was jointly and severally liable to Plaintiffs, joinder in this suit would be merely permissive instead of mandatory. Plaintiffs also emphasize that Defendant provides no evidence that 3M caused the PFOA contamination, so Plaintiffs would lack sufficient evidential support for form a good faith basis for any claim against 3M. Finally, Plaintiffs point out that under R. 4:8-1, Defendant has the option to join 3M as a third-party defendant.

Plaintiffs claim that all of Defendant's arguments as to Counts One, Two, Three, Four, and Five are without merit. As to Count One, Plaintiffs argue that just because relief is monetary does not mean that I cannot be equitable relief. Further, Plaintiffs claim that New Jersey Court Rules expressly allow a plaintiff to plead alternative and overlapping legal and equitable claims, so counts should not be dismissed for being duplicative.

As to Count Two, Plaintiffs posit that a claim for restitution can be equitable relief. Plaintiffs also allege that its claim for medical monitoring will lie on the facts pleaded in the complaint, as evidenced by the very language of Defendant's own notices.

Plaintiffs argue that Count Three regarding equitable estoppel should not be dismissed because it properly asks for only declaratory judgment preventing Defendant from denying the accuracy of the statements made in their two form notices. If Defendant stipulates that all the information contained in the notices are true and accurate, then Plaintiffs will voluntarily dismiss Count Three.

As to Count Four, Plaintiffs claim that the first amended complaint pleads a perfectly viable negligence claim explaining all four facets of negligence. Plaintiffs allege that Defendant's proximate cause and foreseeability arguments are without merit because both determinations

necessitate issues of law and fact, which cannot be determined at this pre-discovery stage of litigation.

For Count Five, Plaintiffs argue they properly pled that Defendant received a benefit and the retention of that benefit without payment would be unjust.

## DEFENDANT'S REPLY

In its reply, Defendant reiterates that the entire complaint must be dismissed for Plaintiff's failure to join 3M as an indispensable party.

Defendant further argues that even though Plaintiffs claim Count One seeks injunctive relief, Count One does not actually seek injunctive relief, but instead seeks only monetary damages. Defendants reiterate the same argument as to Count Two. Further, Defendant claims that medical monitoring as requested in Count Two is not an independent cause of action and is not necessitated by a plain reading of the Complaint. The request for further notice as to the No-Notice Class, Defendant claims, is both overbroad and moot.

As to Count Three, Defendant argues the Complaint fails to plead a cause of action. Contrary to Plaintiffs' argument in opposition, Defendant asserts that the Complaint never mentions a request for declaratory judgment.

Defendant claims that the negligent claim in Count Four is deficient because plaintiffs merely list the four elements of negligence without providing any information specific to Defendant.

Finally, as to Count Five, Defendant claims that mitigating their own damages does not translate to unjust enrichment.

## ANALYSIS

New Jersey Court Rule 4:6-2 describes certain situations under which a party may move to dismiss a complaint or a portion of a complaint. Plaintiff first argues that Plaintiff's entire complaint should be dismissed under Rule 4:6-2(f) for "failure to join a party without whom the action cannot proceed." R. 4:6-2(f). The remainder of Defendant's motion to dismiss falls under Rule 4:6-2(e), which permits a party to move to dismiss a claim for "failure to state a claim upon which relief can be granted." R. 4:6-2(e). This Court first addresses Defendant's single claim under subsection (f) and then go on to analyze Defendant's five claims under subsection (e).

## 1. <u>Dismissal for Failure to Join a Necessary Party</u>

The New Jersey Court Rules on joinder of parties provides that "[a] person who is subject to service of process shall be joined as a party to the action if [ ] in the person's absence complete relief cannot be accorded among those already parties." <u>R.</u> 4:28-1(a). Thus the primary question here is whether 3M Company is an indispensable party necessitating dismissal of the complaint in its entirety.

Defendant is currently suing 3M in the U.S. District Court for the District of New Jersey, alleging that 3M is responsible for the contamination of Defendant's wellfield. Defendant claims that 3M would ultimately be responsible for the contamination, and therefore may be liable to Plaintiffs. Defendant cites a class action also filed in the District Court suing both 3M and Middlesex Water Company, in which the plaintiffs alleged the same facts as alleged by Plaintiffs here. Def. Ex. D. Thus, Defendant argues, Plaintiffs here should have done the same. Defendant argues that if the Court does not find that dismissal is warranted on this basis, then the Court should order Plaintiff to amend the complaint to include 3M as a defendant. Defendant claims this will serve the interests of justice and allow the Court to apportion responsibility accordingly.

Plaintiffs argue that even though 3M may have caused the PFOA contamination, 3M is not an indispensable party because this suit only concerns the buyer/seller relationship between Defendant and Plaintiffs. As Plaintiffs emphasize, the complaint alleges that Defendant breached a non-delegable legal and equitable duty to Plaintiffs, that Defendant was deficient in its notice of Plaintiffs, that Defendant cannot continue to sell drinking water to Plaintiffs in violation of the state PFOA limits, and that Defendant is responsible to take steps to assure that the drinking water sold to Plaintiffs meets New Jersey Standards. Plaintiffs assert that none of these claims would lie against 3M. Plaintiffs argue that New Jersey Court Rules would prohibit Plaintiffs from bringing a direct claim against 3M, because Plaintiffs have no evidence that 3M is the party responsible for the PFOA contamination.

Plaintiffs further argue that if Defendant believes that 3M would be required to indemnify them on these claims, then Defendant has the right to file a third-party claim against 3M for indemnification or contribution. Plaintiffs claim that if 3M is jointly and severally liable to Plaintiffs along with Defendant, joinder of 3M would be permissive, not mandatory.

Whether a party is indispensable is a "fact sensitive" analysis," <u>IBEW Local 400 v. Borough of Tinton Falls</u>, 468 N.J. Super. 214, 225 (App. Div. 2021), that depends on the "the nature and character of the claim." Neil v. Klein, 141 N.J. Super. 394, 406 (App. Div. 1976). Generally, "a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest." <u>Toll Bros., Inc. v. Township of West Windsor</u>, 334 N.J. Super. 77, 90-91 (App. Div. 2000) (quoting <u>Allen B. DuMont Labs., Inc.</u>

8

v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959)). In cases where a party is indispensable, "the absent party had an existing interest in the very subject matter which would have been directly affected by the judgment." Allen B. DuMont Labs., 30 N.J. at 299.

The question remains of whether it is settled that 3M is responsible for the PFOA contamination. While Defendant's federal suit against 3M is still pending, the New Jersey Department of Environmental Protection ("DEP") stated in a March 2019 statewide PFAS Directive that it believes 3M, among other companies, to be responsible for discharging PFOA and PFOS. However, the directive does state that it believes 3M to be the "dominant global producer of PFOA" and that 3M manufactured "approximately 85 percent or more of total worldwide volumes of PFOA."[1] According to Defendant, the New Jersey Attorney general filed two actions against 3M on behalf of the DEP regarding the PFOA contamination in Pennsville and Parlin, New Jersey.

However, it is not settled that 3M is responsible to Defendant for the contamination of this specific wellfield, and therefore the contaminated water sold to Plaintiffs. For that reason, it is not possible to say at this time whether 3M is "inevitably" involved in the litigation, or that the litigation "necessarily" affects 3M's interest. Further, Plaintiff's claims do focus primarily on the buyer/seller relationship between Defendant and Plaintiffs. At some point in the future, it may become settled that 3M is solely responsible for the contamination of this wellfield, and at that time 3M might become an indispensable party. However, at this time, the Court does not find that 3M is an indispensable party or that dismissal of the entire complaint is required as a result.

### 2. **Dismissal for Failure to State a Claim**

Pursuant to Rule 4:6-2(e), a court must dismiss a plaintiff's complaint "if it has failed to articulate a legal basis entitling plaintiff to relief. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). In analyzing a motion to dismiss on these grounds, the trial court must "consider[ ] and accept[ ] as true the facts alleged in the complaint." Id. (citing Donato v. Moldow, 374 N.J. Super. 483 (App. Div. 2001)). Trial courts should "approach with great caution applications for dismissal under Rule 4:6-2(e)," which should be granted only in "the rarest of instances." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 772 (1989). If the complaint must be dismissed after such an examination, "then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint." Id. Nonetheless, a reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Id. at 746 (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957).

---

[1] https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf

9

### a. Count One

Count One of Plaintiff's Complaint asserts that because Defendant "intended that Plaintiffs and the class would rely upon the truth and accuracy of the statements made by Defendant in the Notices," that Defendant is required under the principles of general equity to reimburse Plaintiffs for costs incurred from following the advice in the notices. Defendant argues that this Count seeks money damages, not injunctive relief. Further, Defendant argues that a right of implied indemnity cannot be created here because money damages provide a perfectly adequate remedy to Plaintiffs. Defendant also claims that Count One should be dismissed because it is duplicative of Plaintiffs' claims in Count Two and Count Four.

In the complaint, Plaintiffs state that "under the principles of general equity," they are entitled to injunctive relief, and rely solely on the wording of Defendant's two notices for such a proposition. However, while Plaintiff does not explicitly lay out a cause of action, it is possible to glean one from their statements. Id. at 746. Taking all of Plaintiffs' allegations as true and looking at their complaint with liberality, this Court does not find that dismissal of Count One is warranted.

As to duplicity, pursuant to Rule 4:5-6, a party may plead different overlapping or alternative counts. R. 4:5-6. The Rule states, "[a]s many separate claims or defenses as the party has may be stated regardless of their consistency and whether based on legal or on equitable grounds or on both. Thus, the fact that Count One is duplicative of other counts in the complaint is not grounds for dismissal.

### b. Count Two

Count Two states that "Plaintiffs and the classes are in need of injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiffs and the class members." Count Two also seeks an injunctive order "establishing a court supervised and medically appropriate program of medical monitoring and testing" as described in Ayers v. Jackson Twp., 106 N.J. 557 (1987). Finally, as to the No-Notice Class, Plaintiffs seek an order for injunctive relief requiring Defendant to conduct a program "designed to provide all persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in" the two notices.

Defendants again argue there is no cause of action stated in Count Two. Defendants also argued in oral argument that Plaintiffs are not clear about how a medical monitoring program would be necessary because their allegations do not allege Plaintiffs ever drank the unfiltered water provided to the by Defendant. Plaintiffs stated that they could amend their complaint to state such. Accordingly, the Court gives leave to Plaintiff to amend their complaint as to whether Plaintiffs consumed the unfiltered water during the period of time in which the PFOA levels were above the MCL.

10

### c.  Count Three

In Count Three, Plaintiffs make an equitable estoppel claim that Defendant should be estopped from denying the truth and accuracy of the statements they made in the two Notices. In making this claim, Plaintiffs allege that Defendant was fully aware that the notices would cause Plaintiffs to incur costs, and that Defendant sought to benefit itself by avoiding, eliminating, or minimizing Defendant's potential liability to the Plaintiffs for those costs. Defendant argues that such claim does not adequately plead a cause of action in equitable estoppel.

As Plaintiffs points out, to establish equitable estoppel, "plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment." Knorr v. Smeal, 178 N.J. 169, 178 (2003). The purpose of equitable estoppel is "is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel." Thomas v. Camden Trust Co., 59 N.J. Super. 142, 150 (Law Div. 1959) (quoting State v. United States Steel Corp., 22 N.J. 341, 358 (1956)).  However, as Defendants emphasize, Courts typically require one further element: a "knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance." O'Malley v. Department of Energy, 109 N.J. 309, 317 (1987); Newburgh v. Arrigo, 88 N.J. 529, 541-42 (1982); Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979).

While Plaintiffs do claim that they acted upon information from Defendant to their detriment, Plaintiffs do not claim that any information was a misrepresentation or concealment of material facts.  Plaintiffs do properly address the reliance and detriment facets of equitable estoppel, but fail to explain how the information from Defendant was a knowing and intentional misrepresentation.  Thus, this Court grants Defendant's Motion to Dismiss as to Count Three.

### d.  Count Four

Plaintiff's Count Four includes a negligence claim.  Plaintiffs claim that Defendant owed a legal duty to Plaintiffs, including the "duty to exercise the care that would be exercised by a reasonable person or entity under similar circumstance."  Plaintiffs go on to allege that based on the facts stated in their complain, Defendant breached that duty and Plaintiffs incurred damages as a result.

Defendant argues that Plaintiffs fail to demonstrate that their injuries were a reasonably foreseeable result of Defendant's actions—thus, Defendant argues, Plaintiffs are missing the element of proximate cause in their complaint.  Defendant further argues that Plaintiffs' claim is "bare bones" and does not specifically mention details as to what actions of Defendant's caused

11

the alleged harm. Plaintiffs claim that New Jersey is a notice-pleading state, and that it is not required for them to plead negligence with hyper-particularity.

This Court is guided by the text of the pleading Rules themselves. <u>Rule</u> 4:5-2 states that "a pleading which sets forth a claim for relief [. . .] shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement." <u>R.</u> 4:5-2.

Here, Plaintiffs' complain contains a general statement of the facts describing the parties' relationship with one another, as well as how Plaintiffs' alleged damages stemmed directly from the two notices from Defendant. Although the specific Count does not explicitly state that Defendant's actions were the proximate and foreseeable cause of Plaintiffs' alleged damages, such a proposition is clearly gleaned from the complaint as a whole. Based on a liberal reading of Plaintiffs' complaint and in taking all facts alleged as true, Plaintiff adequately pleads a negligence claim in Count Four. Thus, this Court denies Defendant's motion to dismiss as to Count Four.

### e. Count Five

Plaintiffs' Complaint claim Unjust Enrichment in Count Five by alleging that Defendant received an unearned benefit from Plaintiffs under the circumstances described in the statement of facts. Specifically, Plaintiffs claim that Defendant was "legally ad equitably obligated to pay the costs of medical evaluation and medical advice, bottled water and water filters," but that Defendant sought to benefit itself by avoiding the costs for such. Therefore, Count Five alleges that "Plaintiffs and the classes conferred a benefit on Defendant by paying costs and expenses which were legally and equitably owed by Defendant, under circumstances which were unjust and under which Plaintiffs and the classes have a reasonable expectation of reimbursement."

Defendant claims that Count Five is not factually or legally sustainable because Defendant was not enriched by any expenditures made by Plaintiffs. Further, Defendant argues that New Jersey does not recognize unjust enrichment as an independent tort cause of action.

Defendant is correct that New Jersey does not recognize unjust enrichment as an independent tort cause of action. <u>Castro v. NYT Television</u>, 370 N.J. Super. 282, 299 (App. Div. 2004). However, New Jersey does recognize unjust enrichment as a cause of action in contracts. <u>Id.</u> Generally, to establish unjust enrichment in contract, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." <u>VRG Corp. v. GKN Realty Corp.</u>, 135 N.J. 539, 554 (1994). Count Five does plead both of these facets. For that reason, this Court denies Defendant's motion to dismiss Count Five.

12

3.  <u>**Conclusion**</u>

In conclusion, this Court **DENIES** Defendant's motion to dismiss the entirety of the complaint under <u>Rule</u> 4:6-2(f).  Under <u>Rule</u> 4:6-2(e), this Court **DENIES** Defendant's motion to dismiss as to Count One, Four, and Five, **GRANTS** Defendant's motion to dismiss as to Count Three, and **GRANTS WITHOUT PREJUDICE** as to Count Two, allowing Plaintiffs the opportunity to amend the complaint with more particularity.

13

EXHIBIT D