# H

Hon. Michael A. Toto, A.J.S.C.
Middlesex County Superior Court
56 Paterson Street
PO Box 964
New Brunswick, NJ 08903-0964
(732) 645-4300

> **FILED**
> **APRIL 21, 2022**
> **HON. MICHAEL A. TOTO, A.J.S.C.**

| | |
|---|---|
| TOMAS VERA, JOEL VELEZ, MARGARET KENNEDY, DONNA ZIELINSKI, MICHAEL ZIELINSKI, MARCO L. NEAD, and RENEE WILLIAMS, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY  DOCKET NO. MID-L-6306-21  *Civil Action*  *ORDER AND MEMORANDUM OF LAW* |
| Plaintiffs, | |
| vs. | |
| MIDDLESEX WATER COMPANY, | |
| Defendant, | |

**THIS MATTER** having been brought before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, pursuant to R. 4:6-2 for failure to state a claim and/or failure to join an indispensable party, and the Court having duly considered the moving papers submitted in support thereof, and the opposition filed by Plaintiffs, and the oral argument by counsel on April 14, 2022, and for other good cause shown;

**IT IS ON THIS 21ST DAY OF APRIL 2022, ORDERED AS FOLLOWS:**

1. **ORDERED** that Defendant's Motion to Dismiss is **GRANTEED** as to Count Three which is hereby dismissed for the reasons stated in the accompanying memorandum; and it is further

1

2. **ORDERED** that Defendant's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE** as to Count Two, allowing Plaintiffs leave to amend their complaint within thirty (30) days of the date herein as to whether Plaintiffs consumed the unfiltered water provided to them; and it is further

3. **ORDERED** that Defendant's Motion to Dismiss is **DENIED** as to Counts One, Four, and Five; and it is further

4. **ORDERED** that Defendant's Motion to Dismiss for failure to join an indispensable party is **DENIED WITHOUT PREJUDICE**; and it is further

5. **ORDERED** that service of this Order shall be deemed effectuated on all parties upon its upload to eCourts. Pursuant to Rule 1:5-1(a), movant shall serve a copy of this Order on all parties not served electronically within seven days of the date of this Order.

_____
**Hon. Michael A. Toto, A.J.S.C.**

Vera et al. v. Middlesex Water Company,
MID-L-6306-21

## MEMORANDUM

## FACTS AND PROCEDURAL HISTORY

This is a class action lawsuit filed on behalf of a class of New Jersey Citizens who receive their water from Defendant Middlesex Water Company. On October 22 and November 8, 2021, Defendant sent two notices to its customers advising them that their water has levels of Perfluorooctanoic Acid (PFOA) above drinking water standards.

Perfluoroalkyl substances (PFAS) are a group of man-made chemicals that include Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA). PFOA, which is the chemical at issue in this matter, resists heat, oil, stains, grease, and water, and can remain in the human body for long periods of time. Although the CDC claims the human health effects from exposure to PFOA are unknown, the EPA reports that exposure over certain levels may result in adverse health effects such as developmental effects to fetuses or breastfed infants, cancer, liver effects, immune effects, thyroid effects, and other effects such as cholesterol changes. In May 2016, the EPA issued a notice that set the lifetime health advisory for PFOA at 0.07 µg/L, or 70 parts per trillion. This health advisory is not a regulation. In 2020, the New Jersey Department of Environmental Protection ("DEP") adopted a maximum contaminant level ("MCL") for PFOA in drinking water at 0.014 µg/L, or 14 parts per trillion, with monitoring for such beginning in the first quarter of 2021. N.J.A.C. 7:10-5.2 (a) (5) (ii).

Both notices that Defendant sent to its customers on October 22 and November 8, 2021, admitted that the MCL for PFOA in New Jersey is 14 parts per trillion (ppt), and that a sample of Defendant's system collected on August 2, 2021 found PFOA at 36.1 ppt. The notices explained that "[p]eople who drink water containing PFOA in excess of the MCL over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system." Pff. Attachments A, B. The noticed further explained that drinking water containing PFOA in excess of the MCL over time could also increase the risk of testicular and kidney cancer, and for females, could cause developmental delays in a fetus or infant which may persist through childhood. Id. Defendant advised that if customers had "specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, [they] may be at higher risk than other individuals and should seek advice from [their] health care providers about drinking this water." Id. Further, Defendant recommended installing a home water filter to reduce levels of PFOA in the tap water or use bottled water for drinking, cooking, or preparing beverages for infants. Id.

Defendant is currently constructing a new plant that will allow them to bring the PFOA levels into compliance permanently, but that new plant will not be complete until mid-2023.

Defendant specified that their water for the affected areas came from three sources, only one of which is contaminated with an above-MCL level of PFOA. These three sources include the Park Avenue Plant, which accounts for 25% of the water and has above-MCL levels of PFOA; a surface water plant that accounts for 70% of the water and has single-digit ppt PFOA levels below the MCL; and the remainder of the water is provided by New Jersey American Water, also with single-digit ppt PFOA levels below the MCL.

On November 9, 2021 Defendant shut down the Park Avenue Wellfield, which was the source of the PFOA contamination. On December 22, 2021, this Court signed an Order in which the parties stipulated that Defendant does not intend to activate or operate the Park Avenue wellfields before the completion of the remediation efforts unless (1) the New Jersey Department of Environment Protection (NJDEP) requires Defendant to operate the wellfield, or (2) Defendant in its sole judgment determines that activation of the Park Avenue wellfields is "necessary for public health, adequacy of supply, or any other reason determined by Middlesex that necessitates doing so for it to provide safe and reliable drinking water service in accordance with applicable New Jersey and federal law."

In the background of this matter is Defendant's own suit against 3M Company in the U.S. District Court for the District of New Jersey. In that suit, Defendant alleges 3M Company is the polluter who put PFOA in the ground water supply. There, Defendant is seeking to recoup from 3M wellfield remediation costs for the construction of their new plant.

Plaintiffs filed suit against Defendant on October 29, 2021, and amended their complaint on November 18, 2021. There initially was a motion for an Order to Show Cause with temporary restraints and injunctive relief filed November 18, 2021. On the same date, Plaintiffs also filed their motion to certify class. The consent order filed on December 22, 2021 settled the motion for temporary restraints and adjourned the motion to certify class.

Count One of Plaintiff's complaint claims that under the principles of general equity, Defendant is required to reimburse Plaintiffs and relevant class members for costs incurred from the two written notices. Count Two seeks injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiffs for all out-of-pocket costs because of the notices. Count Two also seeks injunctive and equitable relief in an order establishing a court supervised and medically appropriate program of medical monitoring and testing at Defendant's expense. Further, Count Two seeks an order for injunctive relief requiring Defendant to conduct a program designed to provide notice of the dangers to Middlesex Water Company customers. Count Three seeks to equitably estop Defendant from denying the accuracy of the statements made in the two notices. Count Four is a negligence claim that Defendant breached a duty owed to Plaintiffs. Finally, Count Five claims Defendant was unjustly enriched by not paying the costs of medical evaluation, medical advice, bottled water, and water filters for their affected customers.

4

On February 14, 2022, this Court signed and filed a consent order setting a briefing schedule for Defendant's incoming motion to dismiss, which would be returnable April 14, 2022. Defendant filed their motion to dismiss on February 17, 2022. Plaintiffs submitted an opposition on March 17, 2022, and Defendant submitted their reply on April 11, 2022.

## DEFENDANT/MOVANT'S REQUESTED RELIEF

Defendants primarily argue that Plaintiffs' complaint should be dismissed in its entirety for failure to name an indispensable party, as provided by R. 4:28-1. In the alternative, Defendants argue that this Court should individually dismiss Counts one, two, three, four, and five of Plaintiff's complaint.

## DEFENDANT'S ARGUMENT

As to the entirety of Plaintiffs' complaint, Defendant argue this Court should grant its motion to dismiss because Plaintiffs failed to name 3M Company as a necessary and indispensable party under R. 4:28-1. Defendant claims that 3M Company is the party responsible for the PFOA contamination of Defendant's wellfield, and thus must be a party to the action if the judgment is to accurately determine the rights of all parties before the Court. If the Court finds that dismissal is not warranted, Defendant ask that the Court orders Plaintiffs to amend the Complaint to include 3M as a defendant. Defendant claims that doing such would allow the Court to apportion liability and responsibility for any potential damages.

Defendant argues that Count One should be dismissed because even though Plaintiffs allege Count one in general equity, money damages are a perfectly adequate remedy available the Plaintiffs. Further, Defendant argues that Count one of duplicative of Plaintiff's claim of negligence in Count Four and injunctive relief in Count Two.

Defendant claims that Count Two, in which Plaintiffs ask for injunctive relief and medical monitoring, should be dismissed because medical monitoring is not an independent cause of action. Defendant again alleges that Count Two is duplicative of Counts One and Four.

As to Count Three, Defendant argues that Plaintiffs fail to make out a claim of equitable estoppel. Defendant also posits that Plaintiffs' request to enjoin any evidence surrounding the two notices would be more appropriate as a motion *in limine* or as requests for admissions.

Defendant argues that Count Four of Plaintiffs' complaint for negligence is "bare-bones" and "not adequately pled." Defendant claims that Plaintiffs fail to establish any breach of a duty, as well as any action or inaction on part of Defendant that caused Plaintiff's injuries. Further, Defendant alleges that Plaintiffs fail to explain how Plaintiffs' injuries were a foreseeable result of Defendant's actions where Defendant did not cause the PFOA water contamination.

Regarding Count Five, Defendant claims that Plaintiff's allegation of unjust enrichment is not sustainable because Plaintiffs never conveyed any benefit to Defendant and Defendant was not enriched by any expenditures. Further, Defendant points to case law for the proposition that New Jersey does not recognize unjust enrichment as an independent tort cause of action.

## PLAINTIFFS' ARGUMENT

In opposition to Defendant's motion to dismiss, Plaintiffs argue that overall, Defendant fails to acknowledge the "generous and hospitable" approach that Court take when deciding a motion under R. 4:6-2(e). Plaintiffs claim that Defendant's motion does not meet its burden of showing that no cause of action can be gleaned from the first amended complaint. Plaintiffs further allege that Defendant's "mandatory joinder" argument is without merit because the action concerns only the seller/buyer consumer relationship between Defendant and its customers. Plaintiffs point out that each of their claims against Defendant are specific to that seller/buyer relationship and would not lie against 3M, with whom Plaintiffs are not in privity. Plaintiffs further posit that even if 3M was jointly and severally liable to Plaintiffs, joinder in this suit would be merely permissive instead of mandatory. Plaintiffs also emphasize that Defendant provides no evidence that 3M caused the PFOA contamination, so Plaintiffs would lack sufficient evidential support for form a good faith basis for any claim against 3M. Finally, Plaintiffs point out that under R. 4:8-1, Defendant has the option to join 3M as a third-party defendant.

Plaintiffs claim that all of Defendant's arguments as to Counts One, Two, Three, Four, and Five are without merit. As to Count One, Plaintiffs argue that just because relief is monetary does not mean that I cannot be equitable relief. Further, Plaintiffs claim that New Jersey Court Rules expressly allow a plaintiff to plead alternative and overlapping legal and equitable claims, so counts should not be dismissed for being duplicative.

As to Count Two, Plaintiffs posit that a claim for restitution can be equitable relief. Plaintiffs also allege that its claim for medical monitoring will lie on the facts pleaded in the complaint, as evidenced by the very language of Defendant's own notices.

Plaintiffs argue that Count Three regarding equitable estoppel should not be dismissed because it properly asks for only declaratory judgment preventing Defendant from denying the accuracy of the statements made in their two form notices. If Defendant stipulates that all the information contained in the notices are true and accurate, then Plaintiffs will voluntarily dismiss Count Three.

As to Count Four, Plaintiffs claim that the first amended complaint pleads a perfectly viable negligence claim explaining all four facets of negligence. Plaintiffs allege that Defendant's proximate cause and foreseeability arguments are without merit because both determinations

6

necessitate issues of law and fact, which cannot be determined at this pre-discovery stage of litigation.

For Count Five, Plaintiffs argue they properly pled that Defendant received a benefit and the retention of that benefit without payment would be unjust.

## DEFENDANT'S REPLY

In its reply, Defendant reiterates that the entire complaint must be dismissed for Plaintiff's failure to join 3M as an indispensable party.

Defendant further argues that even though Plaintiffs claim Count One seeks injunctive relief, Count One does not actually seek injunctive relief, but instead seeks only monetary damages. Defendants reiterate the same argument as to Count Two. Further, Defendant claims that medical monitoring as requested in Count Two is not an independent cause of action and is not necessitated by a plain reading of the Complaint. The request for further notice as to the No-Notice Class, Defendant claims, is both overbroad and moot.

As to Count Three, Defendant argues the Complaint fails to plead a cause of action. Contrary to Plaintiffs' argument in opposition, Defendant asserts that the Complaint never mentions a request for declaratory judgment.

Defendant claims that the negligent claim in Count Four is deficient because plaintiffs merely list the four elements of negligence without providing any information specific to Defendant.

Finally, as to Count Five, Defendant claims that mitigating their own damages does not translate to unjust enrichment.

## ANALYSIS

New Jersey Court Rule 4:6-2 describes certain situations under which a party may move to dismiss a complaint or a portion of a complaint. Plaintiff first argues that Plaintiff's entire complaint should be dismissed under Rule 4:6-2(f) for "failure to join a party without whom the action cannot proceed." R. 4:6-2(f). The remainder of Defendant's motion to dismiss falls under Rule 4:6-2(e), which permits a party to move to dismiss a claim for "failure to state a claim upon which relief can be granted." R. 4:6-2(e). This Court first addresses Defendant's single claim under subsection (f) and then go on to analyze Defendant's five claims under subsection (e).

7

1. **Dismissal for Failure to Join a Necessary Party**

The New Jersey Court Rules on joinder of parties provides that "[a] person who is subject to service of process shall be joined as a party to the action if [ ] in the person's absence complete relief cannot be accorded among those already parties." R. 4:28-1(a). Thus the primary question here is whether 3M Company is an indispensable party necessitating dismissal of the complaint in its entirety.

Defendant is currently suing 3M in the U.S. District Court for the District of New Jersey, alleging that 3M is responsible for the contamination of Defendant's wellfield. Defendant claims that 3M would ultimately be responsible for the contamination, and therefore may be liable to Plaintiffs. Defendant cites a class action also filed in the District Court suing both 3M and Middlesex Water Company, in which the plaintiffs alleged the same facts as alleged by Plaintiffs here. Def. Ex. D. Thus, Defendant argues, Plaintiffs here should have done the same. Defendant argues that if the Court does not find that dismissal is warranted on this basis, then the Court should order Plaintiff to amend the complaint to include 3M as a defendant. Defendant claims this will serve the interests of justice and allow the Court to apportion responsibility accordingly.

Plaintiffs argue that even though 3M may have caused the PFOA contamination, 3M is not an indispensable party because this suit only concerns the buyer/seller relationship between Defendant and Plaintiffs. As Plaintiffs emphasize, the complaint alleges that Defendant breached a non-delegable legal and equitable duty to Plaintiffs, that Defendant was deficient in its notice of Plaintiffs, that Defendant cannot continue to sell drinking water to Plaintiffs in violation of the state PFOA limits, and that Defendant is responsible to take steps to assure that the drinking water sold to Plaintiffs meets New Jersey Standards. Plaintiffs assert that none of these claims would lie against 3M. Plaintiffs argue that New Jersey Court Rules would prohibit Plaintiffs from bringing a direct claim against 3M, because Plaintiffs have no evidence that 3M is the party responsible for the PFOA contamination.

Plaintiffs further argue that if Defendant believes that 3M would be required to indemnify them on these claims, then Defendant has the right to file a third-party claim against 3M for indemnification or contribution. Plaintiffs claim that if 3M is jointly and severally liable to Plaintiffs along with Defendant, joinder of 3M would be permissive, not mandatory.

Whether a party is indispensable is a "fact sensitive" analysis," IBEW Local 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 225 (App. Div. 2021), that depends on the "the nature and character of the claim." Neil v. Klein, 141 N.J. Super. 394, 406 (App. Div. 1976). Generally, "a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest." Toll Bros., Inc. v. Township of West Windsor, 334 N.J. Super. 77, 90-91 (App. Div. 2000) (quoting Allen B. DuMont Labs., Inc.

8

v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959)). In cases where a party is indispensable, "the absent party had an existing interest in the very subject matter which would have been directly affected by the judgment." Allen B. DuMont Labs., 30 N.J. at 299.

The question remains of whether it is settled that 3M is responsible for the PFOA contamination. While Defendant's federal suit against 3M is still pending, the New Jersey Department of Environmental Protection ("DEP") stated in a March 2019 statewide PFAS Directive that it believes 3M, among other companies, to be responsible for discharging PFOA and PFOS. However, the directive does state that it believes 3M to be the "dominant global producer of PFOA" and that 3M manufactured "approximately 85 percent or more of total worldwide volumes of PFOA."[1] According to Defendant, the New Jersey Attorney general filed two actions against 3M on behalf of the DEP regarding the PFOA contamination in Pennsville and Parlin, New Jersey.

However, it is not settled that 3M is responsible to Defendant for the contamination of this specific wellfield, and therefore the contaminated water sold to Plaintiffs. For that reason, it is not possible to say at this time whether 3M is "inevitably" involved in the litigation, or that the litigation "necessarily" affects 3M's interest. Further, Plaintiff's claims do focus primarily on the buyer/seller relationship between Defendant and Plaintiffs. At some point in the future, it may become settled that 3M is solely responsible for the contamination of this wellfield, and at that time 3M might become an indispensable party. However, at this time, the Court does not find that 3M is an indispensable party or that dismissal of the entire complaint is required as a result.

## 2. Dismissal for Failure to State a Claim

Pursuant to Rule 4:6-2(e), a court must dismiss a plaintiff's complaint "if it has failed to articulate a legal basis entitling plaintiff to relief. Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). In analyzing a motion to dismiss on these grounds, the trial court must "consider[ ] and accept[ ] as true the facts alleged in the complaint." Id. (citing Donato v. Moldow, 374 N.J. Super. 483 (App. Div. 2001)). Trial courts should "approach with great caution applications for dismissal under Rule 4:6-2(e)," which should be granted only in "the rarest of instances." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 772 (1989). If the complaint must be dismissed after such an examination, "then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint." Id. Nonetheless, a reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Id. at 746 (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957).

---

[1] https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf

9

### a. Count One

Count One of Plaintiff's Complaint asserts that because Defendant "intended that Plaintiffs and the class would rely upon the truth and accuracy of the statements made by Defendant in the Notices," that Defendant is required under the principles of general equity to reimburse Plaintiffs for costs incurred from following the advice in the notices. Defendant argues that this Count seeks money damages, not injunctive relief. Further, Defendant argues that a right of implied indemnity cannot be created here because money damages provide a perfectly adequate remedy to Plaintiffs. Defendant also claims that Count One should be dismissed because it is duplicative of Plaintiffs' claims in Count Two and Count Four.

In the complaint, Plaintiffs state that "under the principles of general equity," they are entitled to injunctive relief, and rely solely on the wording of Defendant's two notices for such a proposition. However, while Plaintiff does not explicitly lay out a cause of action, it is possible to glean one from their statements. Id. at 746. Taking all of Plaintiffs' allegations as true and looking at their complaint with liberality, this Court does not find that dismissal of Count One is warranted.

As to duplicity, pursuant to Rule 4:5-6, a party may plead different overlapping or alternative counts. R. 4:5-6. The Rule states, "[a]s many separate claims or defenses as the party has may be stated regardless of their consistency and whether based on legal or on equitable grounds or on both. Thus, the fact that Count One is duplicative of other counts in the complaint is not grounds for dismissal.

### b. Count Two

Count Two states that "Plaintiffs and the classes are in need of injunctive and equitable relief in the form of an order requiring Defendant to pay restitution to Plaintiffs and the class members." Count Two also seeks an injunctive order "establishing a court supervised and medically appropriate program of medical monitoring and testing" as described in Ayers v. Jackson Twp., 106 N.J. 557 (1987). Finally, as to the No-Notice Class, Plaintiffs seek an order for injunctive relief requiring Defendant to conduct a program "designed to provide all persons who receive their domestic drinking water supply from Middlesex Water Company with notice of the dangers described in" the two notices.

Defendants again argue there is no cause of action stated in Count Two. Defendants also argued in oral argument that Plaintiffs are not clear about how a medical monitoring program would be necessary because their allegations do not allege Plaintiffs ever drank the unfiltered water provided to the by Defendant. Plaintiffs stated that they could amend their complaint to state such. Accordingly, the Court gives leave to Plaintiff to amend their complaint as to whether Plaintiffs consumed the unfiltered water during the period of time in which the PFOA levels were above the MCL.

10

### c. Count Three

In Count Three, Plaintiffs make an equitable estoppel claim that Defendant should be estopped from denying the truth and accuracy of the statements they made in the two Notices. In making this claim, Plaintiffs allege that Defendant was fully aware that the notices would cause Plaintiffs to incur costs, and that Defendant sought to benefit itself by avoiding, eliminating, or minimizing Defendant's potential liability to the Plaintiffs for those costs. Defendant argues that such claim does not adequately plead a cause of action in equitable estoppel.

As Plaintiffs points out, to establish equitable estoppel, "plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment." Knorr v. Smeal, 178 N.J. 169, 178 (2003). The purpose of equitable estoppel is "is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel." Thomas v. Camden Trust Co., 59 N.J. Super. 142, 150 (Law Div. 1959) (quoting State v. United States Steel Corp., 22 N.J. 341, 358 (1956)).  However, as Defendants emphasize, Courts typically require one further element: a "knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance." O'Malley v. Department of Energy, 109 N.J. 309, 317 (1987); Newburgh v. Arrigo, 88 N.J. 529, 541-42 (1982); Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979).

While Plaintiffs do claim that they acted upon information from Defendant to their detriment, Plaintiffs do not claim that any information was a misrepresentation or concealment of material facts.  Plaintiffs do properly address the reliance and detriment facets of equitable estoppel, but fail to explain how the information from Defendant was a knowing and intentional misrepresentation.  Thus, this Court grants Defendant's Motion to Dismiss as to Count Three.

### d. Count Four

Plaintiff's Count Four includes a negligence claim.  Plaintiffs claim that Defendant owed a legal duty to Plaintiffs, including the "duty to exercise the care that would be exercised by a reasonable person or entity under similar circumstance."  Plaintiffs go on to allege that based on the facts stated in their complain, Defendant breached that duty and Plaintiffs incurred damages as a result.

Defendant argues that Plaintiffs fail to demonstrate that their injuries were a reasonably foreseeable result of Defendant's actions—thus, Defendant argues, Plaintiffs are missing the element of proximate cause in their complaint. Defendant further argues that Plaintiffs' claim is "bare bones" and does not specifically mention details as to what actions of Defendant's caused

11

the alleged harm. Plaintiffs claim that New Jersey is a notice-pleading state, and that it is not required for them to plead negligence with hyper-particularity.

This Court is guided by the text of the pleading Rules themselves. Rule 4:5-2 states that "a pleading which sets forth a claim for relief [. . .] shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement." R. 4:5-2.

Here, Plaintiffs' complain contains a general statement of the facts describing the parties' relationship with one another, as well as how Plaintiffs' alleged damages stemmed directly from the two notices from Defendant. Although the specific Count does not explicitly state that Defendant's actions were the proximate and foreseeable cause of Plaintiffs' alleged damages, such a proposition is clearly gleaned from the complaint as a whole. Based on a liberal reading of Plaintiffs' complaint and in taking all facts alleged as true, Plaintiff adequately pleads a negligence claim in Count Four. Thus, this Court denies Defendant's motion to dismiss as to Count Four.

### e. Count Five

Plaintiffs' Complaint claim Unjust Enrichment in Count Five by alleging that Defendant received an unearned benefit from Plaintiffs under the circumstances described in the statement of facts. Specifically, Plaintiffs claim that Defendant was "legally ad equitably obligated to pay the costs of medical evaluation and medical advice, bottled water and water filters," but that Defendant sought to benefit itself by avoiding the costs for such. Therefore, Count Five alleges that "Plaintiffs and the classes conferred a benefit on Defendant by paying costs and expenses which were legally and equitably owed by Defendant, under circumstances which were unjust and under which Plaintiffs and the classes have a reasonable expectation of reimbursement."

Defendant claims that Count Five is not factually or legally sustainable because Defendant was not enriched by any expenditures made by Plaintiffs. Further, Defendant argues that New Jersey does not recognize unjust enrichment as an independent tort cause of action.

Defendant is correct that New Jersey does not recognize unjust enrichment as an independent tort cause of action. Castro v. NYT Television, 370 N.J. Super. 282, 299 (App. Div. 2004). However, New Jersey does recognize unjust enrichment as a cause of action in contracts. Id. Generally, to establish unjust enrichment in contract, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Count Five does plead both of these facets. For that reason, this Court denies Defendant's motion to dismiss Count Five.

### 3. Conclusion

In conclusion, this Court **DENIES** Defendant's motion to dismiss the entirety of the complaint under Rule 4:6-2(f). Under Rule 4:6-2(e), this Court **DENIES** Defendant's motion to dismiss as to Count One, Four, and Five, **GRANTS** Defendant's motion to dismiss as to Count Three, and **GRANTS WITHOUT PREJUDICE** as to Count Two, allowing Plaintiffs the opportunity to amend the complaint with more particularity.